# FAX COVER SHEET

| TO | Brighthouse Financial |
| --- | --- |
| COMPANY | Brighthouse Financial |
| FAX NUMBER | 14018272771 |
| FROM | Mark Shure |
| DATE | 2022-01-04 21:30:10 GMT |
| RE | Collateral Assignment Policy 7447253 |

## COVER MESSAGE

Please see attached correspondence



**Mark E. Shure**
444 W. Lake St., 17th Flr | Chicago, IL 60606
mshure@em3law.com | (708) 528-6949

January 4, 2022

**VIA FAX (401) 827-2771**

Brighthouse Insurance
PO Box 313
Warwick, RI 02887-0313

**RE: Brighthouse Financial Life Insurance Policy No. 7447253**

Dear Sir or Madam:

This law firm represents Spin Capital, LLC ("Spin Capital"). As you know based upon your receipt of prior correspondence, Spin Capital is a collateral assignee of the above-referenced life insurance policy (the "Policy"). That assignment was made to Spin Capital by Life Factor II, LLC, which your records show as the present owner of the Policy. Attached is a copy of a letter that another attorney of Spin Capital sent you on November 5, 2021, which includes a copy of the Collateral Assignment and underlying Security Agreement. My client has never received any confirmation from Brighthouse Financial regarding the collateral assignment, and is unable to access any information regarding the Policy. My client needs to obtain information regarding the Policy, especially regarding any premiums which are due or may become due on the Policy in the near future, in order to avoid any lapse of the Policy.

Please advise immediately as to how my client can have its rights as a collateral assignee recognized, including its right to obtain current information regarding premiums. If I do not receive a response to this communication, my client has authorized this firm to file an action for declaratory relief, seeking a court order against Brighthouse Financial requiring it to recognize Spin Capital's rights as a collateral assignee of the Policy.

If you have any questions, please let me know. Because time is of the essence in order to avoid any lapse, please respond to this request within the next seven (7) days. Thank you for your anticipated cooperation.

Sincerely,

Mark E. Shure

**EDWARDS MAXSON MAGO & MACAULAY LLP**
ATLANTA | CHICAGO | DALLAS | NEW YORK

BRIGHTHOUSE-SPIN CAPITAL 000516
Page 002 of 007 recd at 01/04/2022 04:37:52 PM ET on 9086!



November 5, 2021

To: Brighthouse Financial

Re:    Life Insurance Policy Numbers: 7447253;

To whom it may concern.

This firm represents Spin Capital LLC ("Spin"). As you are aware we have previously notified Accordia that Spin was granted a collateral assignment of the Policies listed below. For your convenience, the Collateral Assignments are annexed to this correspondence.

The assignments were made to the benefit of Spin by virtue of a security interest granted in the Policies by Life Shares II LLC ("Life Shares"), a copy of which is attached to this letter. Pl

Please allow this letter to serve as a valid notification of Spin's security interest in the Policies. As such, neither Life Shares, nor any other party shall have the ability to remove, void, or otherwise effect the Collateral Assignments.

Despite the foregoing, it appears that Life Shares has in fact attempted, or succeeded in voiding the Collateral Assignments. It is hereby demanded that Accordia immediately re-instate the attached collateral assignments, and confirm same by close of business November 5, 2021.

The foregoing is not intended to be nor shall be construed as a waiver of any of Spin's rights in law or equity all of which are expressly reserved.

Thank you for your time and consideration with this matter. If you have any questions please do not hesitate to contact the undersigned.

Sincerely,

*Ariel Bouskila*
Ariel Bouskila, Esq.
212-729-1477x301
ari@bblawpllc.com

## BERKOVITCH & BOUSKILA PLLC

80 Broad Street | Suite 3303 | New York, NY 10004
Phone. 212.729.1477 | Fax. 347.342.3192



Brighthouse
**FINANCIAL**
Customer Service Center

## BASIC SPLIT DOLLAR COLLATERAL ASSIGNMENT

Policy No. 7447253 _____    Insured John P Ustick _____

A. FOR VALUE RECEIVED, the undersigned policyowner (hereinafter the "Assignor") transfers, conveys, sets over, and assigns, as provided herein to:

Name of Company: Spin Capital LLC _____

Address: 461 Van Brunt St Brooklyn NY 11234 _____

its successors and assigns (hereinafter the "Assignee") certain limited rights under the above policy (hereinafter the "Policy") issued by Brighthouse Financial (hereinafter the "Insurer"), and in any supplementary contracts issued in connection therewith. The Assignor by this instrument jointly and severally agrees and the Assignee by acceptance confirms, that they will be bound by the terms of this Assignment subject to the terms of the Policy and all superior liens, if any, including any that the Insurer may have in the Policy.

B. This limited assignment of the Policy is made as collateral security for monies advanced by the Assignee for the payment of policy premiums. The extent of this security interest is described in a Split Dollar Agreement that has been executed by the Assignor and the Assignee, which is more particularly described as follows:

Name of Agreement: Loan Agreement _____

Date of Agreement: June 17, 2021 _____

C. It is agreed that the following are the only rights that are included in this limited assignment and are conveyed to the Assignee:
   1. The sole right to receive from the net proceeds payable under the Policy upon the death of the Insured or upon maturity an amount equal to the interest of the Assignee provided under the Split Dollar Agreement described above.
   2. The sole right to receive out of cash value of the Policy during the lifetime of the Insured, by loan, surrender, withdrawal or partial surrender if available, per Policy terms, an amount less than and equal to but not to exceed the Assignee's interest in the Policy as described in the Split Dollar Agreement described above.

D. It is agreed that the Insurer shall not be a party to or be responsible for the proper performance nor the validity of the Split Dollar Agreement which this assignment secures. The Insurer shall be bound only by the provisions of the Policy and by the terms of this limited assignment as set forth herein. In the event of a conflict between the Split Dollar agreement and this assignment in any respect that involves the Insurer, this assignment shall control. Any payments the Insurer makes in reliance upon the terms of the Policy and this assignment based upon whatever written evidence of the Assignee's interest that the Insurer deems sufficient, shall fully discharge the Insurer of its obligations under this assignment and the Policy.

E. It is further agreed that all other rights not specifically transferred, conveyed and assigned in subsection C above, including any interest in cash values and death benefit proceeds not transferred, conveyed or assigned thereby, are reserved to the Assignor, or to the Assignor's successors, assigns or designated beneficiaries. By way of illustration and not to in any way limit the rights of the Assignor, among those rights specifically reserved to the Assignor are as follows:
   1. The right to assign the policy, change ownership and designate beneficiaries and contingent beneficiaries;
   2. The right to claim and collect from the Insurer any disability waiver of premium benefit payable in cash;
   3. The right to elect optional modes of settlement as permitted by the Policy and the Insurer;
   4. The right to elect dividend and other options contained in the Policy or permitted by the Insurer.
   The above rights are reserved only to the extent that the Assignee's interests, including the right to receive death benefits, maturities and cash values, are not diminished thereby.

Initial form here **and** sign on Page 2 → _SJL_    _7/2/2021_
                                        Assignor's Initials        Date

BRIGHTHOUSE-SPIN CAPITAL 000518
Page 004 of 007 recd at 01/04/2022 04:37:52 PM ET on 9086!

Policy No. 7447253 _____   Insured _John P Ustick_____

F. The Assignee agrees that, upon request, it will forward the policy to the Insurer without unreasonable delay, whenever submission of the Policy is required. Upon payment to the Assignee by the Insurer of the amount secured by this assignment pursuant to contributions under the Split Dollar Agreement, the Assignee will execute a release of this assignment. The Assignee will also execute a release upon the full satisfaction of the obligations under the Split Dollar Agreement. Both the Assignor and the Assignee agree that they will not exercise their above named rights in any way that will impair the rights of the other in the policy.

G. The Assignee may take or release other security, may release any party primarily or secondarily responsible for any of the obligations that this assignment secures, may grant extensions or renewals with respect to the above described Split Dollar Agreement, and may seek satisfaction from the values of the Policy secured by this assignment at its option without first resorting to any other security interest otherwise secured.

H. The parties to this limited assignment declare that no proceedings in bankruptcy are pending against them and that their property is not subject to any assignment for the benefit of creditors. The parties agree that they have relied upon their own tax advisors and/or attorneys and that neither the Insurer nor its agents or employees have provided any advice of a tax or legal nature as to the validity or sufficiency of this assignment or the underlying Split Dollar agreement.

(Print name below signature line.)

_Kristin Johnson_____   _Sty O_____   _07/02/2021_
WITNESS:   ASSIGNOR/POLICYOWNER:   DATE

_Kristin Johnson_____   _Stefan Leer_____   _____
WITNESS:   ASSIGNOR/POLICYOWNER:   DATE

_____   _____   _____
WITNESS:   ASSIGNOR/POLICYOWNER:   DATE

ACCEPTED BY:

_____   _____   _____
WITNESS:   ASSIGNEE/EMPLOYER:   DATE

By: _____

Title: _____

BSDCA-B (02/17) Fs-B   Page 2 of 2, incomplete without Page 1   DAAAIK

BRIGHTHOUSE-SPIN CAPITAL 000519

## SECURITY AGREEMENT

This Security Agreement is made as of the 16th day of June, 2021, by and between Golden Foothill Insurance Services LLC, **LIFE FACTOR II LLC** and **LIFE SHARES II LLC** ("Corporate Borrower") El Dorado Hills Insurance Solutions Inc, and LoneWolf Insurance Insurance Services Inc, and **ELDO Investments LLC**, and The Genesis LS Fund LLC, and KTL Holdings Inc. ("Corporate Guarantors") and **STEFAN LEER** ("Guarantor") on the one hand and **SPIN CAPITAL LLC** ("Lender or Secured Party" collectively with Corporate Borrower, Corporate Guarantors and Guarantor, "the Parties")

Whereas on June 16, 2021 the Parties executed a certain Promissory Note where Corporate Borrower and Guarantor agreed to repay to Lender the sum of $2,700,000 plus interest at 5% (five percent) per month with the balance on the Note due on or before January 14, 2021;

AND Whereas, the in further consideration of said Promissory Note, the Corporate Borrower Corporate Guarantors and the Guarantor (collectively the "Debtors") agree to grant a security interest in accordance with the foregoing to Lender ("Secured Party").

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Debtors grant to the Secured Party a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by the Debtors, (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Debtors' Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to the Secured Party under this Agreement and the Promissory Note (collectively the "Agreements"), including but not limited to all rights to receive any payments or credits under the Agreements. Additionally Secured Party is granted a security interest in all life insurance policies owned by the Debtors including but not limited to the following policies:

| Insured | Company | Policy Number | Death Benefit | Owner/Beneficiary |
|---|---|---|---|---|
| Gresham, Ronald | Zurich American Life Insurance Company | 177947 | $2,500,000.00 | Life Shares II LLC |
| Kellar, Edward | Zurich American Life Insurance Company | 170604 | $5,000,000.00 | Life Shares II LLC |
| Leer, William & Rae | Zurich American Life Insurance Company | 162865 | $2,000,000.00 | Life Shares II LLC |
| Perry, Jack & Leonora | Zurich American Life Insurance Company | 167060 | $1,000,000.00 | Life Shares II LLC |
| Sisam, Dorothy | Zurich American Life Insurance Company | 172953 | $5,000,000.00 | Life Shares II LLC |
| Sisam, Edwin & Dorothy | Zurich American Life Insurance Company | 172963 | $6,000,000.00 | Life Shares II LLC |
| Sisco, Frances | Accordia Life and Annuity Company | UL00020974 | $2,000,000.00 | Life Shares II LLC |
| Utsick, John | John Hancock Life Insurance Company | 59592683 | $2,000,000.00 | Life Factor II LLC |
| Utsick, John | Brighthouse Financial Life Insurance | 7447253 | $15,000,000.00 | Life Factor II LLC |

(collectively, the "Secured Assets"). Debtors agree to provide other security to the Secured Party upon request to secure Debtors' obligations under the Agreements. Debtors agree that, if at any time there are insufficient funds in Debtors' Account to cover the Secured Party's entitlements under the Agreements, Secured Party is granted a further security interest in all of Debtors' assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of Secured Party's entitlements under the Agreements and any other agreements now existing or later entered into between Debtors, and the Secured Party or an affiliate of the Secured Party. Secured Party is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by Secured Party without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. Secured Party shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, Secured Party has control over and may direct the disposition of the Secured Assets, without further consent of Debtors. Debtors hereby represent and warrant that no other person or entity has a security interest in the Secured Assets.

With respect to such security interests and liens, Secured Party will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Debtors will obtain from Secured Party written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Debtors agree that this is a contract of recoupment and Secured Party is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets.

Nevertheless, Debtors agree not to contest or object to any motion for relief from the automatic stay filed by Secured Party. Debtors agree to execute and deliver to Secured Party such instruments and documents Secured Party may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. Secured Party is authorized to execute all such instruments and documents in Debtors name.

Debtors each acknowledge and agree that any security interest granted to Funder under any other agreement between Debtors and Secured Party (the "Cross-Collateral") will secure the obligations hereunder and under the Agreements. Debtors each agree to execute any documents or take any action in connection with the Agreements as Secured Party deems necessary to perfect or maintain Secured Party's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Debtors each hereby authorizes Secured Party to file any financing statements deemed necessary by Secured Party to perfect or maintain Secured Party's security interest. Debtors shall be liable for, and Secured Party may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by Secured Party in protecting, preserving and enforcing Secured Party's security interest and rights.

**Negative Pledge.** Debtors each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** Secured Party shall have the right to cure Debtors' default in the payment of rent on the following terms. In the event Debtors are served with papers in an action against Debtors for nonpayment of rent or for summary eviction, Secured Party may execute its rights and remedies under the Assignment of Lease. Debtors also agree that Secured Party may enter into an agreement with Debtors' landlord giving Secured Party the right: (a) to enter Debtors' premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Debtors' lease to another qualified business capable of operating a business comparable to Debtors' at such premises.

**Remedies.** Upon any Event of Default, Secured Party may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to Secured Party, whether by acceleration or otherwise.

**IN WITNESS WHEREOF,** each Borrower has duly executed this Security Agreement as of the day and year first above written.

**BORROWER and GUARANTOR:**
By: _____
Stefan Leer individually on behalf of Debtors

**ACKNOWLEDGMENT.**
STATE OF *California*    )
                         )    ss.:
COUNTY OF *Orange*       )

On this, the *10th* day of June, 2021, before me, the undersigned, personally appeared Stefan Leer personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity as an authorized signatory of each of the foregoing entities, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

LAURIE ANN LEER-MARTINEZ
COMM. #2284701
Notary Public - California
El Dorado County
My Comm. Expires Apr. 8, 2023