UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------X

BRIGHTHOUSE LIFE INSURANCE COMPANY,

        Plaintiff,                                Case No.  23-cv-08570

      v.

SPIN CAPITAL, LLC;
GOLDEN FOOTHILL INSURANCE SERVICES, LLC;
LIFE FACTOR II, LLC;
LIFE SHARES II, LLC;
EL DORADO HILLS INSURANCE SOLUTIONS, INC.;
LONE WOLF INSURANCE SERVICES, INC.;
ELDO INVESTMENTS, LLC;
THE GENESIS LS FUND, LLC;
KTL HOLDINGS, INC.;
DRVN HOLDINGS, LLC;
LIFE SHARES 1019, LLC;
STEFAN LEER;
TATANISHA LEER;
CAP FACTOR, LLC;
MICHAEL TRUSNER;
DAVA TRUSNER; and
FRED STEVENS, AS COURT-APPOINTED
TEMPORARY RECEIVER,

        Defendants.
---------------------------------------------X

## ANSWER TO COMPLAINT IN INTERPLEADER

      Defendant, Spin Capital, LLC ("Spin Capital"), by and through its undersigned counsel, for its Answer to the Complaint in Interpleader, states as follows:

### PARTIES

      1.     Plaintiff Brighthouse Life Insurance Company f/k/a MetLife Insurance Company USA f/k/a MetLife Insurance Company of Connecticut f/k/a The Travelers Life and Annuity Company ("Brighthouse") is a corporation organized and existing under the laws of the state of

Delaware with its principal place of business in North Carolina. While Brighthouse currently is not a licensed insurer in the State of New York, no bond for this matter is required under Insurance Law § 1213 as, pursuant to New York State Department of Financial Services Insurance Regulation 109, Brighthouse maintains sufficient funds in trust for the protection of New York policyholders. Moreover, there are no money damages sought by or from Brighthouse in this action for equitable interpleader relief.

**ANSWER:**   Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

2.   Defendant Spin Capital, LLC ("Spin Capital") is a New Jersey limited liability company. Upon information and belief, Spin Capital is the obligee on a promissory note (the "Spin Capital Promissory Note") and the secured party under the security agreement and collateral assignments that secured the amounts due under the Spin Capital Promissory Note.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

3.   Defendant Golden Foothill Insurance Services, LLC ("GFIS") is a Delaware limited liability company. Upon information and belief, GFIS is one of the three obligors on the Spin Capital Promissory Note. Upon information and belief, Defendant Stefan Leer ("Stefan Leer") is a principal owner of GFIS.

**ANSWER:**   Spin Capital admits the allegations of this paragraph.

4.   Defendant Life Factor II, LLC ("Life Factor") is a Nevada limited liability company. Upon information and belief, Life Factor is one of the three obligors on the Spin Capital Promissory Note and was an owner of the life insurance policy at issue that was pledged as collateral for the Spin Capital Promissory Note. Upon information and belief, Stefan Leer is a principal owner of Life Factor.

**ANSWER:**   Spin Capital admits the allegations of this paragraph.

5.   Defendant Life Shares II, LLC ("Life Shares") is a Delaware limited liability company. Upon information and belief, Life Shares is one of the three obligors on the Spin Capital Promissory Note and represented that it was an owner of the life insurance policy at issue that was pledged as collateral for the Spin Capital Promissory Note. Upon information and belief, Stefan Leer is a principal owner of Life Shares.

**ANSWER:**   Spin Capital admits the allegations of this paragraph,

6.   Defendant El Dorado Hills Insurance Solutions, Inc. ("EDHIS") is a California corporation. Upon information and belief, EDHIS guaranteed the obligations under the Spin Capital Promissory Note. Upon information and belief, Stefan Leer is a principal owner of EDHIS.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

7. Defendant Lone Wolf Insurance Services, Inc. ("Lone Wolf") is a Delaware corporation. Upon information and belief, Lone Wolf guaranteed the obligations under the Spin Capital Promissory Note. Upon information and belief, Stefan Leer is a principal owner of Lone Wolf.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

8. Defendant ELDO Investments, LLC ("ELDO") is a Texas limited liability company. Upon information and belief, ELDO guaranteed the obligations under the Spin Capital Promissory Note. Upon information and belief, Stefan Leer is a principal owner of ELDO.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

9. Defendant The Genesis LS Fund, LLC ("Genesis") is a Texas limited liability company. Upon information and belief, Genesis guaranteed the obligations under the Spin Capital Promissory Note. Upon information and belief, Stefan Leer is a principal owner of Genesis.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

10. Defendant KTL Holdings, Inc. ("KTL") is a Texas corporation. Upon information and belief, KTL guaranteed the obligations under the Spin Capital Promissory Note. Upon information and belief, Stefan Leer is a principal owner of KTL.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

11. Defendant DRVN Holdings, LLC ("DRVN") is a Texas limited liability company. Upon information and belief, Stefan Leer is a principal owner of DRVN. Upon information and belief, following the loan made by Spin Capital, DRVN was named as the transferee of certain life insurance policies, which were pledged to Spin Capital as collateral for the Spin Capital Promissory Note.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

12. Defendant Life Shares 1019, LLC ("LS1019") is a Delaware limited liability company. Upon information and belief, Stefan Leer and defendant Cap Factor, LLC are principal owners of LS1019. Upon information and belief, following the loan made by Spin Capital, a request was made to assign the life insurance policy at issue, which was pledged to Spin Capital as collateral for the Spin Capital Promissory Note, to LS1019.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

13. Defendant Stefan Leer is an individual who resides in the state of Tennessee. Upon information and belief, Stefan Leer is the sole or principal owner of GFIS, Life Factor,

3

Life Shares, EDHIS, Lone Wolf, ELDO, Genesis, KTL, DRVN and LS1019 (hereinafter collectively referred to as "Leer Entities"). Upon information and belief, Stefan Leer signed the Spin Capital Promissory Note, security agreement, and collateral assignments on behalf of each of the borrowers and the corporate guarantors. Upon information and belief, Stefan Leer also personally guaranteed the obligations under the Spin Capital Promissory Note.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

14. Defendant Tatanisha Leer ("Tatanisha Leer") is an individual who resides in the state of Tennessee. Upon information and belief, Tatanisha Leer guaranteed the obligations under the Spin Capital Promissory Note. Upon information and belief, Tatanisha Leer is the wife of Stefan Leer
.
**ANSWER:**  Spin Capital admits the allegations of this paragraph.

15. Defendant Cap Factor LLC ("Cap Factor") is a Nevada limited liability company with its principal office in Nevada. Upon information and belief, Cap Factor is a co-owner along with Stefan Leer of LS1019. Upon information and belief, Cap Factor claims to have interests in the life insurance policy at issue that was purportedly pledged by Life Shares and Life Factor as collateral to Spin Capital, based upon certain voidable transfers.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

16. Defendant Michael Trusner ("Michael Trusner") is an individual who resides in the state of California. Upon information and belief, Michael Trusner is a lender under a promissory note (the "Trusner Promissory Note"), which was secured by the life insurance policy at issue in this case

**ANSWER:**   Spin Capital is without knowledge or information sufficient to form a

belief as to the truth of the allegations of this paragraph.

17. Defendant Dava Trusner ("Dava Trusner") is an individual who resides in the state of California. Upon information and belief, Dava Trusner is a lender under the Trusner Promissory Note, which was secured by the life insurance policy at issue in this case.

**ANSWER:**   Spin Capital is without knowledge or information sufficient to form a

belief as to the truth of the allegations of this paragraph.

18. Defendant Fred Stevens (the "Spin Capital Receiver") was appointed Temporary Receiver by the Supreme Court of the State of New York, County of New York and is named herein in his capacity as Temporary Receiver. For purposes of citizenship, the Spin Capital Receiver is deemed a citizen of New York.

**ANSWER:**   Spin Capital admits the allegations of this paragraph.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction under 28 U.S.C. § 1335 in that the adverse claimants are of diverse citizenship and the amount of controversy exceeds $500.00. There is minimal diversity between the claimants under *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523 (1967). Upon information and belief, Defendants are citizens of New York, New Jersey, Delaware, Nevada, California, Tennessee and Texas.

**ANSWER:**   Spin Capital admits the allegations of this paragraph.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1397 because one or more of the claimants resides in this judicial district. The Spin Capital Receiver is a resident of New York County, New York.

**ANSWER:**   Spin Capital admits the allegations of this paragraph.

## CAUSE OF ACTION IN INTERPLEADER

21.     The Travelers Insurance Company, now known as Brighthouse, issued and delivered in Florida a flexible premium adjustable life insurance policy number 7447253 (the "Policy") with a policy date of November 7, 2004, which provided coverage on the life of John P. Utsick (the "Insured"). *A copy of the Policy is attached hereto as **Exhibit A***.

**ANSWER:**   Spin Capital admits the allegations of this paragraph.

22.     At the time the Policy was issued, the owner of the Policy and sole primary beneficiary to the Policy proceeds was the John P. Utsick Irrevocable Trust Dated 2/4/04.

**ANSWER:**    Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

23.     On or about April 17, 2006, the Securities and Exchange Commission ("SEC") commenced an action in the U.S. District Court for the Southern District of Florida captioned, *Securities and Exchange Commission v. John P. Utsick, et al.*, and identified by case number 1:06-cv-20975-PCH (the "Florida Action"), against Worldwide Entertainment, Inc., The Entertainment Group Fund, Inc., American Enterprises, Inc., and Entertainment Funds, Inc. (collectively, the "Receivership Entities"), and against their principals, which included the Insured. The SEC alleged that the Insured and other principals, through the Receivership Entities, sold unregistered securities in the form of loan agreements or units in special purpose limited liability companies to raise funds for a variety of entertainment ventures, thereby violating various sections of the Securities Act of 1933 and the Securities Exchange Act of 1934. *A copy of the Complaint filed in the Florida Action is attached hereto as **Exhibit B***

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

24. By Order entered on or about April 20, 2006 in the Florida Action (the "SEC Receiver Order"), Michael I. Goldberg (the "SEC Receiver") was appointed Receiver over the assets, liabilities and business interests of the Receivership Entities. *A copy of the SEC Receiver Order is attached hereto as* **Exhibit C**.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

25. The SEC Receiver Order states, in relevant part:

> During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined … from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the [SEC] Receiver or which affect the property of the Defendants.

*See Ex. C at ¶ 15*.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

26. On or about December 28, 2006, ownership of the Policy was transferred from the John P. Utsick Irrevocable Trust Dated 2/4/04 to the SEC Receiver.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

27. On or about January 7, 2007, the SEC Receiver was designated sole primary beneficiary to the Policy proceeds.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

28. By Motion for Authority to Sell Remaining Life Insurance Policies filed on or about April 29, 2021 in the Florida Action, the SEC Receiver sought, *inter alia*, authority to enter into a Life Settlement Purchase Agreement, transferring the receivership estate's rights, title and interest in and to the Policy. *A copy of SEC Receiver's motion filed on or about April 29, 2021 is attached hereto as* **Exhibit D**.

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

29. By Order entered on or about May 3, 2021 in the Florida Action, the U.S. District Court granted the SEC Receiver's Motion for Authority to Sell Remaining Life Insurance Policies. *A copy of the May 3, 2021 Order is attached hereto as* **Exhibit E**.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

30. Pursuant to the May 3, 2021 Order, the SEC Receiver transferred and assigned the Receivership Entities' ownership interest in the Policy to Life Factor II, LLC, i.e., Life Factor, and in exchange, the SEC Receiver retained certain irrevocable death benefits under the Policy (the "Retained Death Benefit") as memorialized in the Order which states, in relevant part:

> (a) $7,000,000.00 of the death benefits under [the Policy] if [the Insured] dies within the first one year period, beginning on the date that both the change of ownership and change of beneficiary confirmations are successfully completed on the record books of the Insurance Company (the "Closing Date");
>
> (b) $6,500,000.00 of the death benefits payable under [the Policy] if the Insured dies within second one year period, beginning on the Closing Date;
>
> (c) $6,000,000.00 of the death benefits payable under [the Policy] if the Insured dies within third one year period, beginning on the Closing Date …;

*See Exhibit E at ¶ 3*.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

31. The Order further states, in relevant part:

> The Insurance Company[1] will list the Retained Death Benefit in its records and will remit payment to the Receiver (and/or any co-beneficiary named by the Receiver) in accordance with the above schedule in the event the Insured passes during the time frame set forth herein. The Insurance Company will remit the balance to the Purchaser.[2]

*See Exhibit E at ¶ 4*.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

32. By Life Insurance Absolute Assignment form dated May 11, 2021, the SEC Receiver requested that the Policy be assigned to Life Factor. *A copy of the Life Insurance Absolute Assignment form dated May 11, 2021 is attached hereto as **Exhibit F***.

---

[1] "Insurance Company" is defined in the Order as "Brighthouse Financial f/k/a MetLife Universal Life Insurance."

[2] "Purchaser" is defined in the SEC Receiver's Motion for Authority to Sell Remaining Life Insurance Policies as "LifeFactor II, LLC, a Nevada limited liability company, with a mailing address of 6009 Welch Ave., Fort Worth, TX 76133."

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

33. By Life Insurance Change of Beneficiary and Irrevocable Beneficiary Designation forms dated May 11, 2021, the SEC Receiver and Life Factor requested that Life Factor be designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver be designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. *Copies of the Life Insurance Change of Beneficiary and Irrevocable Beneficiary Designation forms dated May 11, 2021 are attached hereto as **Exhibit G**.*

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

34. By letter to Brighthouse dated August 17, 2021, Life Factor requested, in relevant part, that "if the enclosed Collateral Assignment for [the Policy] is submitted, it needs to be voided. Do not complete the assignment on the [Policy]." Enclosed was a Basic Split Dollar Collateral Assignment purportedly assigning certain limited rights under the Policy to Spin Capital. *A copy of the letter dated August 17, 2021 is attached hereto as **Exhibit H**.*

**ANSWER:**  Spin Capital admits that Brighthouse has produced a copy of the letter attached to its Complaint as Exhibit H. Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

35. On or about October 22, 2021, Michael Trusner and Dava Trusner commenced an action in California Superior Court, County of Orange against, in relevant part, Life Factor and Brighthouse captioned, *Michael Trusner, et al. v. Life Factor II, LLC, et al.*, and identified by case number 30-2021-01227477-CU-BC-CJC (the "Trusner California Action"), seeking, *inter alia*, monetary damages and a judicial determination of the rights of the parties in connection with the Policy. *A copy of the Complaint filed in the Trusner California Action is attached hereto as **Exhibit I**.*

**ANSWER:**  Spin Capital admits the allegations of this paragraph.

36. Upon information and belief, Spin Capital, nine of the ten Leer Entities, Stefan Leer, Tatanisha Leer, Cap Factor and the Spin Capital Receiver are not parties to or otherwise involved in the Trusner California Action and thus are not necessarily subject to the jurisdiction of the court. Upon information and belief, the only Leer Entity that is a party to the Trusner California Action is Life Factor.

**ANSWER:**  Spin Capital admits that it was not a party to the Trusner California Action. Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph. Further answering, Spin Capital states that the

8

Trusner California Action has been dismissed.

37. In their Complaint, Michael Trusner and Dava Trusner allege, in relevant part, that as security for repayment of a promissory note, Life Factor agreed to pledge its beneficial interest in the Policy, but Life Factor subsequently failed to pay the sums due under the terms of the promissory note. *See Exhibit I at ¶¶ 10-12*.

**ANSWER:** Spin Capital admits that such allegations were made by the Trusners, but is without knowledge or information sufficient to form a belief as to the truth of those allegations. Further answering, Spin Capital states that the Trusner California Action has been dismissed.

38. By letter to Brighthouse dated January 4, 2022, Spin Capital, through counsel, informed Brighthouse that Spin Capital is a collateral assignee of the Policy and requested, in relevant part, "how [Spin Capital] can have its rights as a collateral assignee recognized." *A copy of the letter dated January 4, 2022 is attached hereto as **Exhibit J***.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

39. On or about February 4, 2022, Spin Capital commenced an action in New York Supreme Court, County of New York against, in relevant part, the Leer Entities, Stefan Leer, Tatanisha Leer, Cap Factor and Brighthouse captioned, *Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al.*, and identified by index number 650582/2022 (the "New York Action"), seeking, *inter alia*, monetary damages and a declaratory judgment declaring the rights of the parties in connection with the Policy. *A copy of the Amended Complaint filed in the New York Action is attached hereto as **Exhibit K***.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

40. Upon information and belief, Michael Trusner and Dava Trusner are not parties to or otherwise involved in the New York Action and thus are not necessarily subject to the jurisdiction of the court.

**ANSWER:** Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph. Further answering, Spin Capital states that the Trusners are no longer parties to this case, and they have dismissed the Trusner California Action.

41. By Motion for Authority to Execute Assignment and Life Insurance Change of Beneficiary Forms filed on or about March 24, 2022 in the Florida Action, the SEC Receiver sought, *inter alia*, authority to execute an assignment form assigning the policy to Life Shares 1019, LLC, i.e., LS1019, and a beneficiary form irrevocably designating 53.33% of the death benefits under the Policy to LS1019 as primary beneficiary with the remaining 46.67% of death benefits representing the receivership estate's current Retained Death Benefit. *A copy of the SEC Receiver's motion filed on or about March 24, 2022 is attached hereto as **Exhibit L**.*

**ANSWER:** Spin Capital admits the allegations of this paragraph. Further answering, Spin Capital states that the SEC Receiver was not made aware of Spin Capital's collateral interest in the Policy when he filed the aforesaid Motion.

42. By Order entered on or about March 25, 2022 in the Florida Action, the U.S. District Court granted the SEC Receiver's Motion for Authority to Execute Assignment and Life Insurance Change of Beneficiary Forms. *A copy of the March 25, 2022 Order is attached hereto as **Exhibit M**.*

**ANSWER:** Spin Capital admits the allegations of this paragraph. Further answering, Spin Capital states that the U.S. District Court was not made aware of Spin Capital's collateral interest in the Policy when it entered the March 25, 2022 Order.

43. By Life Insurance Absolute Assignment form dated March 31, 2022, the SEC Receiver and Life Factor requested that the Policy be assigned to LS1019. *A copy of the Life Insurance Absolute Assignment form dated March 31, 2022 is attached hereto as **Exhibit N**.*

**ANSWER:** Spin Capital admits the allegations of this paragraph. Further answering, Spin Capital states that the SEC Receiver was not made aware of Spin Capital's collateral interest in the Policy when he submitted the Absolute Assignment dated March 31, 2022,

44. By Life Insurance Change of Beneficiary form dated March 31, 2022, the SEC Receiver and Life Factor requested that LS1019 be designated as irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver be re-designated as irrevocable primary beneficiary to 46.67% of the Policy proceeds. *A copy of the Life Insurance Change of Beneficiary form dated March 31, 2022 is attached hereto as **Exhibit O**.*

**ANSWER:** Spin Capital admits the allegations of this paragraph. Further answering, Spin Capital states that the SEC Receiver was not made aware of Spin Capital's collateral interest in the Policy when he submitted the Change of Beneficiary form dated March 31, 2022

45, By Order of the New York Supreme Court dated January 6, 2023 in connection with the New York Action (the "Spin Capital Receiver Order"), the New York Supreme Court appointed Fred Stevens, i.e., the Spin Capital Receiver, as Temporary Receiver and, in relevant part, ordered that:

> the Receiver is authorized to forthwith take possession, custody, and control of [the Policy] and all documents, records, and information relating or pertaining to [the Policy] (collectively, the "Property") …
>
> the Receiver is authorized to communicate with [the] insurance company[y] that ha[s] issued the [the Policy] (and such other policies, if any, constituting Plaintiff's collateral), pay premiums on and other necessary expenses relating to [the Policy] (and such other policies, if any, constituting Plaintiffs collateral), to commence, defend, or participate in actions and legal proceedings necessary for the protection of the Property, and to collect and receive all income, earnings, profits, refunds, distributions, and proceeds derived from the Property; …
>
> the Receiver shall forthwith deposit all monies received by him at the time he receives the same in his own name as the Receiver in an account at Signature Bank and such account shall show die name of this action, and the Receiver shall not be permitted to make withdrawals therefrom except as either provided for in this Order, or directed by the Court herein in a subsequent Order …
>
> all parties obligated to remit any income, earnings, profits, refunds, distributions, and proceeds to Leer Defendants on account of [the Policy] shall make such remittance to the Receiver; and that Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds and from selling, assigning, transferring, encumbering, amending, modifying, cancelling, terminating, or disposing of [the Policy] (and such other policies, if any, constituting Plaintiff s collateral) …

*A copy of the Spin Capital Receiver Order is attached hereto as **Exhibit P**. See ¶¶ 7, 10, 12, 14.*

**ANSWER:** Spin Capital admits the allegations of this paragraph.

46. The Spin Capital Receiver Order further states that nothing therein "shall abridge or otherwise effect the residual death benefits in [the Policy] retained by [the SEC Receiver]." *See Ex. P at ¶ 1 n.1.*

> **ANSWER:**  Spin Capital admits the allegations of this paragraph.

47. Upon information and belief, the Insured died on or about June 8, 2023. *A copy of the Insured's Certification of Death is attached hereto as **Exhibit Q***.

> **ANSWER:**  Spin Capital admits the allegations of this paragraph.

48. As a result of the death of Insured, Policy death benefits in the amount of $15,000,000.00 ("Death Benefit") became due to a beneficiary or beneficiaries, and Brighthouse concedes liability to that effect.

> **ANSWER:**  Spin Capital admits the allegations of this paragraph.

49. By Claim Form dated June 28, 2023, Stefan Leer, on behalf of LS1019, asserted a claim for the Death Benefit. *A copy of the Claim Form dated June 28, 2023, with enclosures, is attached hereto as **Exhibit R***.

> **ANSWER:**  Spin Capital admits the allegations of this paragraph.

50. ``Upon information and belief, pursuant to the Spin Capital Receiver Order, Stefan Leer and the Leer Entities are enjoined and restrained from collecting any proceeds of the Policy. *See Exhibit P at ¶ 14*.

> **ANSWER:**  Spin Capital admits the allegations of this paragraph.

51. By Claim Form dated July 14, 2023, the SEC Receiver asserted a claim for the Death Benefit. *A copy of the Claim Form dated July 14, 2023 is attached hereto as **Exhibit S***.

> **ANSWER:**  Spin Capital admits the allegations of this paragraph.

52. In subsequent communications with Brighthouse, the SEC Receiver, through counsel, reasserted a claim for the Death Benefit but in the amount of only $6,000,000.00 pursuant to the terms of the May 3, 2021 Order in the Florida Action. *See Exhibit E at ¶ 3*.

> **ANSWER:**  Spin Capital admits the allegations of this paragraph.

53. By letter to the Leer Entities dated August 30, 2023, on which all parties to the New York Action were copied, the Spin Capital Receiver, in relevant part, demanded that the Leer Entities immediately turn over $1,985,367.42, representing the proceeds of John Hancock life insurance policy number 59592683[3] that became due as a result of the death of the Insured.

---

[3] John Hancock Life Insurance Company (USA) ("John Hancock") is a party to the New York Action and policy number 59592683 is, upon information and belief, another life insurance policy that was pledged as collateral for the Spin Capital Promissory Note. *See Exhibit K at ¶ 16*.

Upon information and belief, the proceeds were subject to the terms of the Spin Capital Receiver Order but were inadvertently disbursed to LS1019 on or about August 16, 2023. *A copy of the letter dated August 30, 2023 is attached hereto as **Exhibit T***.

      **ANSWER:**   Spin Capital admits the allegations of this paragraph.

54.    By letter to the Spin Capital Receiver dated August 31, 2023, on which all parties to the New York Action were copied, LS1019, through counsel, asserted, in relevant part, that the Spin Capital Receiver Order is void because the New York Supreme Court lacked subject matter jurisdiction when it issued it. *A copy of the letter to the Spin Capital Receiver dated August 31, 2023 is attached hereto as **Exhibit U***.

      **ANSWER:**   Spin Capital admits the allegations of this paragraph.

55.    By letter to Brighthouse dated August 31, 2023, LS1019, through counsel, demanded that Brighthouse immediately distribute $9,000,000.00 of the Death Benefit to LS1019 and $6,000,000.00 of the Death Benefit to the SEC Receiver on the grounds that LS1019 has never been subject to the jurisdiction of the court in the New York Action. LS1019 further represented that John Hancock, "[a]ware that the New York Court lacked jurisdiction of Life Shares 1019, LLC . . . already paid the entirety of the John Hancock policy death benefit to Life Shares 1019, LLC." *A copy of the letter to Brighthouse dated August 31, 2023 is attached hereto as **Exhibit V***.

      **ANSWER:**   Spin Capital admits the allegations of this paragraph.

56.    On or about August 31, 2023, LS1019 commenced an action in California Superior Court, County of Orange against Brighthouse captioned, *Life Shares 1019 LLC v. Brighthouse Life Insurance Company, et al.* and identified by case number 30-2023-01347187- CU-BC-CJC (the "LS1019 California Action"), concerning, in relevant part, Brighthouse's alleged failure to pay LS1019 $9,000,000.00 of the Death Benefit. *A copy of the Complaint filed in the LS1019 California Action is attached hereto as **Exhibit W***.

      **ANSWER:**   Spin Capital admits the allegations of this paragraph. Further answering, Spin Capital states that the LS1019 California Action was dismissed.

57.    Upon information and belief, Spin Capital, nine of the ten Leer Entities, Stefan Leer, Tatanisha Leer, Cap Factor, Michael Trusner, Dava Trusner and the Spin Capital Receiver are not parties to or otherwise involved in the LS1019 California Action and thus are not necessarily subject to the jurisdiction of the court. Upon information and belief, the only Leer Entity that is a party to the LS1019 California Action is LS1019.

      **ANSWER:** Spin Capital admits the allegations of this paragraph. Further answering, Spin Capital states that the LS1019 California Action was dismissed.

58. On or about September 1, 2023, in connection with the New York Action, the Spin Capital Receiver filed a motion for an Order to Show Cause concerning, in relevant part, the Leer Entities' refusal to cooperate with the Spin Capital Receiver in obtaining $9 million in proceeds of the Policy. The Spin Capital Receiver testified, in relevant part, that:

> Issues with payment of the Brighthouse Policy proceeds were further complicated by competing interests in that policy asserted by third parties in [the Trusner California Action] … Accordingly, Brighthouse needs to ensure that upon remittance of the Brighthouse Policy proceeds, which it is ready, willing, and able to do immediately, that it will not be subject to any further claims or litigation.
>
> … [T]he parties had agreed in concept to the terms of a release … (the "Brighthouse Release"). For good reason, Brighthouse wanted the parties to this case and the [California Trusner Action] to sign off on the Brighthouse Release before remitting the proceeds … I received a positive response from [Spin Capital]. Counsel to the Leer Defendants responded simply that "[o]ur client needs to review still. I'm not sure they will agree to this." …
>
> At a settlement conference on August 25, 2023, counsel to the Leer Defendants confirmed that the Leer Defendants would not agree to the Brighthouse Release and that Brighthouse should go ahead with commencing an interpleader action in federal district court.

*A copy of the Affidavit of the Spin Capital Receiver filed in Support of Motion for an Order to Show Cause on September 1, 2023, as amended on September 5, 2023, is attached hereto as **Exhibit X**; see ¶¶ 23-26.*

**ANSWER:** Spin Capital admits the allegations of this paragraph,

59. On or about September 5, 2023, in connection with the New York Action, the Spin Capital Receiver filed a Supplemental Affidavit in support of the motion for an Order to Show Cause and testified, in relevant part, that Brighthouse had just informed him of the LS1019 California Action and:

> No parties to this case other than Brighthouse are named as defendants or other parties in the [LS1019 California Action] … [it] omits any mention whatsoever of the existence of the instant case, this Court, the Receiver Order, the Receiver, Brighthouse's position on these issues which is well known, or the existence of

14

> competing liens and claims against the [Policy] proceeds. To the contrary, a cursory review of the [LS1019 California Action] Complaint would lead an uninformed reader to believe that this is just a simple case of an insurer refusing to pay policy proceeds to a policyholder for no good reason.

*A copy of the Supplemental Affidavit of the Spin Capital Receiver filed in Support of Motion for an Order to Show Cause on September 5, 2023 is attached hereto as* **Exhibit Y**; *see ¶¶ 10-11.*

**ANSWER:** Spin Capital admits the allegations of this paragraph.

60. By letter to Brighthouse dated September 11, 2023, LS1019, through counsel, in relevant part, reasserted its demand that Brighthouse pay the Death Benefit in full to the SEC Receiver and LS1019 because the court in the New York Action lacks jurisdiction over LS1019, and thus LS1019 is not subject to the Spin Capital Receiver Order. LS1019 also repeated its representation that John Hancock, "[a]ware that the New York Court lacked jurisdiction of Life Shares 1019, LLC . . . already paid the entirety of the John Hancock policy death benefit to Life Shares 1019, LLC." *A copy of the letter to Brighthouse dated September 11, 2023 is attached hereto as* **Exhibit Z**.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

61. By letter to LS1019 dated September 21, 2023, John Hancock, through counsel, in relevant part, asserted that Stefen Leer, on behalf of LS1019, submitted a claim for policy proceeds in violation of the Spin Capital Receiver Order, and on or about August 16, 2023, John Hancock mistakenly wired $1,985,367.42 to the account set forth in LS1019's claim form. John Hancock stated that LS1019's representations to Brighthouse that John Hancock, "[a]ware that the New York Court lacked jurisdiction of Life Shares 1019, LLC . . . already paid the entirety of the John Hancock policy death benefit to Life Shares 1019, LLC," are inaccurate. John Hancock further demanded that LS1019 immediately return $1,985,367.42 to John Hancock or transfer $1,985,367.42 to the Spin Capital Receiver. *A copy of the letter to LS1019 dated September 21, 2023 is attached hereto as* **Exhibit AA**.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

62. Pursuant to a Release executed by the Defendants on or about September 22, 2023, the Defendants disclaimed their interests in the $6,000,000.00 of the Death Benefit to which the SEC Receiver asserted a claim, which Brighthouse will disburse to the SEC Receiver, with applicable interest, thereby leaving $9,000,000.00 of the Death Benefit remaining due (the "Remaining Death Benefit").

**ANSWER:** Spin Capital admits the allegations of this paragraph.

63. Due to their involvement in litigations concerning their respective rights and interests in the Policy and the Remaining Death Benefit, Spin Capital, Stefan Leer, the Leer

15

Entities, Tatanisha Leer, Cap Factor, Michael Trusner, Dava Trusner and the Spin Capital Receiver have actual or potential claims to some or all of the Remaining Death Benefit.
.

**ANSWER:** Spin Capital admits that it has a claim to the Remaining Death Benefits, subject to the Spin Capital Receiver's right to possess the Remaining Death Benefit pending further order of the court in the New York Action, and denies that any other Defendant has a claim to the Remaining Death Benefits.

64. The Defendants have been unable to reach an agreement as to how the Remaining Death Benefit should be distributed.
**ANSWER:** Spin Capital admits the allegations of this paragraph.

65. There have been no other claims to the Remaining Death Benefit.

**ANSWER:** Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

66. Under the circumstances, Brighthouse cannot determine factually or legally who is entitled to the Remaining Death Benefit. By reason of the actual or potential claims of the interpleading defendants, Brighthouse is or may be exposed to multiple liability.

**ANSWER:** Spin Capital admits the allegations of this paragraph.

67. Brighthouse has no means other than this Interpleader action of protecting itself against multiple conflicting or potentially conflicting claims and/or multiple litigation on the part of the Defendants as to the Remaining Death Benefit.

**ANSWER:** Spin Capital denies the allegations of this paragraph.

68. Brighthouse is ready, willing and able to pay the Remaining Death Benefit, plus applicable interest, if any, in accordance with the terms of the Policy to whomever this Court shall designate
.

**ANSWER:** Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

69. As a mere stakeholder, Brighthouse has no interest (except to recover its attorneys' fees and cost of this action) in the Remaining Death Benefit and respectfully requests that this Court determine to whom the Remaining Death Benefit should be paid

**ANSWER:** Spin Capital denies that Brighthouse should recover its attorneys' fees and

costs for bringing this action.  Spin Capital admits the remaining allegations of this paragraph.

70.     Accordingly, Brighthouse will distribute to the Clerk of Court for deposit into the Registry of the Court the Remaining Death Benefit, plus applicable interest, if any, for disbursement in accordance with the judgment of this Court.

**ANSWER:**  Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

71.     Brighthouse has not brought this Complaint in Interpleader at the request of any of the Defendants. There is no fraud or collusion between Brighthouse and any of the Defendants. Brighthouse brings this Complaint of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

**ANSWER:**  Spin Capital admits that Brighthouse has not brought this Complaint in Interpleader at the request of Spin Capital.  Spin Capital is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

## Request for Stay

In the New York Action, which is referenced above in Paragraphs 39, 45 and 46, all of the Parties to this case (with the exception of Michael and Dava Trusner who have been dismissed) are currently litigating the rights of the Parties regarding certain insurance policies, including their rights to the funds Brighthouse seeks to interplead in this Court.  On January 4, 2024 Judge Andrew Borrok of the Commercial Division of the New York Supreme Court, County of New York, entered an order in the New York Action, a copy of which is attached as Exhibit 1.  That order states that the New York Supreme Court "is the Court of primary jurisdiction as it relates to the dispute between the parties." (Ex. 1, p. 2).  In order to avoid duplicative litigation, Spin Capital will be requesting this Court to enter a stay of further proceedings in this case pending further proceedings in the New York Action.

17

WHEREFORE, Defendant, Spin Capital, LLC, requests that this Court enter a stay of this action pending further proceedings in the New York Action and enter such additional and further relief as the Court deems just.

Dated: January 10, 2024

        Respectfully submitted,

        **BRYAN CAVE LEIGHTON PAISNER LLP**
        By: */s/ Jason J. DeJonker*
        Jason J. DeJonker
        161 N Clark Street, Suite 4300
        Chicago, IL 60601
        Tel: 312-602-5005
        Email: jason.dejonker@bclplaw.com
        *Attorneys for Defendant, Spin Capital, LLC*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on January 10, 2024, I electronically filed the foregoing document with the Clerk of the above-referenced Court through the CM/ECF system, which will send notification of such filing and serve copies of the same on all attorneys of record.

        */s/ Jason J. DeJonker*
        Jason J. DeJonker