UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

BRIGHTHOUSE LIFE INSURANCE COMPANY,

        Plaintiff,

   v.

SPIN CAPITAL, LLC;
GOLDEN FOOTHILL INSURANCE SERVICES, LLC;
LIFE FACTOR II, LLC;
LIFE SHARES II, LLC;
EL DORADO HILLS INSURANCE SOLUTIONS, INC.;
LONE WOLF INSURANCE SERVICES, INC.;
ELDO INVESTMENTS, LLC;
THE GENESIS LS FUND, LLC;
KTL HOLDINGS, INC.;
DRVN HOLDINGS, LLC;
LIFE SHARES 1019, LLC;
STEFAN LEER;
TATANISHA LEER;
CAP FACTOR, LLC;
MICHAEL TRUSNER;
DAVA TRUSNER; and
FRED STEVENS, AS
COURT-APPOINTED TEMPORARY RECEIVER,

        Defendants.
-----------------------------------------------------------X

Case No.:
1:23-cv-08570-DEH

**ORAL ARGUMENT
REQUESTED**

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCHARGE, DISMISSAL AND OTHER RELIEF IN INTERPLEADER, <u>INCLUDING ATTORNEYS' FEES</u>

**d'ARCAMBAL OUSLEY & CUYLER
BURK LLP**

Michelle J. d'Arcambal
Tiffany C. Millioen

40 Fulton Street, Suite 1501
New York, NY 10038
(212) 971-3175
*Attorneys for Plaintiff*
*Brighthouse Insurance Company of America*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT.................................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

    A.  The Policy .......................................................................................................................3
    B.  The Florida Action ........................................................................................................3
    C.  The New York State Action ...........................................................................................4
    D.  The Death Benefit ..........................................................................................................5
    E.  The Adverse Claims ......................................................................................................5
    F.  The LS1019 California Action .......................................................................................6
    G.  Leer Parties' and LS1019's Refusal to Cooperate with the New York Receiver ........6
    H.  The SEC Receiver's Motion to Compel Turn Over and for Contempt.......................8
    I.  The Interpleader Action ...............................................................................................10

SALIENT PROCEDURAL HISTORY ...................................................................................10

LEGAL ARGUMENT ............................................................................................................11

I.   This Court Should Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Remining Death Benefit .....................................................................................................11

II.  Brighthouse is Entitled to its Attorneys' Fees and Costs .................................................13

    A.  Legal Standard for Awarding Fees to a Disinterested Stakeholder ...........................13
    B.  Equity Weighs in Favor of Awarding Brighthouse All Attorneys' Fees and Costs....15
        1.  The Claimants' Dispute Involves Complex Issues That are Not the "Ordinary Cost of Doing Business" ....................................................................................15
        2.  Certain Claimants Have Improperly Protracted the Proceedings.......................16
        3.  Brighthouse Has Acted in Good Faith and With Diligence ................................18
        4.  Brighthouse Has Performed Unique Services .....................................................19
        5.  The Services Did Not Benefit Brighthouse.........................................................20
    C.  Brighthouse Should be Reimbursed for Attorneys' Fees and Costs Incurred in the Florida Action and the LS1019 California Action .....................................................20
        1.  The Florida Action is Directly Related to the Policy and Death Benefit.............20
        2.  The LS1019 California Action is Directly Related to the Policy and Death Benefit ................................................................................................................21
        3.  Awarding an Innocent Stakeholder Fees Incurred in Connection With Litigations Other Than the Interpleader Action is Not Without Precedent.............................23
    D.  The Court May Impose Sanctions Upon the Claimants .............................................24

CONCLUSION .......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*A/S Krediit Pank v. Chase Manhattan Bank*,
    303 F.2d 648 (2d Cir. 1962) .......................................................................................................17

*Bank of Am. N.A. v. Morgan Stanley & Co. Inc.*,
    No. 10-CV-6322 (RJH), 2011 WL 2581765 (S.D.N.Y. June 24, 2011) .....................................13

*Barton v. Barbour*,
    104 U.S. 126, 1881 WL 19839 (1881) .................................................................................20, 21

*BNP Paribas v. Wayzata Opportunities Fund II, L.P.*,
    09 CIV. 5351 (DLC), 2010 WL 1875716 (S.D.N.Y. May 11, 2010) .........................................12

*Clarkson Co. v. Shaheen*,
    533 F. Supp. 905, 1982 WL 1151101 (S.D.N.Y. 1982) .....................................................14, 24

*Companion Life Ins. Co. v. Schaffer*,
    442 F. Supp. 826, 1977 WL 555522 (S.D.N.Y. 1977) .............................................................16

*Ex parte Robinson*,
    86 U.S. 505, 1873 WL 16067 (1873) .......................................................................................25

*Fischbein, Badillo & Wagner v. Tova Realty Co.*,
    193 A.D.2d 442, 597 N.Y.S. 2d 676 (1st Dep't 1993) .............................................................15

*Indem. Ins. Co. of N. Am. v. Robinson*,
    No. 90 CIV. 3765 (KC), 1991 WL 173115 (S.D.N.Y. Aug. 28, 1991) .....................................18

*John Hancock Mut. Life Ins. Co. v. Doran*,
    138 F. Supp. 47 (S.D.N.Y 1956) .............................................................................................19

*Klebanoff v. Mut. Life Ins. Co. of N.Y.*,
    246 F. Supp. 935 (D. Conn. 1965) ...........................................................................................15

*Mendez v. Tchrs. Ins. & Annuity Ass'n & Coll. Ret. Equities Fund*,
    982 F.2d 783, 1992 WL 383108 (2d Cir. 1992) .......................................................................12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Clemente*,
    No. 98 CIV. 1756 LMM, 2001 WL 536929 (S.D.N.Y. May 21, 2001) .....................................15

*MetLife Investors USA Ins. Co. v. Zeidman,*
    734 F. Supp. 2d 304 (E.D.N.Y. 2010) .....................................................................................12

*Metro. Life Ins. Co. v. Mitchell*,
    966 F. Supp. 2d 97, 2013 WL 1968495 (E.D.N.Y. 2013) ...........................................12

*Metropolitan Life Insurance Co. v. Jackson*,
    896 F. Supp. 318 (S.D.N.Y. 1995)...........................................................................14

*MWH Int'l, Inc. v. Inversora Murten, S.A.*,
    2013 WL 3717492 (S.D.N.Y. July 16, 2013), *report and recommendation adopted*, 2013 WL
    12616635 (S.D.N.Y. Aug. 7, 2013) ...........................................................................18

*Priority Recs., Inc. v. Bridgeport Music, Inc.*,
    907 F. Supp. 725, 1995 WL 714424 (S.D.N.Y. 1995).................................................14

*Procup v. Strickland*,
    792 F.2d 1069 (11th Cir. 1986)................................................................................25

*Renasant Bank, Inc. v. AVE, Inc.*,
    No. CV 19-0733-CG-MU, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021) ....................23

*Septembertide Pub., B.V. v. Stein and Day, Inc.*,
    884 F.2d 675 (2d Cir. 1989)........................................................................... 13-14, 17

*Smith Barney, Harris Upham & Co. v. Connolly*,
    887 F. Supp. 337, 1994 WL 683154 (D. Mass. 1994) ................................................19

*Sparta Fla. Music Grp., Ltd. v. Chrysalis Recs., Inc.*,
    566 F. Supp. 321 (S.D.N.Y. 1983)............................................................................15

*Sun Life Ins. & Annuity Co. of New York v. Braslow*,
    38 A.D.3d 529, 831 N.Y.S.2d 497 (2d Dep't 2007) ....................................................15

*Travelers Ins. Co. v. Est. of Garcia*,
    No. 00-CV-2130 (ILG), 2003 WL 1193535 (E.D.N.Y. Feb. 4, 2003) ....................15, 16

*U.S. Life Ins. Co. in City of New York v. Blum*,
    No. 09 CIV 9416 LTS JCF, 2011 WL 70385 (S.D.N.Y. Jan. 3, 2011) ........................15

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
    481 U.S. 787 1987 WL 1608276 (1987)....................................................................25

**<u>Statutes</u>**

28 U.S.C. § 2361 ...............................................................................................*passim*
28 U.S.C. § 1335 ...............................................................................................*passim*

**<u>Other Authorities</u>**

7 Wright, Miller & Kane, Federal Practice and Procedure § 1719 (3d ed.)................................14, 16

## **Rules**

CPLR 1006....................................................................................................................................15
Federal Rule of Civil Procedure 22.............................................................................................14
Federal Rule of Civil Procedure 41...............................................................................................1

Plaintiff, Brighthouse Life Insurance Company ("Brighthouse"), by and through its undersigned attorneys, hereby submits this Motion for Discharge, Dismissal and Other Relief in Interpleader, Including Attorneys' Fees, as provided for by the Court's Memo Order dated February 12, 2024. (ECF Doc. 76.) Brighthouse respectfully moves the Court pursuant to 28 U.S.C. §§ 1335 and 2361 for an Order: (i) discharging Brighthouse from all liability under the life insurance policy at issue; (ii) permanently enjoining Defendants[1] Spin Capital, LLC ("Spin Capital"), the Leer Parties,[2] Life Shares 1019, LLC ("LS1019"), Cap Factor, LLC[3] ("Cap Factor") and Fred Stevens, as Court-Appointed Temporary Receiver (the "New York Receiver"), and the Proposed Intervenors[4] (the Proposed Intervenors and the Defendants together, the "Claimants") from commencing any other actions or proceedings seeking payment of the remaining life insurance death benefits or otherwise in connection with the life insurance policy at issue; (iii) dismissing Brighthouse from this action with prejudice; (iv) awarding Brighthouse its attorneys' fees and costs; and (v) imposing sanctions upon the Claimants.

### PRELIMINARY STATEMENT

---

[1] Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), on October 26, 2023 Defendants Michael Trusner and Dava Trusner (the "Trusners") were voluntarily dismissed as parties in this action. (ECF Doc. 27.)

[2] The "Leer Parties" include Defendants Stefan Leer, Tatanisha Leer, and various entities of which Stefan Leer is a principal: Golden Foothill Insurance Services, LLC; Life Factor II LLC; Life Shares II, LLC; El Dorado Hills Insurance Solutions, Inc.; Lone Wolf Insurance Services, Inc.; ELDO Investments, LLC; The Genesis LS Fund, LLC; KTL Holdings, Inc.; and DRVN Holdings, LLC.

[3] Cap Factor has not answered or appeared in this action and default has been entered against it. (Docket Entry Text, March 14, 2024.) Brighthouse's motion for default judgment against Cap Factor as to the interpleader relief requested in the Complaint will be forthcoming and filed as a separate motion.

[4] The Proposed Intervenors consist of members of the LS1019 investor group, including Stephen Marik Brockman, Aaron Davison, Neilesh Desai, Jennifer Pursley, Michael Schwartz, Sheila Schwartz, The Charissa & Toney Trust, The Charissa Toney Living Trust, Matthew Troy and American River Ag, Inc. The Proposed Intervenors filed eleven Notices of Appearance on January 22, 2024 representing that they intend to move to intervene in this action. (ECF Docs. 60-70.) To date, no application for intervention has been filed.

In this protracted dispute concerning the Claimants' rights and interests in the life insurance policy at issue and the remaining death benefit, Brighthouse is a disinterested stakeholder that has been caught in the crossfire of an ongoing feud among the Claimants. For the past nine months, Brighthouse has been repeatedly confronted with a series of Hobson's choices and various demands by the Claimants. Had Brighthouse complied with any of the demands, Brighthouse would have been exposed to liability to the other Claimants.

Brighthouse has incurred substantial legal expenses due to the uncooperative attitude of most[5] of the Claimants and their conflicting demands. At all times, Brighthouse has acted in good faith, despite the antagonistic attitude of most of the Claimants toward one another, and fully protected the corpus of the death benefit. Brighthouse was ready, willing and able to pay the death benefit for nearly eight months and made extensive efforts to do so. The Claimants, aware of the 8% interest rate that has been accruing on the proceeds, may well have been deliberately encouraging delay, to the detriment of Brighthouse. Critically, all the legal expenses incurred were directly related to the Claimants' rights and interests in the policy and death benefit. As such, reimbursement of Brighthouse's legal fees and costs, currently totaling $211,851.14,[6] is fair and equitable, in accordance with the law in this Circuit, and will not deplete the disputed funds, as it is not even 55% of the interest amount.

In support of this motion, Brighthouse also submits the following declarations and the exhibits annexed thereto:

- Declaration of Michelle J. d'Arcambal, Esq. ("d'Arcambal Decl.")
- Declaration of Tiffany C. Millioen, Esq. ("Millioen Decl.")

---

[5] The New York Receiver has been the only consistently cooperative Claimant. He is excluded from any reference to inappropriate or wrongful conduct of the Claimants.
[6] Brighthouse respectfully reserves the right to supplement with additional fees incurred in connection with this motion, responses to same, and otherwise in connection with Brighthouse's entitlement to interpleader relief.

- Declaration of Emilia A. Quesada, Esq. ("Quesada Decl.")
- Declaration of Ronald K. Alberts, Esq. ("Alberts Decl.")

## FACTUAL BACKGROUND[7]

### A.  The Policy

The Travelers Insurance Company, now known as Brighthouse, issued flexible premium adjustable life insurance policy number 7447253 (the "Policy") with a policy date of November 7, 2004, which provided coverage on the life of John P. Utsick (the "Insured"). (Cmplt. ¶ 21, Ex. A.)[8] At the time the Policy was issued, the owner of the Policy and sole primary beneficiary to the Policy proceeds was the John P. Utsick Irrevocable Trust Dated 2/4/04. (*Id.* ¶ 22.)

### B.  The Florida Action

On or about April 17, 2006, the Securities and Exchange Commission ("SEC") commenced an action in the U.S. District Court for the Southern District of Florida[9] (the "Florida Action") against the Insured and certain entities associated with the Insured (collectively, the "Receivership Entities"). (Cmplt. ¶ 23, Ex. B.) In or around April 2006, Michael I. Goldberg (the "SEC Receiver") was appointed Receiver over the assets, liabilities and business interests of the Receivership Entities. (*Id.* ¶ 24, Ex. C.) In or around December 2006, ownership of the Policy was transferred to the SEC Receiver, and shortly thereafter the SEC Receiver was designated sole primary beneficiary to the Policy proceeds. (*Id.* ¶¶ 26, 27.)

In or around May 2021, the SEC Receiver transferred and assigned the Receivership Entities' ownership interest in the Policy to Life Factor II, LLC (one of the Leer Parties) ("Life Factor"), and

---

[7] The lengthy, cross-country history of this dispute is set forth in detail in Brighthouse's Complaint in Interpleader (the "Complaint") and the exhibits thereto. (ECF Doc. 1 to 1-27.) Brighthouse respectfully asks that the Court incorporate by reference the Complaint, exhibits and all prior pleadings as if set forth fully herein.

[8] Citations to "Cmplt. ¶ __" refer to Brighthouse's Complaint in Interpleader. (ECF Doc. 1.)

[9] *Securities and Exchange Commission v. John P. Utsick, et al.*, Case No. 1:06-cv-20975-PCH.

in exchange, the SEC Receiver retained certain irrevocable death benefits under the Policy. (*Id.* ¶ 30.)
In or around May 2021, Life Factor was designated irrevocable primary beneficiary to 53.33% of the
Policy proceeds and the SEC Receiver was designated irrevocable primary beneficiary to 46.67% of
the Policy proceeds. (*Id.* ¶ 33, Ex. G.)

In or around March 2022, Life Factor, with the purported consent of the SEC Receiver and as
authorized by a March 25, 2022 court order, assigned the Policy to LS1019. (*Id.* ¶ 43, Ex. N.) LS1019
was again designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC
Receiver was re-designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. (*Id.* ¶
44, Ex. O.)

### C.  The New York State Action and Appointment of the New York Receiver

On or about February 4, 2022, Spin Capital commenced an action in New York Supreme
Court, County of New York against, in relevant part, the Leer Parties (excluding DRVN Holding,
LLC), Cap Factor and Brighthouse[10] (the "New York State Action"), seeking, *inter alia*, monetary
damages and a declaratory judgment declaring the rights of the parties in connection with the Policy.
(Cmplt. ¶ 39, Ex. K.) On or about July 14, 2022, Spin Capital filed an Amended Complaint adding
DRVN Holding, LLC and LS1019 as defendants. (*Id.* Ex. K.)

By Order of the New York Supreme Court dated January 6, 2023 (the "New York Receiver
Order"), the New York Supreme Court appointed the New York Receiver and, in relevant part,
ordered:

- The New York Receiver is authorized to "collect and receive all income, earnings, profits,
  refunds, distributions, and proceeds derived from [the Policy];"
- "[A]ll parties obligated to remit any income, earnings, profits, refunds, distributions, and
  proceeds to Leer Defendants on account of [the Policy] shall make such remittance to the
  Receiver;" and

---

[10]*Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al.*, Index Number 650582/2022.

- "Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds … of [the Policy]."

(*Id.* ¶ 45, Ex. P.)

### D.  The Death Benefit

The Insured died on June 8, 2023. (Cmplt. ¶ 47, Ex. Q.) As a result of the death of Insured, Policy death benefits in the amount of $15,000,000 (the "Death Benefit") became due to a beneficiary or beneficiaries, and Brighthouse concedes liability to that effect. (*Id.* ¶ 48.) At the time of the Insured's death, LS1019 was primary beneficiary of record to 53.33% of the Policy proceeds and the SEC Receiver was primary beneficiary of record to 46.67% of the Policy proceeds. (*Id.* ¶ 44.)

### E.  The Adverse Claims

By Claim Form dated June 28, 2023, Stefan Leer, on behalf of LS1019, asserted a claim for the entire Death Benefit. (Cmplt. ¶ 49, Ex. R.) Pursuant to the New York Receiver Order, Stefan Leer and LS1019 are enjoined and restrained from collecting any proceeds of the Policy. (*Id.* ¶ 50, Ex. P.)

By Claim Form dated July 14, 2023, the SEC Receiver asserted a claim for the Death Benefit. (*Id.* ¶ 51, Ex. S.) In subsequent communications with Brighthouse, the SEC Receiver, through counsel, reasserted a claim for the Death Benefit but in the amount of only $6,000,000 pursuant to the terms of a May 3, 2021 court order. (*Id.* ¶ 52.)

In or around August 2023, LS1019 adopted the curious position that the New York Receiver Order is void because the New York Supreme Court lacked subject matter jurisdiction when it issued it (despite the fact that LS1019 had already appeared, filed an Amended Answer and engaged in motion practice). (*Id.* ¶ 54, Ex. U.) By letter dated August 31, 2023, LS1019, through counsel, demanded that Brighthouse immediately distribute $9,000,000 of the Death Benefit to LS1019 and $6,000,000 of the Death Benefit to the SEC Receiver on the grounds that LS1019 has never been subject to the jurisdiction of the court in the New York State Action. (*Id.* ¶ 55, Ex. V.)

### F.  The LS1019 California Action

On or about August 31, 2023 (with full knowledge that Brighthouse was preparing to file an interpleader complaint), LS1019 commenced an action in California Superior Court, County of Orange against Brighthouse[11] (the "LS1019 California Action") concerning, in relevant part, Brighthouse's alleged failure to pay LS1019 $9,000,000 of the Death Benefit. (Cmplt. ¶ 56, Ex. W.)

### G.  Leer Parties' and LS1019's Refusal to Cooperate with the New York Receiver

On or about September 1, 2023, in connection with the New York State Action, the New York Receiver filed a motion for an Order to Show Cause concerning, *inter alia*, the Leer Parties' refusal to cooperate with the New York Receiver in collecting $9,000,000 from Brighthouse (the "Turnover Motion").[12] (Cmplt. ¶ 58, Ex. X.) The New York Receiver testified, in relevant part, that:

> Issues with payment of the Brighthouse Policy proceeds were further complicated by competing interests in that policy asserted by third parties in a pending case in California Superior Court captioned *Michael Trusner, et al. v. LifeFactor II, LLC, et al.* … Accordingly, Brighthouse needs to ensure that upon remittance of the Brighthouse Policy proceeds, which it is ready, willing, and able to do immediately, that it will not be subject to any further claims or litigation.
>
> **… [T]he parties had agreed in concept to the terms of a release … (the "Brighthouse Release"). For good reason, Brighthouse wanted the parties to this case and the [California Trusner action] to sign off on the Brighthouse Release before remitting the proceeds … I received a positive response from [Spin Capital]. Counsel to the Leer Defendants responded simply that "[o]ur client needs to review still. I'm not sure they will agree to this." …**
>
> **At a settlement conference on August 25, 2023, counsel to the Leer Defendants confirmed that the Leer Defendants would not agree to the Brighthouse Release**

---

[11] *Life Shares 1019, LLC v. Brighthouse Life Insurance Company*, Case No. 30-2023-01347187-CU-BC-CJC.

[12] The Turnover Motion also concerned the New York Receiver's discovery, on August 30, 2023, that unbeknownst to him, LS1019, by and through its principal Stefan Leer, had submitted a competing claim for the proceeds of John Hancock Life Insurance Company (USA) ("John Hancock") policy number 59592683, and that on August 16, 2023, John Hancock inadvertently honored LS1019's claim rather than the New York Receiver's and wired $1,985,367.42 to LS1019. (*See* Turnover Motion ¶ 7.) To date, LS1019 has still not turned over the John Hancock funds, in direct violation of a subsequent order by the court in the New York State Action.

**and that Brighthouse should go ahead with commencing an interpleader action in federal district court.**

(emphasis added) (*Id.*) On or about September 5, 2023, the New York Receiver filed a Supplemental Affidavit in support of the Turnover Motion and testified, in relevant part, that Brighthouse had just informed him of the LS1019 California Action:

> No parties to this case other than Brighthouse are named as defendants or other parties in the [LS1019 California Action] … [it] omits any mention whatsoever of the existence of the instant case, this Court, the Receiver Order, the Receiver, Brighthouse's position on these issues which is well known, or the existence of competing liens and claims against the [Policy] proceeds. To the contrary, a cursory review of the [LS1019 California Action] Complaint would lead an uninformed reader to believe that this is just a simple case of an insurer refusing to pay policy proceeds to a policyholder for no good reason.

(*Id.* ¶ 59, Ex. Y.)

By letter to Brighthouse dated September 11, 2023, LS1019, in relevant part, reasserted its demand that Brighthouse pay the Death Benefit in full to the SEC Receiver and LS1019 because the court in the New York State Action lacks jurisdiction over LS1019, and thus LS1019 is not subject to the New York Receiver Order. (*Id.* ¶ 60, Ex. Z.) LS1019 also erroneously represented that John Hancock (a party to the New York State Action), "[a]ware that the New York Court lacked jurisdiction of Life Shares 1019, LLC . . . already paid the entirety of the John Hancock policy death benefit to Life Shares 1019, LLC." (*Id.*)

By letter to LS1019 dated September 21, 2023, John Hancock, in relevant part, asserted that Stefen Leer, on behalf of LS1019, submitted a claim for policy proceeds in violation of the New York Receiver Order, and on or about August 16, 2023, John Hancock *mistakenly* wired $1,985,367.42 to the account set forth in LS1019's claim form. (*Id.* ¶ 61, Ex. AA.) John Hancock stated that LS1019's representations to Brighthouse that John Hancock, "[a]ware that the New York Court lacked jurisdiction of Life Shares 1019, LLC . . . already paid the entirety of the John Hancock policy death

benefit to Life Shares 1019, LLC" are inaccurate. (*Id.*) John Hancock further demanded that LS1019

immediately return $1,985,367.42 to John Hancock or transfer $1,985,367.42 to the New York

Receiver. (*Id.*)

By Decision and Order dated January 4, 2024, the court in the New York State Action, in

relevant part, granted the Turnover Motion and explained that:

> In violation of the Receiver Order, Defendant Stefan Leer willfully and
> contumaciously applied on behalf of Life Shares 1019, LLC for a distribution under
> the John Hancock Policy and directed that distribution of $1,985,267.42 in insurance
> proceeds be routed to a Life Shares 1019, LLC account … and has refused to turn or
> direct that these monies be turned over to the Receiver. He is thus in civil contempt.
> He may purge this civil contempt of court by turning the Hancock Distribution over to
> the Receiver by 5 pm on January 5, 2024. If he fails to cause the proceeds to be
> deposited with the Receiver by such time … the Court may hold Mr. Leer in criminal
> contempt.

(d'Arcambal Decl. ¶ 29, Ex. 23 at 3.) Due to Stefan Leer's subsequent failure to comply with the

January 4, 2024 Decision and Order, the New York Receiver filed a contempt motion on January 12,

2024 and testified, in relevant part, that "[a]s of 5:00 p.m. on Friday, January 12, 2024, I have not

received any of the $1,985,367.42 Hancock Distribution that this Court ordered be turned over to me

by 5:00 p.m. on Friday, January 5, 2024." (d'Arcambal Decl. ¶ 30, Ex. 24 at ¶ 7.)  To date, the John

Hancock funds have not been turned over to the New York Receiver and oral argument on the

contempt motion is set for April 8, 2024. (d'Arcambal Decl. ¶ 30.)

**H.  The SEC Receiver's Motion to Compel Turn Over and for Contempt**

On or about September 8, 2023, the SEC Receiver filed a Motion to Compel Turn Over and

to Hold Brighthouse in Contempt. (d'Arcambal Decl. ¶ 12, Ex. 8.) The SEC Receiver's motion

stemmed directly from Brighthouse's inability to disburse $6,000,000 of the Death Benefit to the SEC

Receiver because certain Defendants refused (a) to confirm to Brighthouse whether they were

asserting adverse claims to the $6,000,000 sought by the SEC Receiver and (b) to agree to release

Brighthouse from liability in connection with payment to the SEC Receiver. (*See* d'Arcambal Decl. ¶ 12, Ex. 8.) The court in the Florida Action set a status conference for September 15, 2023. (d'Arcambal Decl. ¶ 13.)

On September 11, 2023, in advance of the conference, Brighthouse asked the Defendants to sign consent letters confirming that they had no objection to Brighthouse's distribution of funds to the SEC Receiver and they would release and discharge Brighthouse from liability in connection with those funds. (d'Arcambal Decl. ¶ 13.) Everyone except the Leer Parties and LS1019 signed the consent letters. (d'Arcambal Decl. ¶¶ 13, 14, Exs. 9, 10.)

On the morning of September 15, 2023, before the status conference, LS1019, through counsel, informed Brighthouse that it would consent to the distribution to the SEC Receiver. (d'Arcambal Decl. ¶ 16.) However, counsel expressly stated that he was "writ[ing] on behalf of Life Shares 1019 *only*" (emphasis added); in other words, the Leer Parties continued to withhold consent. (d'Arcambal Decl. ¶ 16, Ex. 12.) The SEC Receiver, the New York Receiver, Brighthouse (through counsel) and LS1019 (through counsel) attended the status conference before the Honorable Paul C. Huck. (d'Arcambal Decl. ¶ 17.) Judge Huck, in relevant part, directed LS1019 and the Leer Parties to sign releases so Brighthouse could pay the SEC Receiver. (d'Arcambal Decl. ¶ 17, Ex. 13 at 11:20-23.) Judge Huck subsequently issued a September 28, 2023 order denying the SEC Receiver's motion as moot, noting "that based on the circumstances implicated by the [SEC Receiver's] Motion, including the various claimants involved in other litigation relating to the insurance proceeds, it is unlikely that the Court would have held Brighthouse in contempt of Court." (d'Arcambal Decl. ¶ 19, Ex. 14.)

Pursuant to a Release executed by the Defendants on or about September 22, 2023, all Defendants finally disclaimed their interests in the $6,000,000 of the Death Benefit to which the SEC

Receiver asserted a claim. Brighthouse disbursed $6,000,000, plus applicable interest, to the SEC Receiver on or about October 3, 2023 thereby leaving $9,000,000 of the Death Benefit remaining due (the "Remaining Death Benefit"). (Cmplt. ¶ 62.)

## I.   The Interpleader Action

Due to the adverse claims and multiple litigations concerning their respective rights and interests in the Policy and the Death Benefit, Brighthouse commenced this interpleader action against the Defendants on September 28, 2023. (ECF Doc. 1.) As a mere stakeholder, Brighthouse had no interest (except to recover its attorneys' fees and costs) in the Remaining Death Benefit and has, at all times, been ready, willing and able to pay the Remaining Death Benefit. (Cmplt. ¶ 68.) However, under the circumstances, Brighthouse is unable to make that determination without exposing itself to multiple liability on account of the adverse claims of the Defendants. (*Id*. ¶ 66.) Accordingly, on or about February 29, 2024, Brighthouse deposited $9,388,602.74, representing the Remaining Death Benefit plus interest, with the Clerk of Court so that the Court may determine to whom the Remaining Death Benefit should be paid. (Docket Text Entry, Mar. 14. 2024.)

## SALIENT PROCEDURAL HISTORY

Brighthouse commenced this Action with the filing of the Complaint on September 28, 2023. (ECF Doc. 1.) Brighthouse filed a Motion for Interpleader Deposit pursuant to 28 U.S.C. § 1335 on October 4, 2023 (ECF Doc. 9), which the Court denied without prejudice to renew once all Defendants were served and had the opportunity to appear. (ECF Doc. 10.) All Defendants were subsequently served. (ECF Docs. 11-13, 15-26.) On October 27, 2023, Brighthouse filed a Motion for Interpleader Deposit and Related Relief pursuant to 28 U.S.C. §§ 1335 and 2361 (ECF Doc. 28), which was unopposed.

Spin Capital and the New York Receiver filed their Answers on January 10, 2024 (ECF Docs. 51, 53), and the Leer Parties and LS1019 filed their Answers on January 24, 2024. (ECF Docs. 71, 72.) Due to Cap Factor's failure to file an Answer or otherwise appear, a Clerk's Certificate of Default was entered on March 14, 2024. (ECF Doc. 85.)

A status conference with the Court was held on January 12, 2024. (*See* ECF Doc. 56.) After the conference and in accordance with the Court's Order (*id.*), Brighthouse conferred in good faith with the Claimants in an attempt to resolve the matter. However, the Parties could not reach agreement on the issue of Brighthouse's attorneys' fees and costs, and on February 9, 2023 the Court set a briefing schedule concerning the fees and costs to which Brighthouse is entitled. (ECF Doc. 75.)

In an attempt to reach a resolution concerning distribution of the Remaining Death Benefit, Brighthouse prepared and circulated to the Claimants a draft stipulation and joint motion. (ECF Doc. 79.) The draft contained standard language concerning the release and discharge of Brighthouse and restraining the Claimants from asserting further claims against Brighthouse in connection with the Policy or Remaining Death Benefit. (d'Arcambal Decl. ¶ 23, Ex. 18.) The Proposed Intervenors rejected all provisions in the draft relating to release, discharge and restraint, and the Leer Parties subsequently stated that they would not give releases. (d'Arcambal Decl. ¶ 24, Ex. 19.) Accordingly, Brighthouse asked the Court to rule on its pending deposit motion, which was granted on February 22, 2024. (ECF Doc. 80.)

## LEGAL ARGUMENT

### I.   This Court Should Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Reminting Death Benefit

Brighthouse seeks an Order from the Court discharging Brighthouse from all liability in connection with the Policy and Remaining Death Benefit, permanently enjoining the Claimants from

commencing any other actions or proceedings seeking payment of the Remaining Death Benefit or otherwise in connection with the Policy, and dismissing Brighthouse from this action with prejudice. 28 U.S.C. § 2361 "authorizes a district court to discharge the stakeholder in any civil interpleader action from further liability to claimants." *Mendez v. Tchrs. Ins. & Annuity Ass'n & Coll. Ret. Equities Fund*, 982 F.2d 783, 787, 1992 WL 383108 (2d Cir. 1992). "Generally, once an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, the court should readily grant discharge of the stakeholder …" *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 103, 2013 WL 1968495 (E.D.N.Y. 2013) (alterations and internal quotation marks omitted). The jurisdictional elements of an interpleader are satisfied where a plaintiff has alleged that (1) it is in possession of a single fund of over $500; (2) it has a reasonable fear of conflicting claims, regardless of the merits of those competing claims; and (3) it has deposited the disputed fund with the court. *MetLife Investors USA Ins. Co. v. Zeidman,* 734 F. Supp. 2d 304, 314 (E.D.N.Y. 2010).

Here, at the time of filing the Complaint, Brighthouse was in possession of the Remaining Death Benefit in the amount of $9,000,000 for which it received competing claims. Brighthouse has deposited the Remaining Death Benefit, plus applicable interest, with the Court. Thus, Brighthouse is entitled to be dismissed from the case and absolved of liability in connection with the Policy, Remaining Death Benefit and interest due thereon. *See MetLife Investors USA*, 734 F. Supp. 2d at 314 (once requirements of interpleader are satisfied, insurance company that had deposited the disputed fund with court was entitled to be dismissed and absolved of liability); *BNP Paribas v. Wayzata Opportunities Fund II, L.P.*, 09 CIV. 5351 (DLC), 2010 WL 1875716 at *3 (S.D.N.Y. May 11, 2010) (disinterested stakeholder with no claim to disputed funds was discharged from liability to adverse claimants and permanent injunction entered). The only parties with an interest in the Remaining Death Benefit – the Claimants – are within the Court's jurisdiction, and the Court has

access to the funds to which at least one of the Claimants is entitled. Brighthouse, as neutral stakeholder who has acted in good faith with respect to the Claimants, has no interest in how this Court ultimately determines their respective rights nor does it have any interest in the funds on deposit with the Court, except to recover its attorneys' fees and costs.

In addition to allowing a district court to discharge an interpleader plaintiff, 28 U.S.C. § 2361 allows a district court to "enter its order restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court" and to "make the injunction permanent." 28 U.S.C. § 2361. In situations such as this one, where a neutral stakeholder faced with rival claims to funds acknowledges liability, it is reasonable and sensible that interpleader should also protect the stakeholder from vexatious and multiple litigation. *See Bank of Am. N.A. v. Morgan Stanley & Co. Inc.,* No. 10-CV-6322 (RJH), 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011) (alterations and internal quotation marks omitted).

Here, a permanent injunction restraining the Claimants from continuing or bringing any suits concerning the Policy or Remaining Death Benefit is necessary to protect Brighthouse from a multiplicity of actions and to ensure the effectiveness of the interpleader relief granted herein. Therefore, Brighthouse is entitled to dismissal from this case and discharge of liability and the Claimants should be permanently enjoined from prosecuting any actions for payment of the Remaining Death Benefit or interest due thereunder in any State or United States court.

## II.    Brighthouse is Entitled to its Attorneys' Fees and Costs

### A.  Legal Standard for Awarding Fees to a Disinterested Stakeholder

"A disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees" when it is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has

deposited the disputed funds into court, and (4) has sought a discharge from liability." *Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989). Attorneys' fees and costs "are generally awarded against the interpleader fund." *Id.*

Brighthouse plainly meets the criteria for an award of attorneys' fees and costs, which should be paid out of the $9,388,602.74 on deposit with the Court. Brighthouse had no interest in the Remaining Death Benefit (except to recover its attorneys' fees and costs) (Cmplt. ¶ 69); has fully conceded liability (*Id.* ¶ 48); has deposited $9,388,602.74 with the Court (ECF Docket Text, Mar. 14, 2024); and is seeking a discharge from liability. *See, e.g., Metropolitan Life Insurance Co. v. Jackson*, 896 F. Supp. 318, 324–25 (S.D.N.Y. 1995) (granting insurance company attorneys' fees in interpleader action where all four criteria were met).

There is no limiting language in 28 U.S.C. § 1335 (the federal interpleader statute) concerning attorneys' fees. The rule, developed through case law, is that "[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, *whenever it is fair and equitable to do so*." *Priority Recs., Inc. v. Bridgeport Music, Inc.*, 907 F. Supp. 725, 734, 1995 WL 714424 (S.D.N.Y. 1995) (citing 7 Wright, Miller & Kane, Federal Practice and Procedure § 1719 at 629–30 (1986)) (emphasis added). Given the equitable nature of fee awards, district courts have "wide discretion to award costs and attorneys' fees … to the stakeholder." *Clarkson Co. v. Shaheen*, 533 F. Supp. 905, 919, 1982 WL 1151101 (S.D.N.Y. 1982).

In making the equitable determination whether to award fees and costs, courts take into account a number of factors: (1) whether the claimants improperly protracted the proceedings; (2) whether the case is simple or involved; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the stakeholder performed any unique services for the claimants or the court;

and (5) whether the services rendered benefitted the stakeholder. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Clemente*, No. 98 CIV. 1756 LMM, 2001 WL 536929, at *1 (S.D.N.Y. May 21, 2001) (awarding stakeholder fees in the amount of $263,963.63 when equitable factors were satisfied). Another consideration is "whether the costs and fees resulting from a dispute between claimants are ordinary 'costs of doing business' for the company." *Sparta Fla. Music Grp., Ltd. v. Chrysalis Recs., Inc.*, 566 F. Supp. 321, 322 (S.D.N.Y. 1983).[13]

### B. Equity Weighs in Favor of Awarding Brighthouse All Attorneys' Fees and Costs

Brighthouse should be awarded its attorneys' fees and costs in their entirety because all equitable factors weigh in its favor.

### 1. The Claimants' Dispute Involves Complex Issues That are Not the "Ordinary Cost of Doing Business"

Courts in the Second Circuit have routinely awarded attorneys' fees to interpleading stakeholders (including insurance companies) when they have incurred fees that are not part of the "ordinary cost of doing business" or in matters involving complex issues. *See, e.g., U.S. Life Ins. Co. in City of New York v. Blum*, No. 09 CIV 9416 LTS JCF, 2011 WL 70385, at *3 (S.D.N.Y. Jan. 3, 2011) (insurer entitled to expenses incurred outside the ordinary cost of doing business and for which the insurer was not responsible); *Travelers Ins. Co. v. Est. of Garcia*, No. 00-CV-2130 (ILG), 2003

---

[13] Additionally, while state law relating to attorneys' fees is not conclusive upon a federal court, applicable state law may be "relevant in guiding the Court in the sound exercise of its discretion" in determining whether to award fees and costs to the stakeholder. *Klebanoff v. Mut. Life Ins. Co. of N.Y.*, 246 F. Supp. 935, 950 (D. Conn. 1965). CPLR 1006 (the New York interpleader statute) states, in relevant part, that "[t]he court shall impose such terms relating to payment of expenses, costs and disbursements as may be just and which may be charged against the subject matter of the action." CPLR 1006(f). Courts in New York typically award attorneys' fees to innocent stakeholders. *See, e.g., Sun Life Ins. & Annuity Co. of New York v. Braslow*, 38 A.D.3d 529, 530, 831 N.Y.S.2d 497, 498-499 (2d Dep't 2007) (awarding fees to neutral stakeholder insurance company); *Fischbein, Badillo & Wagner v. Tova Realty Co.*, 193 A.D.2d 442, 444-445, 597 N.Y.S. 2d 676, 678 (1st Dep't 1993) (noting that the court has discretion to award expenses, costs and disbursements to stakeholder).

WL 1193535, at *4–5 (E.D.N.Y. Feb. 4, 2003) (attorney's fees awarded when the case involved unique problems for a disinterested stakeholder, observing that "[n]one of the reported cases indicate that attorneys' fees and costs should be limited or eliminated where the unique circumstances imposed higher costs").

All things considered, there has been nothing "simple" or "ordinary" about this interpleader action. The action itself was a last resort, brought only after Brighthouse diligently spent three months attempting to reach resolutions with the Defendants. Brighthouse's work has been far from minimal— indeed, it has involved litigations in three states. The problems were not ordinary and minor: Brighthouse was faced with a claim for $6,000,000 from a determined SEC Receiver involved in a nearly twenty-year long litigation on behalf of thousands of defrauded investors, and multiple claims for $9,000,000 from shrewd, sophisticated Claimants who have been involved in their own litigation for over two years, with no end in sight. And awarding Brighthouse its full fees and costs would hardly be unfair to the Claimant(s) who ultimately receives the funds, as they will walk away with the entire Remaining Death Benefit ($9,000,000) and nearly $200,000 in interest (that accrued over the course of only six months).[14]

### 2. Certain Claimants Have Improperly Protracted the Proceedings

---

[14] Some courts have opined that an interpleader action commenced by an insurance company is "brought primarily in the company's own self-interest" because it "relieves the insurance company of multiple suits and eventuates in its discharge." *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 830, 1977 WL 555522 (S.D.N.Y. 1977). The rationale for this view is that "minor problems that arise in the payment of insurance policies must be expected" and "are part of the ordinary course of business." *Travelers Ins. Co. v. Est. of Garcia*, No. 00-CV-2130 (ILG), 2003 WL 1193535, at *4 (E.D.N.Y. Feb. 4, 2003). While there may be certain types of competing claims that are not unusual and may be somewhat expected of an insurance company, that is not the case here. Further, this notion has been criticized because *all* stakeholders benefit by being able to use interpleader and that alone does not negate the equitable considerations supporting an award of attorneys' fees to insurers. *See* 7 Wright, Miller & Kane, Federal Practice and Procedure § 1719 (3d ed.).

Not only have certain Claimants "improperly protracted the proceedings;" it is possible they *purposefully* protracted the proceedings to benefit from the 8% interest rate accruing on the Death Benefit, of which they were well aware. (*See* d'Arcambal Decl. ¶ 6, Ex. 3.) This conclusion can be deduced from the fact that the Claimants, with the Leer Parties and LS1019 at the helm, inexplicably spent nearly seven months, from July 2023 to January 2024, protracting the proceedings. *See, e.g., Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683, 1989 WL 102202 (2d Cir. 1989) (awarding fees to a disinterested stakeholder, noting that "it was Septembertide's unreasonable litigation posture that prevented New Library from following the ordinary interpleader sequence of depositing the funds in court and then being dismissed from the suit"); *A/S Krediit Pank v. Chase Manhattan Bank*, 303 F.2d 648, 649 (2d Cir. 1962) (per curiam) (fees appropriate in litigation related to defendant-claimant's resistance to interpleader).

Most of the Claimants have been unreasonably recalcitrant and uncooperative in connection with this interpleader action. Brighthouse attempted to avoid the action entirely by proposing that the Defendants consent to Brighthouse's disbursement of the Remaining Death Benefit to the New York Receiver and the release and discharge of Brighthouse, but the Defendants refused to unanimously agree. (d'Arcambal Decl. ¶¶ 5, 6, 11.) After Brighthouse spent time preparing a draft joint motion and stipulation for distribution of the Remaining Death Benefit to the New York Receiver (which the Claimants knew would contain language releasing and discharging Brighthouse (*see* d'Arcambal Decl. ¶ 22, Ex. 17) in accordance with an agreement reached among the Claimants in February 2024, the Proposed Intervenors, the Leer Parties and LS1019 refused to agree to release Brighthouse, with no explanation whatsoever. (*See* ECF Doc. 79; d'Arcambal Decl. ¶¶ 24, 26, 27, Exs. 19, 21, 22.)

The Claimants have also refused to reach a reasonable compromise with Brighthouse concerning reimbursement of its attorneys' fees and costs, thereby necessitating this motion practice.

Their refusal is unjustified considering that Brighthouse's attorneys' fees currently amount to $211,851.14, which is less than 55% of the amount of *interest* that accrued on the Remaining Death Benefit due to certain Defendants' prolonging of the proceedings. Had Brighthouse been able to disburse the funds to the SEC Receiver in July 2023 and either disburse the Remaining Death Benefit to the New York Receiver or deposit the funds with the Court immediately, this interest would not have accrued. The Claimants will receive a windfall and be rewarded for their bad behavior if Brighthouse is not awarded its attorneys' fees.

### 3. Brighthouse Has Acted in Good Faith and With Diligence

At all times Brighthouse has acted in good faith and with diligence to protect the Death Benefit and all Claimants' interests in it. While attorneys' fees and costs may be denied "when the stakeholder is partially responsible for the litigation or has unduly delayed in bringing the interpleader action," *Indem. Ins. Co. of N. Am. v. Robinson*, No. 90 CIV. 3765 (KC), 1991 WL 173115, at *8 (S.D.N.Y. Aug. 28, 1991), that is not the case here.

First, Brighthouse did nothing to cause the dispute that necessitated the filing of this action. The Claimants have been litigating their rights and interests in the Policy since at least October 2021, when the Trusners commenced an action in California against Life Factor. (Cmplt. ¶ 35.) The litigation expanded when Spin Capital commenced the New York State Action in February 2022. (*Id.* ¶ 39.) And the dispute boiled over in August 2023 when LS1019 propounded its (baseless) argument that the New York Receiver Order is void. (*Id.* ¶ 39.) Notably, no Claimant has even alleged that Brighthouse acted improperly or otherwise contributed to the need for the interpleader action. *See, e.g., MWH Int'l, Inc. v. Inversora Murten, S.A.*, 2013 WL 3717492, at *2 (S.D.N.Y. July 16, 2013), *report and recommendation adopted*, 2013 WL 12616635 (S.D.N.Y. Aug. 7, 2013) (awarding

attorneys' fees when there was no evidence that the stakeholder contributed to the need for interpleader or otherwise acted inappropriately.)

Further, Brighthouse has been doing everything within its power to expedite this matter. The Insured died on June 8, 2023. (Cmplt. ¶ 47, Ex. Q.) It was *Brighthouse* who informed the Defendants of the Insured's death just five days later on June 13, 2023 and invited them to propose a resolution. (d'Arcambal Decl. ¶ 4, Ex. 1.) After failing to receive any meaningful feedback from most of the Claimants, on July 24, 2023 Brighthouse proposed that the Defendants agree to allow Brighthouse to disburse the funds the SEC Receiver and the New York Receiver and release Brighthouse from liability. (d'Arcambal Decl. ¶ 5, Ex. 2.) The Defendants either ignored or refused Brighthouse's reasonable proposal. (*See* d'Arcambal Decl. ¶ 5.)

Just three months after Brighthouse received the first claim for the Death Benefit (*see* Cmplt. ¶ 49) (and after Brighthouse defended the SEC Receiver's contempt motion and was litigating the LS1019 California Action), on September 28, 2023 Brighthouse filed the Complaint. Under the circumstances, Brighthouse has acted with the utmost diligence in advancing this matter. *See John Hancock Mut. Life Ins. Co. v. Doran*, 138 F. Supp. 47, 50 (S.D.N.Y 1956) (insurer's *ten month* delay in filing interpleader action showed a failure to act with promptness and reasonable diligence) (emphasis added).

### 4. Brighthouse Has Performed Unique Services

Further, Brighthouse has performed unique services in this matter. Not only has it engaged in litigation in three forums to protect the Death Benefit, but Brighthouse expended an extraordinary amount of time and resources attempting to achieve resolutions with the Claimants and the SEC Receiver. Resolving the matter early would have conserved judicial resources and avoided months of unnecessary legal wrangling. However, Brighthouse's good faith efforts were rebuffed at every turn.

*See Smith Barney, Harris Upham & Co. v. Connolly*, 887 F. Supp. 337, 346, 1994 WL 683154 (D. Mass. 1994) (awarding fees to "a disinterested stakeholder who … voluntarily and in good faith offered its services to achieve a settlement and avoid the present litigation. But for the defendants' conflicting claims and their unwillingness to participate in efforts to resolve them, [the stakeholder] would not have been burdened with the present action.").

### 5. The Services Did Not Benefit Brighthouse

Ironically, today the Parties find themselves in the same place they could have been in July 2023—$6,000,000 has been disbursed to the SEC Receiver and $9,000,000 has been disbursed to the Court, which the Claimants intend to ask the Court to distribute to the New York Receiver—had the Claimants merely agreed to sign standard releases. If they had done so, Brighthouse would not have incurred $211,851.14 in attorneys' fees and the Claimants would not be receiving a windfall of nearly $400,000 in interest. The services Brighthouse has rendered in safeguarding the Death Benefit, attempting to reach resolutions at every opportunity, and commencing this interpleader action so that the Claimants may assert their claims to the Remaining Death Benefit have not materially benefited Brighthose. Instead, Brighthouse has been embroiled in months of hostile litigation not of its own making. Brighthouse has no interest in how the Remaining Death Benefit is ultimately distributed. It had to defend itself against a contempt motion, which even Judge Huck noted that "based on the circumstances … it is unlikely that the Court would have held Brighthouse in contempt of Court." (d'Arcambal Decl. ¶ 19, Ex. 14.) And as evidenced by this motion, Brighthouse is still fighting just to be released and discharged of liability.

### C.  Brighthouse Should be Reimbursed for Attorneys' Fees and Costs Incurred in the Florida Action and the LS1019 California Action

#### 1. The Florida Action is Directly Related to the Policy and Death Benefit

After the Defendants refused to agree to Brighthouse paying the funds to the SEC Receiver and the New York Receiver, Brighthouse was prepared to file an interpleader complaint naming all Defendants and the SEC Receiver as parties. (d'Arcambal Decl. ¶ 11.) However, under the *Barton* Doctrine, a suit may not be brought against a federally-appointed receiver without leave of such receiver's appointing court. *See Barton v. Barbour*, 104 U.S. 126, 135, 1881 WL 19839, at *7 (1881).) Brighthouse asked the SEC Receiver to consent to suit, but it did not. (d'Arcambal Decl. ¶ 11.) Thus, Brighthouse was faced with the impossible choice of either paying out $6,000,000 that was subject to competing claims or filing an interpleader with an illegally-named party.

Brighthouse was thereafter compelled to defend itself against the SEC Receiver's contempt motion, which was brought as a *direct result* of some Defendants' unreasonable stance in withholding consent to Brighthouse's payment to the SEC Receiver. Even Judge Huck identified the connection between the Florida Action and the funds at issue when he noted that it was unlikely the court would have held Brighthouse in contempt "based on the circumstances ... including *the various claimants involved in other litigation relating to the insurance proceeds*." (emphasis added). (d'Arcambal Decl. ¶ 19, Ex. 14.)

The legal fees and costs incurred by Brighthouse in the Florida Action total $70,492.96. (*See* Quesada Decl. ¶ 11; Millioen Decl. ¶ 10.) These fees were a direct result of certain Defendants' unreasonable refusal to consent to the distribution of funds to the SEC Receiver, and the necessary actions Brighthouse was forced to take as a result, in order to protect the Death Benefit. Had the Defendants simply agreed at the outset to allow Brighthouse to distribute $6,000,000 to the SEC Receiver and be released of liability (which is what ultimately occurred anyway), the attorneys' fees incurred in the Florida Action would have been entirely avoided.

**2. The LS1019 California Action is Directly Related to the Policy and Death Benefit**

While Brighthouse was attempting to resolve the issues in the Florida Action and with full knowledge[15] that Brighthouse intended to commence an interpleader action, LS1019 filed a complaint against Brighthouse in California state court on or about August 31, 2023 seeking payment of the Remaining Death Benefit. (Cmplt. ¶ 56, Ex. W.) This action was unnecessary, frivolous and filed in bad faith. Even after Brighthouse filed the Complaint, LS1019 did not immediately dismiss its action in California, thus forcing Brighthouse to incur additional attorneys' fees in removing the action to federal court, filing a motion to extend Brighthouse's deadline to respond to the complaint, and drafting a motion to dismiss. (Alberts Decl. ¶ 9.)

Again, Brighthouse was faced with an impossible choice in the face of vexatious litigation: either pay $9,000,000 to LS1019 in direct violation of the New York Receiver Order and while subject to competing claims, or, in the interest of conserving attorneys' fees, not defend itself and risk a default judgment. That is no choice at all, so Brighthouse was compelled to incur fees litigating the action until LS1019 finally agreed to dismiss it. Once again, by appearing and litigating the LS1019 California Action rather than paying LS1019 or risking a default, Brighthouse continued to protect *all Claimants' interests* in the disputed funds. And based on Stefan Leer's collection of the John Hancock funds in direct violation of the Receiver Order, **which have still not been turned over** (*see* d'Arcambal Decl. ¶ 30), it is evident that the Brighthouse funds needed protection.

The legal fees and costs incurred by Brighthouse in the LS1019 California Action total $19,383.20. (*See* Alberts Decl. ¶ 10; Millioen Decl. ¶ 11.) These fees, too, were a direct result of

---

[15] In the Turnover Motion, the New York Receiver testified, in relevant part, that "[a]t a settlement conference on August 25, 2023, *counsel to the Leer Defendants confirmed* that the Leer Defendants would not agree to the Brighthouse Release and that *Brighthouse should go ahead with commencing an interpleader action in federal district court*." (Compl. ¶ 58, Ex. X at ¶ 25.) LS1019 commenced its action on or about August 31, 2023, less than one week after the August 25, 2023 settlement conference at which Brighthouse's interpleader was discussed.

certain Claimants' unreasonable litigious acts, and the necessary actions Brighthouse was forced to take as a result, in order to protect the funds. Had LS1019 not commenced its frivolous litigation, or at least dismissed it immediately after Brighthouse filed the Complaint, fees in connection with the LS1019 California Action could have been avoided entirely, or at least substantially reduced.

### 3. Awarding an Innocent Stakeholder Fees Incurred in Connection With Litigations Other Than the Interpleader Action is Not Without Precedent

Awarding an innocent stakeholder attorneys' fees incurred in connection with litigations other than the interpleader action is also not without precedent among district courts. For example, in *Renasant Bank, Inc. v. AVE, Inc.*, No. CV 19-0733-CG-MU, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021), the District Court for the Southern District of Alabama awarded an innocent stakeholder fees it incurred in connection with a separate litigation. The court rejected the defendants' arguments that the stakeholder's fees should be limited solely to the instant interpleader action, as the separate litigation was directly related to the interpleader action and the fees incurred were directly related to the funds at issue:

> [T]he record reflects that Renasant was named as a defendant in [an] Illinois action by a named defendant in this action in an effort to obtain control of the Funds. **Defendants make no argument, much less a compelling one, as to how the Illinois action was not directly related to the instant interpleader action**. Moreover, the billing records contain enough detail to determine that **the fees and costs incurred by Renasant are directly related to the Funds at issue**, that there were additional non-standard fees and costs associated with this interpleader action, i.e., the involvement in the Illinois action, that Renasant acted diligently and in good faith with regard to the Funds and the contested claims as to their ownership.

(emphasis added) *Id.* at *4.

Like the innocent stakeholder in *Renasant* who encouraged the defendants to resolve their competing claims to prevent the need for court involvement (*id.* at *1), Brighthouse repeatedly encouraged the Defendants to reach reasonable resolutions that would have obviated the need for an interpleader action; the Defendants refused. In *Renasant*, after being notified of Renasant's intention

to file an interpleader action, an interpleader defendant filed an action in Illinois state court, which Renasant defended until it ultimately obtained dismissal. *Id.* Here, LS1019 did precisely the same thing: it commenced the LS1019 California Action with full knowledge that Brighthouse intended to commence an interpleader action, thereby forcing Brighthouse to defend the unnecessary litigation until it was dismissed.

Because the attorneys' fees incurred in litigating both the Florida Action and the LS1019 California Action were *directly related* to the Claimants' interests in the Policy and the Death Benefit, the Court, in its "wide discretion to award costs and attorneys' fees, when … [it] would be fair and equitable," *Clarkson Co. v. Shaheen*, 533 F. Supp. 905, 919, 1982 WL 1151101 (S.D.N.Y. 1982), should award Brighthouse all fees and costs. Accordingly, Brighthouse respectfully requests that the Court take these factors and the additional expenses incurred by Brighthouse into consideration when exercising its discretion as to whether, and to what extent, to award Brighthouse its fees. At this time, Brighthouse seeks an award of $211,851.14, representing its total fees and costs incurred in this matter. Critically, the total amount of Brighthouse's fees and costs is less than 1.5% of the total $15,000,000 death benefit, and less than 55% of the nearly $400,000 in interest that has accrued. Thus, awarding Brighthouse its relatively modest fees will not deplete the Remaining Death Benefit principal at all.

### D. The Court May Impose Sanction Upon the Claimants

In addition to awarding Brighthouse its attorneys' fees and costs, Brighthouse respectfully requests that the Court use its inherent power to impose sanctions upon any or all of the uncooperative Claimants to punish them for their abuse of process and impairing these proceedings. Sanctions are requested in the amount of $337,315.07, representing the amount of interest accrued on the Remaining Death Benefit from July 24, 2023 (the date Brighthouse proposed a resolution to the Defendants) to

January 11, 2024 (the Court-ordered date that interest stopped accruing), or in an amount determined to be reasonable and appropriate by the Court. *See Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."); *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798, 1987 WL 1608276 (1987) (a party may be sanctioned for abuses of process occurring beyond the courtroom and disobedience to the order of any court); *Ex parte Robinson*, 86 U.S. 505, 510, 1873 WL 16067, at \*4 (1873) (existence of contempt power "essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice").

## CONCLUSION

For the foregoing reasons, Brighthouse respectfully requests that the Court issue an Order granting relief in interpleader, awarding Brighthouse attorneys' fees and costs in the amount of $211,851.14, and imposing sanctions upon the Claimants in the amount of $337,315.07, or an amount determined to be reasonable and appropriate by the Court.

Dated: March 15, 2024
   New York, NY

        Respectfully submitted,

        **d'ARCAMBAL OUSLEY &**
        **CUYLER BURK LLP**

        */s/Michelle J. d'Arcambal*
        Michelle J. d'Arcambal
        40 Fulton Street, Suite 1501
        New York, NY  10038
        (212) 971-3175
        (212) 971-3176 (fax)
        mdarcambal@darcambal.com

        *Attorneys for Plaintiff*
        *Brighthouse Life Insurance Company*