EXHIBIT "3"

| | |
|---|---|
| **From:** | Fred Stevens <FStevens@Klestadt.com> |
| **Sent:** | Thursday, August 10, 2023 6:23 PM |
| **To:** | Jason DeJonker; Jarret Hitchings; Laith Hamdan; mmorris@proskauer.com; wfassuliotis@proskauer.com; dpicon@proskauer.com; lsosupny@proskauer.com; coreya@whiteandwilliams.com; jgiardino@pryorcashman.com; dpohlman@pryorcashman.com; ecarlino@pryorcashman.com; 'Mark E. Shure'; wellss@whiteandwilliams.com; heskins@whiteandwilliams.com |
| **Cc:** | Andrew Brown; Kristen Strine; Michelle Darcambal; Tiffany Millioen |
| **Subject:** | Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al. - Brighthouse Utsick Policy |
| **Attachments:** | Spin Capital - Draft Release 08.04.23_for receivers.doc |

Counsel to Spin Capital, LLC, Leer Defendants, and CapFactor –

As I am sure you all know, John Utsick, the insured under the $15 million Brighthouse policy and $2 million John Hancock policy passed away.  Since then, I have been working to claim the proceeds due our receivership estate on both policies.  Given the complexities with the Brighthouse policy including a split in entitlements between our receivership estate and the WWE SEC receiver in Florida, competing claims of the Trusner parties asserted in pending litigation in CA, etc., Brighthouse is looking to secure releases from all parties prior to releasing the portion of the proceeds due our receivership estate ($9 million under the order of the district court in the SEC matter).  I believe that counsel to Brighthouse raised this in a prior communication to the group.

The attached is the current draft of the release and agreement on releasing the proceeds.  This is not final as the WWE SEC Receiver is requesting certain changes, and the Trusner parties, who I have no privity to, have yet to weigh in.  However, I am previewing this with you now to determine whether your respective clients will have any issues executing a document and release substantially similar to this one and if so, what changes would be required.

Your prompt attention would be greatly appreciated.

Best Regards,
Fred

**Fred Stevens**
**Klestadt Winters Jureller**
**Southard & Stevens, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Direct: (212) 679-5342
Tel: (212) 972-3000
Fax: (212) 972-2245
Cell: (917) 664-5507
Email: fstevens@klestadt.com

# RELEASE

This Release ("**Release**") is provided by **SPIN CAPITAL, LLC** ("**Spin Capital**"), **CAP FACTOR, LLC** ("**Cap Factor**"), _____ (the "**Leer Parties**"), **MICHAEL TRUSNER, DAVA TRUSNER, FRED STEVENS, as Temporary Receiver Pursuant to the Provisions of Article 64 of the CPLR** (the "**Spin Capital Receiver**"), and **MICHAEL I. GOLDBERG, as Court-appointed Receiver over Worldwide Entertainment, Inc., The Entertainment Group Fund, Inc., American Enterprises, Inc., and Entertainment Funds, Inc.** (the "**Worldwide Receiver**") (collectively, the "**Releasors**") arising out of and related to the death benefit proceeds due under a life insurance policy issued by a company now known as **BRIGHTHOUSE LIFE INSURANCE COMPANY** ("**Brighthouse**"). ("Parties" shall collectively refer to Releasors and Brighthouse.)

## RECITALS

**WHEREAS**, the Travelers Life and Annuity Company, now known as Brighthouse, issued and delivered in Florida a flexible premium adjustable life insurance policy number 7447253 (the "Policy") with a policy date of November 7, 2004, which provided coverage on the life of John P. Utsick (the "Insured");

**WHEREAS**, by Order of the United States District Court for the Southern District of Florida (the "District Court") entered on April 20, 2006 in connection with the action captioned, *Securities and Exchange Commission v. John P. Utsick, et al.*, and identified by case number 1:06-cv-20975-PCH (the "Florida Action"), the District Court appointed Michael I. Goldberg as the Worldwide Receiver and, in relevant part, authorized, empowered and directed the Worldwide Receiver to administer and manage certain assets and property of the defendants therein, including the Policy;

**WHEREAS**, in 2021, the Worldwide Receiver transferred and assigned the Worldwide Receivership entities' ownership interest in the Policy to LifeFactor II, LLC and in exchange, the Receiver retained certain irrevocable death benefits under the Policy (the "Retained Death Benefit"), as memorialized in the May 3, 2021 District Court Order (ECF No. 737) (the "District Court Order") which states, in relevant part:

> (a) $7,000,000.00 of the death benefits under [the Policy] if [the Insured] dies within the first one year period, beginning on the date that both the change of ownership and change of beneficiary confirmations are successfully completed on the record books of the Insurance Company (the "Closing Date");
> (b) $6,500,000.00 of the death benefits payable under [the Policy] if the Insured dies within second one year period, beginning on the Closing Date;
> (c) $6,000,000.00 of the death benefits payable under [the Policy] if the Insured dies within third one year period, beginning on the Closing Date …;

**WHEREAS**, the District Court Order further states, in relevant part:

> The Insurance Company[1] will list the Retained Death Benefit in its records and will remit payment to the Receiver (and/or any co-beneficiary named by the Receiver) in accordance with the above schedule in the event the Insured passes during the time frame set forth herein. The Insurance Company will remit the balance to the Purchaser.[2]

**WHEREAS**, on or about May 11, 2021, the Policy was assigned to LifeFactor II, LLC;

**WHEREAS**, on or about May 11, 2021, LifeFactor II, LLC was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the Worldwide Receiver was designated irrevocable primary beneficiary to 46.67% of the Policy proceeds;

**WHEREAS**, on or about February 4, 2022, Spin Capital commenced an action in New York Supreme Court, County of New York against, among others, the Leer Parties, Cap Factor and Brighthouse captioned, *Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al.*, and identified by index number 650582/2022 (the "New York Action"), seeking, *inter alia*, monetary damages and a declaratory judgment declaring the rights of the parties in connection with the Policy;

**WHEREAS**, on or about October 10, 2022, Michael Trusner and Dava Trusner commenced an action in California Superior Court, County of Orange against, among others, LifeFactor II LLC and Brighthouse captioned, *Michael Trusner, et al. v. LifeFactor II, LLC, et al.*, and identified by case number 30-2021-01227477-CU-BC-CJC (the "California Action"), seeking, *inter alia*, monetary damages and a judicial determination of the rights of the parties in connection with the Policy;

**WHEREAS**, by Order of the New York Supreme Court (the "New York Supreme Court") entered on January 4, 2023 (NYSCEF Doc. No. 245) in connection with the New York Action, the New York Supreme Court appointed Fred Stevens as the Spin Capital Receiver and, in relevant part, authorized the Spin Capital Receiver to take control of the Policy, receive all distributions and proceeds derived from the Policy, and deposit all monies received into an account at Signature Bank, and further ordered that the Spin Capital Receiver shall not be permitted to make withdrawals except pursuant to Court Order and anybody in possession of Policy proceeds shall turn them over to the Spin Capital Receiver;

**WHEREAS**, the Insured died on June 8, 2023;

---

[1] "Insurance Company" is defined in the District Court Order as "Brighthouse Financial f/k/a MetLife Universal Life Insurance."

[2] "Purchaser" is defined in the Receiver's Motion for Authority to Sell Remaining Life Insurance Policies (ECF No. 736) as "LifeFactor II, LLC, a Nevada limited liability company, with a mailing address of 6009 Welch Ave., Fort Worth, TX 76133."

**WHEREAS**, as a result of the death of the Insured, Policy death benefits in the amount of $15,000,000.00 (the "Death Benefit") became due to a beneficiary or beneficiaries, and Brighthouse concedes liability to that effect;

**WHEREAS**, the Releasors agree that because the Insured died during the third one year period, beginning on the Closing Date,[3] pursuant to the terms of the District Court Order the Worldwide Receiver is entitled to a Retained Death Benefit in the amount of $6,000,000.00 (the "Undisputed Death Benefit"), plus applicable interest, notwithstanding any beneficiary designation forms indicating the Worldwide Receiver's entitlement to a higher percentage;

**WHEREAS**, Spin Capital, Cap Factor, the Leer Parties, Michael Trusner, Dava Trusner and the Spin Capital Receiver (the "Adverse Claimants") have asserted competing claims to the remaining $9,000,000.00 of the Death Benefit (the "Remaining Death Benefit");

**WHEREAS**, Brighthouse, under the circumstances, cannot determine factually or legally who is entitled to the Remaining Death Benefit and is a neutral stakeholder with respect to whom the Remaining Death Benefit should be paid;

**WHEREAS**, Brighthouse is prepared to initiate an interpleader action to resolve the competing claims to the Remaining Death Benefit;

**WHEREAS**, the Adverse Claimants have reached an agreement and unanimously request that Brighthouse forgo the filing of an interpleader action and instead distribute the Remaining Death Benefit to the Spin Capital Receiver to be maintained in accordance with the New York Supreme Court's January 4, 2023 Order and pending further Order by the New York Supreme Court;

**WHEREAS**, Brighthouse, as a neutral stakeholder of the proceeds at issue, has no objection to the agreement reached among the Adverse Claimants; and

**WHEREAS,** the Releasors understand that upon payment of the Undisputed Death Benefit and distribution of the Remaining Death Benefit pursuant to the terms of this Release, they agree to release and discharge Brighthouse from any further liability to them regarding the Policy, the Death Benefit and interest thereon, including the Undisputed Death Benefit and interest thereon, and/or the Remaining Death Benefit and interest thereon.

## RELEASE

**NOW THEREFORE**, in consideration of the terms herein it is hereby agreed as follows:

1. **Payment**. Upon receipt of a fully executed copy of this Release and any IRS W-9 forms or claim forms deemed necessary by Brighthouse, Brighthouse shall cause to be delivered

---

[3] The "Closing Date" as that term is defined in the District Court Order occurred on May 18, 2021.

to or on behalf of the Releasors a fully executed copy of this Release and shall pay the Death Benefit, and applicable interest thereon, in the following manner:

a. Brighthouse shall cause to be delivered to Catherine Douglas Kretzschmar, Esq., Akerman LLP, 201 East Las Olas Blvd., Suite 1800, Ft. Lauderdale, Florida 33301, as counsel for the Worldwide Receiver, a check payable to "▮▮▮▮▮▮" in the amount of $6,000,000.00 (SIX MILLION DOLLARS AND ZERO CENTS), representing the Undisputed Death Benefit, plus interest calculated at the rate of 8% from July 3, 2023 to the date of distribution; and

b. Brighthouse shall cause to be delivered to Fred Stevens, Esq., Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, as the Spin Capital Receiver, a check payable to "▮▮▮▮▮▮" in the amount of $9,000,000.00 (NINE MILLION DOLLARS AND ZERO CENTS), representing the Remaining Death Benefit, plus interest calculated at the rate of 8% from July 3, 2023 to the date of distribution.

  2. **Notice in Florida Action, California Action, New York Action; Dismissal of Brighthouse from the New York Action and the California Action**: Within seven (7) days of the distributions of the Undisputed Death Benefit and Remaining Death Benefit as set forth in Paragraph 1 above, the Parties shall provide notice to the District Court in the Florida Action, the Superior Court in the California Action and the New York Supreme Court in the New York Action of said distributions and execute all documents necessary to cause the dismissal of Brighthouse from the New York Action, with prejudice, and to cause the dismissal of Brighthouse from the California Action, with prejudice.

  3. **Release**. In consideration of the above-mentioned payments, the Releasors on behalf of themselves, their heirs, representatives, beneficiaries, agents, attorneys, successors and assigns, hereby release, acquit, and forever discharge Brighthouse and its present and former parents, subsidiaries and affiliated corporations, predecessors, successors and assigns and their respective officers, directors, agents, employees, representatives, attorneys, fiduciaries and administrators (collectively, the "Released Parties") from and against any and all disputes, claims, demands, causes of action, debts, liabilities, obligations, damages, attorneys' fees and costs, judgments, or suits in equity, tort or contract, of any nature at common law, statutory or otherwise, or any other legal theory, that were asserted or that could have been asserted against the Released Parties now or in the future regarding the Policy, the Death Benefit, the Undisputed Death Benefit and interest thereon, and/or the Remaining Death Benefit and interest thereon. This Release may be pleaded by the Released Parties as a full and complete defense to any proceeding, including without limitation any administrative action related to the Policy, the Death Benefit, the Undisputed Death Benefit and interest thereon, and/or the Remaining Death Benefit and interest thereon, and the claims and allegations that were asserted or that could have been asserted by the Adverse Claimants in the New York Action and/or the California Action.

  4. **Release of Unknown Damages and Future Claims**. The Releasors' release includes, but is not limited to, any and all of their claims or causes of action against the Released Parties, whether known or unknown, arising on or before the date the Releasors sign this

Release. The Releasors' release is intended to be a general release providing the Released Parties the broadest release allowable under the law. The Releasors acknowledge and agree that it is the Releasors' intent that this release is so broad that it is intended to waive any unknown claims and is sufficiently broad that it would and does operate as a waiver of California Civil Code Section 1542 or any similar statute of any other state or jurisdiction. For reference, California Civil Code Section 1542 reads: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." The Releasors agree and acknowledge that it is the Releasors' intent that the release in this Release would operate as a waiver of this provision or any substantially similar provision of any other state or jurisdiction.

5. **Fees and Costs**. The Parties shall bear their own attorneys' fees and costs incurred in connection with the Release, including through the negotiation and execution of this Release.

6. **Indemnification and Hold Harmless**. The Releasors each, jointly and severally, hereby agree to indemnify and hold harmless the Released Parties from any and all such charges, demands, costs (including attorneys' fees), interest, penalties, causes of action, debts, and claims of any manner or nature whatsoever, actual or implied, real or imaginary, asserted or claimed by any person or person(s), successors, trustees, administrators, creditors, heirs, or beneficiaries other than themselves, against Brighthouse concerning or arising out of the Policy, the Death Benefit, the Undisputed Death Benefit and interest thereon, and/or the Remaining Death Benefit and interest thereon in accordance with the terms of this Release. The purpose of this indemnification and hold harmless is to provide that once Brighthouse pays the Death Benefit as specified herein, Brighthouse shall have no further liability or responsibility whatsoever with respect to the Policy, the Death Benefit, the Undisputed Death Benefit and interest thereon, and/or the Remaining Death Benefit and interest thereon.

7. **No Admission of Liability**. This Release shall not be construed as an admission of liability or wrongdoing and may not be offered or received in evidence in any action or proceeding as evidence of admissions of liability or wrongdoing.

8. **No Precedent**. The Releasors recognize and agree that neither the matters memorialized by this Release, nor the fact of the Release itself, constitutes a precedent of any sort for the resolution of any other claim, dispute, or lawsuit brought by any party against the Released Parties.

9. **Nondisparagement of the Released Parties:** The Releasors agree not to make any disparaging statements or communications about the Released Parties, or any statements that may have the effect of undermining, disparaging or otherwise reflecting poorly on the Released Parties. This provision does not prohibit any statement or disclosure ordered by any court or otherwise required by law, or as necessary to respond to any inquiry by the Securities and Exchange Commission, the Financial Industry Regulatory Authority, and any self-regulatory organization, state insurance department, or other federal or state regulatory authority.

10. **No Assignments**. The Releasors expressly represent and warrant that they have not assigned, pledged or otherwise sold or transferred, either by written instrument or otherwise, any right, title, interest, or claims they may have in connection with or arising out of the Policy, the Death Benefit, the Undisputed Death Benefit and interest thereon, and/or the Remaining Death Benefit and interest thereon, except as otherwise expressly stated herein.

11. **Entire Release**. This Release contains the entire agreement and understanding concerning the subject matter herein and supersedes and replaces any prior negotiations and agreements among the Parties, whether written or oral. No other party or agent or attorney of any other party has made any promise, representation, or warranty whatsoever, express or implied, not contained in this Release, concerning the subject matter hereof, to induce the Releasors to execute this Release, and the Releasors acknowledge that they have not executed this Release in reliance upon any such promise, representation or warranty not contained herein.

12. **Representation by Counsel and Authority to Enter Release**. The Releasors expressly represent and warrant that they have been represented by counsel of their choosing or have had the opportunity to consult with counsel of their choosing, and that they have read this Release completely and thoroughly. The Releasors further expressly represent and warrant that they possess full authority to enter into this Release.

13. **No Tax Advice or Representations**. Brighthouse is not providing tax advice regarding payments made pursuant to this Release. The Releasors acknowledge that payments made pursuant to this Release may result in taxable income under applicable federal, state, and local income tax laws, and that Brighthouse may be required to make reports to the appropriate federal, state, and local taxing authorities.

14. **Enforceability**. To the extent any portion of this Release shall be judicially determined to be invalid or unenforceable, the same shall, to that extent, be deemed severable from this Release and the invalidity or unenforceability thereof shall not affect the validity and enforceability of the remaining portions of this Release.

15. **Choice of Law**. The Releasors agree that any dispute arising out of this Release shall be governed by the laws of the State of Florida.

16. **All Parties as Equal Drafters**. This Release shall be interpreted and construed without reference to the identity of the Party drafting this document, upon the agreement that the Parties participated equally in its negotiation and preparation, or had the opportunity to do so.

17. **Execution**. Transmission of a signed Release as a facsimile or a scanned portable document format ("PDF") file shall be deemed an original signed Release.

**SPIN CAPITAL, LLC, CAP FACTOR, LLC, [the Leer Parties], MICHAEL TRUSNER, DAVA TRUSNER, FRED STEVENS, as Temporary Receiver Pursuant to the Provisions of Article 64 of the CPLR, and MICHAEL I. GOLDBERG, as Court-appointed Receiver over Worldwide Entertainment, Inc., The Entertainment Group Fund, Inc., American Enterprises, Inc., and Entertainment Funds, Inc. HEREBY DECLARE THAT THEY**

**HAVE FULLY AND COMPLETELY READ THE TERMS OF THIS RELEASE AND THAT THEY FULLY UNDERSTAND AND VOLUNTARILY ACCEPT THESE TERMS FOR THE PURPOSE OF MAKING A FULL AND FINAL RELEASE OF THEIR CLAIMS AGAINST THE RELEASED PARTIES AND FOR THE EXPRESS PURPOSE OF PRECLUDING <u>FOREVER</u> ANY CLAIMS AGAINST THE RELEASED PARTIES CONCERNING THE ISSUES RAISED OR THAT COULD HAVE BEEN RAISED IN CONNECTION WITH THE NEW YORK ACTION, THE CALIFORNIA ACTION, THE POLICY, THE DEATH BENEFIT, THE UNDISPUTED DEATH BENEFIT AND INTEREST THEREON, AND/OR THE REMAINING DEATH BENEFIT AND INTEREST THEREON.**

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, has executed this Release on the dates noted below.

---

**SPIN CAPITAL, LLC**

Dated: _____, 2023       *(seal)*

Notary Public
My commission expires: _____

Dated: \_\_\_\_ day of _____, 2023

---

**CAP FACTOR, LLC**

Dated: _____, 2023       *(seal)*

Notary Public
My commission expires: _____

Dated: \_\_\_\_ day of _____, 2023

---

**The Leer Parties**

Dated: _____, 2023       *(seal)*

Notary Public
My commission expires: _____

Dated: \_\_\_\_ day of _____, 2023

---

**MICHAEL TRUSNER**

Dated: _____, 2023       *(seal)*

Notary Public
My commission expires: _____

Dated: \_\_\_\_ day of _____, 2023

---

**DAVA TRUSNER**

Notary Public
My commission expires: _____

Dated: _____, 2023         (seal)

                                            Dated: ____ day of _____, 2023

_____

**FRED STEVENS, as Temporary**            Notary Public
**Receiver Pursuant to the Provisions of**    My commission expires: _____
**Article 64 of the CPLR**                          *(seal)*
                                                                  Dated: ____ day of _____, 2023
Dated: _____, 2023


_____

**MICHAEL I. GOLDBERG, as Court-**       Notary Public
**appointed Receiver over Worldwide**        My commission expires: _____
**Entertainment, Inc., The Entertainment**    *(seal)*
**Group Fund, Inc., American Enterprises,**   Dated: ____ day of _____, 2023
**Inc., and Entertainment Funds, Inc.**

Dated: _____, 2023

Page **8** of **8**