UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

BRIGHTHOUSE LIFE INSURANCE COMPANY,

          Plaintiff,

     v.

SPIN CAPITAL, LLC;
GOLDEN FOOTHILL INSURANCE SERVICES, LLC;
LIFE FACTOR II, LLC;
LIFE SHARES II, LLC;
EL DORADO HILLS INSURANCE SOLUTIONS, INC.;
LONE WOLF INSURANCE SERVICES, INC.;
ELDO INVESTMENTS, LLC;
THE GENESIS LS FUND, LLC;
KTL HOLDINGS, INC.;
DRVN HOLDINGS, LLC;
LIFE SHARES 1019, LLC;
STEFAN LEER;
TATANISHA LEER;
CAP FACTOR, LLC;
MICHAEL TRUSNER;
DAVA TRUSNER; and
FRED STEVENS, AS
COURT-APPOINTED TEMPORARY RECEIVER,

          Defendants.
-------------------------------------X

Case No.:
1:23-cv-08570-DEH

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION FOR
DISCHARGE, DISMISSAL AND OTHER RELIEF IN INTERPLEADER,
INCLUDING ATTORNEYS' FEES**

**ALMEIDA LAW GROUP,**

David S. Almeida
**49 W. Webster Ave Chicago, IL 60614**
(312)-576-3024
*Attorneys for Defendant*
*Life Shares 1019, LLC*

**DYER LAW FIRM**

Dustin J. Dyer
**5250 Claremont Ave. Ste. 119**
**Stockton, CA 95207**
(209)-472-3668
*Attorneys for Defendant*
*Life Shares 1019, LLC*

# TABLE OF CONTENTS

ORAL ARGUMENT REQUESTED.................................................................................................1

MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION FOR DISCHARGE, DISMISSAL AND OTHER RELIEF IN INTERPLEADER, INCLUDING ATTORNEYS' FEES....1

    ALMEIDA LAW GROUP,.............................................................................................1

    DYER LAW FIRM .......................................................................................................2

TABLE OF AUTHORITIES ....................................................................................................5

FACTUAL BACKGROUND[7] ...............................................................................................7

    A.    The Policy.............................................................................................................7

    B.    The Florida Action................................................................................................7

    C.    The New York State Action and Appointment of the New York Receiver...................9

    D.    The Death Benefit..............................................................................................10

    E.    LS 1019's Death Benefit Claim ..........................................................................10

    F.    LS 1019's California Action ...............................................................................11

    G.    The New York Receiver's Motion........................................................................11

    H.    The SEC Receiver's Motion to Compel and Motion for Contempt ............................12

    I.    The Interpleader Action.......................................................................................13

    J.    Dismissal of the California Action .......................................................................14

SALIENT PROCEDURAL HISTORY ......................................................................................14

LEGAL ARGUMENT .........................................................................................................15

    I.    LS 1019 Does Not Oppose Brighthouse's Request to Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Remaining Death Benefit......................................15

    II.    Brighthouse is Entitled to its Attorneys' Fees and Costs..............................................15

    A.    Legal Standard for Awarding Fees .......................................................................15

    B.    Equity Weighs in Favor of Not Awarding Brighthouse Any Attorneys' Fees and Costs

18

1.     The Claimants' Dispute Involves Straightforward Issues That are Part of the Ordinary Cost of Doing Business.................................................................................................18

2.     Claimants Have Not Improperly Protracted the Proceedings.......................................20

3.     Brighthouse Has Failed to Act in Good Faith and Provided Nothing More Than Routine Services...............................................................................................................21

C.     The Fees and Costs Sought By Brighthouse Are Unconscionable .............................22

1.     The Florida Action .........................................................................................................22

2.     The California Litigation ................................................................................................25

3.     Fees In the Interpleader Action Are Not Appropriate....................................................25

D.     Sanction Against Defendants Are Inappropriate And Instead Sanctions Should be awarded against Brighthouse. ........................................................................................28

CONCLUSION ...............................................................................................................29

ALMEIDA LAW GROUP,...............................................................................................29

DYER LAW FIRM ...........................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Abenoza v. 178-184 E. Second St. Condo*, 2010 N.Y. Misc. LEXIS 7203, *4 (Sup. Ct. Apr. 5, 2010) .................................. 11

*Bayridge Prince, LLC v. City of New York*, 56 Misc. 3d 684, 685 (Sup. Ct. 2017) ........................................................ 11

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ................................................................................................ 17, 27

*Case v. Unified School District* No. 233, 157 F.3d 1243, 1250 (10th Cir.1998) .......................................................... 17, 26

*Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985) ........................................................................................ 15

*Cuccia v. H.M Weiner Assoc.*, 234 A.D.2d 26, 26 (1st Dep't 1996) ............................................................................. 10

*Dealy-Doe-Eyes Maddux v. Schur,* 139 A.D.3d 1281, 1281 (3d Dep't 2016) ................................................................. 11

*Del. Life Ins. Co. v. Moore*, No. 18cv944-L, 2019 U.S. Dist. LEXIS 27968, at *15-16, 18-19 (S.D. Cal. Feb. 21, 2019) ........................................................................................................................................................... 17, 24

*Edward D. Jones & Co., L.P. v. Am. Nat'l Ins. Co.,* No. 1:19-cv-00018-JMC, 2020 U.S. Dist. LEXIS 237512, at *11 (D.S.C. Dec. 17, 2020) ...................................................................................................................... 18, 28

*Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962) ................................................................................... 16, 24

*Genworth Life and Annuity Ins. Co. v. Hubbell*, No. 19 CV 6547, 2020 U.S. Dist. LEXIS 154862, at *6-7 (N.D. Ill. Aug. 26, 2020) ........................................................................................................................................ 19

*Hall v. Cole*, 412 U.S. 1, 4-5 (1973) ....................................................................................................................... 15

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ................................................................................................. 17, 26

*Hunter v. Fed. Life Ins. Co.,* 111 F.2d 551, 557 (8th Cir. 1940) at 557 ...................................................................... 16

*In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 21 F.3d at 383 .......................................................................... 18

*Judson Realty, LLC v. Judson CRE* LLC, 2022 N.Y. Misc. LEXIS 10928, *6 (Sup. Ct. 2022) .............................................. 11

*Metro. Life Ins. Co. v. Estate of Seagrove*, No. 1:18- CV-0920, 2019 U.S. Dist. LEXIS 32001, at *11 (N.D.N.Y. Feb. 28, 2019) ...................................................................................................................................................... 19

*Midland Nat'l Life Ins. Co.v. Ingersoll*, No. 13-C-1081, 2014 U.S. Dist. LEXIS 175041, at *12-13 (E.D. Wis. Dec. 18, 2014) ...................................................................................................................................................... 16, 24

*O'Brien v. Contreras*, 126 A.D.3d 958, 958 (2d Dep't 2015) .................................................................................. 11

*Orvis v. Anderson, Clayton & Co.*, 266 A.D. 351, 353 (1st Dep't 1943) ...................................................................... 11

*Persuad v. Teaneck Nursing Ctr., Inc.,* 290 A.D.2d 350, 351 (1st Dep't 2002) ............................................................. 11

*Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ............................................................................................ 18, 27

*Renasant Bank, Inc. v. AVE, Inc.*, No. CV 19-0733-CG-MU, 2021 WL 1324532 (S.D. Ala. Jan. 14, .............................. 25

*Riversource Life Ins. Co. v. Martell*, 3:20-CV-00749 (KAD), 2020 U.S. Dist. LEXIS 267159, at *12 (D. Conn. Dec. 23, 2020) ...................................................................................................................................................... 19

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) ........................................................ 17, 18, 26, 28

*Rosenblum v. 170 West Village Assoc.*, 175 A.D.2d 702, 703 (1st Dep't 1991) ............................................................. 11

*Sun Life Assurance Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009) ............................................................. 16

*Sun Life Assurance Co. v. Bew*, 530 F. Supp. 2d 773, 776 (E.D. Va. 2022) ............................................................ 16, 24

*Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) ........................................................................... 18

*Van Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014) ...................................................................... 16, 24

*Wells Fargo Bank, N.A. v. Ramirez,* 19-CV-04561 (FB)(PK), 2019 U.S. Dist. LEXIS 245895, *5 (E.D.N.Y. Dec. 13, 2019) ...................................................................................................................................................... 17, 27

*Worldview Ent. Holdings Inc. v. Woodrow*, 159948/2014, 2022 N.Y. Misc. LEXIS 11052, at *10-11 (Sup. Ct. N.Y. Cnty. July 1, 2022), affirmed in relevant part, 203 A.D.3d 629 (1st Dep't 2022) .................................. 10

*Zegelstein v. Faust*, 2015 N.Y. Misc. LEXIS 1475, *3 (Sup. Ct. Apr. 27, 2015) ........................................................... 11

## CODES

Rule 22 of the Federal Rules of Civil Procedure ................................................................................................. 16

Defendant, Life Shares, 1019, LLC ("LS 1019"), by and through its undersigned attorneys, hereby submits its memorandum of points and authorities in opposition to Plaintiff Brighthouse Life Insurance Company's ("Brighthouse") Motion for Discharge, Dismissal and Other Relief in Interpleader, Including Attorneys' Fees. LS 1019 does not oppose Brighthouse's motion regarding its efforts to dismiss Brighthouse from this action with prejudice; however, LS 1019 does oppose Brighthouse's pursuit of bad faith, unconscionable attorneys' fees, costs and sanctions.

## PRELIMINARY STATEMENT

The present litigation arises from a genuine dispute regarding rights and interests to a life insurance policy, including the remaining death benefit.  This is the exact reason for the creation of interpleader litigation. The right to the death benefit of the John P. Utsick life insurance policy has been part a part litigation since at least 2022. When Mr. Utsick died on June 8, 2023, there was a genuine dispute on how the funds should be distributed/deposited.

On or about January 4, 2024, the State Court of New York issued an order requiring Defendant Stefan Leer to deposit funds of LS 1019 with the New York receiver despite the State Court of New York not having jurisdiction over LS 1019 due to a lack of summons and service. Once this order was issued (which LS 1019 contends was done in error), it provided clarity to the parties as to where the Brighthouse Death Benefit should be deposited. During a January 12, 2024, status conference in this Court, all Defendants agreed to discontinue the accumulation of interest on the Death Benefit until a final agreement was made regarding the deposit of the Death Benefit.

At this point, Brighthouse became unreasonable and acted in bad faith. Immediately upon the pausing of interest, Brighthouse began to pursue inflated and unconscionable attorneys' fees and costs originating in multiple legal forums. Despite minimal motion practice, other than pro hac vices and requests for extensions to answer, in mid-January of 2024, Brighthouse sought over $155,000.000 in fees and costs to resolve the matter. When Defendants protested the outrageous fees, Defendants

doubled down and charged even more outrageous fees -- including several thousand dollars to pursue their fees. Despite little work being performed in the last two months other than the present motion, Brighthouse seeks an additional $56,000.00 in fees.

In addition to an improper and unsupported pursuit of fees and costs, Brighthouse seeks recovery of all interest that they are contractually obliged to pay. Brighthouse seeks recovery of their interest by way of sanctions. There is no justification for these requested sanctions. Additionally, the vast majority of Brighthouse's complaints regarding Defendants' delays are in 2024 -- when there was no interest accumulating. Clearly, it is Brighthouse -- not Defendants -- who are seeking a windfall from their participation in the present litigation. As such, Brighthouse's pursuit of attorneys' fees, costs and sanctions must be denied.

In support of this motion, Brighthouse also submits the following declarations and the exhibits annexed thereto:

- Declaration of Stefan Leer. ("Leer Dec.")
- Declaration of Dustin J. Dyer, Esq. ("Dyer Decl.")

## FACTUAL BACKGROUND[7]

### A.  The Policy

Brighthouse, formerly The Travelers Insurance Company, issued a flexible premium adjustable life insurance policy (the "Policy") with a policy date of November 7, 2004, providing coverage on the life of John P. Utsick (hereinafter "Utsick"). (Interpleader Complaint. ¶ 21, Ex. A.) When the policy was issued, the sole primary beneficiary to the Policy proceeds was the John P. Utsick Irrevocable Trust Dated 2/4/04. (Interpleader Complaint ¶ 22.)

### B.  The Florida Action

On or about April 17, 2006, the Securities and Exchange Commission ("SEC") commenced an action in the U.S. District Court for the Southern District of Florida (the "Florida Action") against

Utsick and certain entities associated with Utsick, such as Worldwide Entertainment, Inc., The Entertainment Fund, Inc., American Enterprises, Inc. and Entertainment Funds, Inc. (collectively, the "Receivership Entities") (Interpleader Complaint Ex. B). Shortly thereafter, on April 20, 2016, Michael I. Goldberg (the "SEC Receiver") was appointed over the assets, liabilities and business interests of the Receivership Entities. (Interpleader Complaint Ex. C). In or around December 2006, ownership of the Policy was transferred to the SEC Receiver, and shortly thereafter the SEC Receiver was designated as the sole primary beneficiary to the Policy proceeds.

In or around May 2021, the SEC Receiver transferred and assigned the Receivership Entities' ownership interest in the Policy to Life Factor II, LLC ("Life Factor"), and in exchange, the SEC Receiver retained certain irrevocable death benefits under the Policy. (Interpleader Complaint Ex. D & E Declaration of Stefan Leer ¶ 4.) Life Factor became responsible for maintaining the Policy and making all premium payments. In or around May 2021, Life Factor was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver was designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. (Interpleader Complaint, Ex. G). Pursuant to the agreement between SEC Receiver and Life Factor, Life Factor would gain an additional $500,000.00 interest in the policy for each year Utsick remained alive. (Interpleader Complaint, Ex. D & E).

For example, if Utsick died within the first year of the order approving the agreement, Life Factor would receive $8,000,000.00 and the SEC Receiver would receive $7,000,000.00. If Utsick died within the second year of the order approving the agreement, Life Factor would receive $8,500,000.00 and the SEC Receiver would receive $6,500,000.00. If Utsick died within the third year of the order approving the agreement, Life Factor would receive $9,000,000.00 and the SEC Receiver would receive $6,000,000.00.

In or around March 2022, Life Factor, assigned the Policy to LS 1019. (Interpleader Complaint

Ex. N; Declaration of Stefan Leer ¶5). LS 1019 was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver was re-designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. (Interpleader Complaint Ex. O.) As with Life Factor, LS 1019 would gain an additional $500,000.00 interest in the policy for each year that Utsick remained alive.

### C. The New York State Action and Appointment of the New York Receiver

On or about February 4, 2022, Spin Capital commenced an action in New York Supreme Court, County of New York against, Golden Foothill Insurance Services, LLC; Life Factor; Life Shares II, LLC; El Dorado Hills Insurance Solutions, Inc.; Lone Wolf Insurance Services, Inc.; ELDO Investments, LLC; The Genesis LS Fund, LLC,; KTL Holdings, Inc.; Zurich American Life Insurance Co.; Accordia Life and Annuity Company; John Hancock Life Insurance Company; Brighthouse Life Insurance Co.; Cap Factor, LLC; Stefan Leer, and Tatanisha Leer (the "New York State Action"), seeking, *inter alia*, monetary damages and a declaratory judgment declaring the rights of the parties in connection with the Policy. (Declaration of Stefan Leer Ex. 1).

It is important to note that LS 1019 was not identified as a defendant in the initial complaint in the New York State Action. A summons was issued for the named Defendants and each named Defendant was served.

On or about July 14, 2022, Spin Capital filed an Amended Complaint adding DRVN Holding, LLC and LS 1019 as defendants. (Interpleader Complaint Ex. K). No summons was issued for either DRVN Holding, LLC or LS 1019. (Declaration of Dustin J. Dyer ¶ 4). No service of process was done for either DRVN Holding, LLC or LS 1019. (Declaration of Dustin J. Dyer ¶ 4).

On January 6, 2023, the New York Supreme Court appointed Fred Stevens as the temporary receiver. ("New York Receiver").

**D.  The Death Benefit**

Mr. Utsick passed away on June 8, 2023. (Interpleader Complaint, Ex. Q.) As a result of the death of the Insured, the Policy death benefits in the amount of $15,000,000 (the "Death Benefit(s)") became due to the identified beneficiaries: LS 1019 and the SEC Receiver. Brighthouse does not contest their liability to make immediate payment (Interpleader Complaint ¶ 48.) At the time of the Insured's death, LS 1019 was the primary beneficiary of record to 53.33% of the Policy proceeds ($8,000,000.00) and the SEC Receiver was primary beneficiary of record to 46.67% of the Policy proceeds ($7,000,000.00, Interpleader Complaint Ex. O.) However, given the fact that Utsick lived more than two (2) years afterwards, pursuant to the agreement between the parties as identified, LS 1019 was entitled to $9,000,000.00 of the Policy proceeds and the SEC Receiver was entitled to $6,000,000.00. (Interpleader Complaint, Ex. D & E).

**E.  LS 1019's Death Benefit Claim**

On or about June 28, 2023, Stefan Leer, on behalf of LS1019, asserted a claim for the Death Benefit. (Interpleader Complaint Ex. R.) Leer, who is not an attorney, had the understanding that he was to assert the claim for all beneficiaries, and that Brighthouse would divide the Death Benefit to the beneficiaries pursuant to their identified percentage interest. At the time the claim was asserted, LS 1019 and The SEC Receiver were working to acknowledge the change in beneficiary interest given the parties agreement as identified.  (Declaration of Dustin J. Dyer Ex. 1).

Given that no summons was issued for LS 1019, and that no service of process was completed, LS 1019 identified that it was not subject to the New York State Action's receivership. LS 1019's position was supported by significant legal authority:

> It is well-settled New York law that a "court lacks subject matter jurisdiction where the party failed to file the summons and complaint." *Worldview Ent. Holdings Inc. v. Woodrow*, 159948/2014, 2022 N.Y. Misc. LEXIS 11052, at *10-11 (Sup. Ct. N.Y. Cnty. July 1, 2022), affirmed in relevant part, 203 A.D.3d 629 (1st Dep't 2022); see also, *Cuccia v. H.M Weiner Assoc.*, 234 A.D.2d 26, 26 (1st Dep't 1996) ("The failure to serve a

summons with the complaint in this matter is a jurisdictional defect requiring dismissal of the action"); *Rosenblum v. 170 West Village Assoc.*, 175 A.D.2d 702, 703 (1st Dep't 1991) ("Either the service [of the summons] was valid from the outset or it was not, and if, as here, it was not, there can only be one consequence, the dismissal of the action"); *Persuad v. Teaneck Nursing Ctr., Inc.,* 290 A.D.2d 350, 351 (1st Dep't 2002) (finding that failure to serve summons on defendant deprived the court of jurisdiction); *Orvis v. Anderson, Clayton & Co*., 266 A.D. 351, 353 (1st Dep't 1943) ("Failure to serve the summons in accordance with the statute and the rules within the period prescribed by law resulted in the divesting of jurisdiction"); *O'Brien v. Contreras*, 126 A.D.3d 958, 958 (2d Dep't 2015) ("plaintiff . . . never filed or served a summons or complaint.  In light of this failure to file, the jurisdiction of the court was never invoked and the purported action was a nullity"); *Dealy-Doe-Eyes Maddux v. Schur,* 139 A.D.3d 1281, 1281 (3d Dep't 2016) ("Here, although plaintiff purchased an index number and filed a complaint, she never filed a summons or summons with notice.  Given plaintiff's failure, the purported action was a nullity, and Supreme Court properly dismissed it for want of subject matter jurisdiction"); *Bayridge Prince, LLC v. City of New York*, 56 Misc. 3d 684, 685 (Sup. Ct. 2017) ("the failure to file the initial papers necessary to institute an action constitutes a nonwaivable, jurisdictional defect, render the action a nullity. . . Accordingly, this court lacks subject matter jurisdiction to adjudicate this matter or grant plaintiff's requested relief"); *Zegelstein v. Faust*, 2015 N.Y. Misc. LEXIS 1475, *3 (Sup. Ct. Apr. 27, 2015) ("The failure to serve a summons with the complaint in this matter is a matter is a jurisdictional defect requiring the dismissal of the action.  Accordingly, we find that the defendants have demonstrated conclusively that this Court does not have personal jurisdiction over the defendants due to the failure to serve a summons with the complaint"); *Abenoza v. 178-184 E. Second St. Condo*, 2010 N.Y. Misc. LEXIS 7203, *4 (Sup. Ct. Apr. 5, 2010) ("While a court may overlook minor defects in the form of legal papers, the failure to serve a summons with the complaint is a jurisdictional defect requiring dismissal of the action.  Here, the affidavits of service . . . indicate that each of the defendants was served only with a complaint.  Accordingly, the action must be dismissed as jurisdictionally defective"); *Judson Realty, LLC v. Judson CRE* LLC, 2022 N.Y. Misc. LEXIS 10928, *6 (Sup. Ct. 2022) (similar).

Notwithstanding, no Death Benefit payment was made by Brighthouse.

### F.  LS 1019's California Action

On or about August 31, 2023, given the New York State Action's lack of jurisdiction over LS 1019, and Brighthouse's refusal to pay the Death Benefit, LS 1019 commenced an action in California Superior Court of Orange County against Brighthouse (the "California Action"). (Declaration of Dustin J. Dyer Ex. 2). This action was filed by LS 1019's California and Corporate counsel, Dustin J. Dyer.

### G.  The New York Receiver's Motion

On or about September 1, 2023, in connection with the New York State Action, the New York

11

Receiver filed a motion for an Order to Show Cause. (Interpleader Complaint Ex. X.) On or about October 2, 2023, the Leer Defendants filed an opposition to the Receiver's motion for an Order to Show Cause. (Declaration of Dustin J. Dyer Ex. 3). In the opposition, the Leer Defendants, among other arguments, identified that due to Plaintiff's failures in the New York State Action, the New York Court lacked jurisdiction over LS 1019. The Leer Defendants provided the New York State Court with the above stated legal authority supporting the lack of jurisdiction.

By Decision and Order dated January 4, 2024, the Court in the New York State Action, granted the New York Receiver's motion. The New York Court essentially ignored the separation of Stefan Leer as an individual and Stefan Leer as an agent of LS 1019, ordering Stefan Leer to cause LS 1019 to comply with the Receivership Order despite no jurisdiction over LS 1019.

Absent from the Court's order is any authority supporting the ruling. As part of the New York Court's Order, Defendant Stefan Leer was ordered to provide the New York Receiver with $1,985,367.42 of the John Hancock Policy relating to Utsick. Leer and the New York Receiver are actively working together to resolve this issue and provide complete payment of the $1,985,367.42 to the New York Receiver. (Dyer Declaration ¶ 11).

### H.  The SEC Receiver's Motion to Compel and Motion for Contempt

On or about September 8, 2023, the SEC Receiver filed a Motion to Compel Turn Over and to Hold Brighthouse in Contempt. (Declaration of Dustin J. Dyer Ex. 5). Amazingly, Brighthouse claims that their refusal to pay the SEC Receiver was not their fault despite all parties, other than Brighthouse, agreeing to the payment to the SEC Receiver.

The court in the Florida Action set a status conference for September 15, 2023. (Declaration of Dustin J. Dyer Ex. 6). During the status conference, Attorney Dyer, on behalf of all Leer entities, including LS 1019 stated the following:

"Florida Court: Is the insurance company satisfied that there's no issue with regard to those

three entities or potential claims to this $6 million?

Brighthouse Counsel: With those three entities and individuals, yes. The holdup are the Leer Entities and ---

Florida Court: Time Out. Time Out…. Okay. So that leaves the Leer group. So we've got Mr. Dyer. Mr. Dyer, you have not filed a response or anything. So what is the Leer position with regard, not to the $9 million but the $6 million?

MR. DYER: We have no opposition to the $6 million going to Mr. Goldberg as the receiver. I sent that in multiple emails and clarified today that each one of the, what we call, Leer Entities consents to the $6 million being distributed to Mr. Goldberg.

Florida Court: This may seem kind of a silly question, but why are we here?

Brighthouse Counsel: If I may, Judge. Mr. Dyer represents one of the entities in a California action they brought against Brighthouse. Unfortunately, as far as we understand and know, the real attorneys, if I say, for lack of sounding, you know, terrible, but -- I don't want to diss Mr. Dyer in any way, shape, or form. But the real players here are White & Williamson [sic] and a host of attorneys that have not presented themselves today before the Court. And, in fact, this morning we received an email from Mr. Heskin, which is Shane Heskin, one of their lead attorneys at White & Williamson -- White & Williams, that clearly said that the only entity that agrees is -- and I'll ask Michelle for help because I just came on board five days ago.

Brighthouse Counsel #2: Cap Factor -- The most recent entity that –

Brighthouse Counsel: LifeShare's 1019, correct. So they only agree as to LifeShare's 1019, which leaves nine other entities, including two individuals, which are Mr. and Mrs. Leer, that are not in consent with regard to the $6 million being distributed to the SEC receiver.

Florida Court: Well, are the others taking an adverse position or are they just not responding?

MR. DYER: If I can provide some –

Florida Court: Yes.

MR. DYER: -- clarification here. I represent each of the entities and the Leer individuals for all purposes outside of the New York action. And I'm providing the consent for each one of those." (Declaration of Dustin J. Dyer Ex. 6-Pg. 5:18-7:20)

Despite Brighthouse's active involvement in the Florida Action only being a single calendar week (September 8, 2023 - date of commencement of the litigation to September 15, 2023 - date all parties agreed to distribution); and there being no issue regarding distribution of Death Benefit funds to the SEC receiver, Brighthouse now claims to have incurred over $70,000.00 in relation to this issue. (*See* Quesada Decl. ¶ 11; Millioen Decl. ¶ 10).

## I.  The Interpleader Action

On September 28, 2023, Brighthouse commenced this interpleader action against Defendants. (ECF Doc. 1.) The commencing of interpleaders is a common practice among insurance companies. Brighthouse has participated a litany of interpleader actions within the last year alone – and in

numerous states. A quick google search easily identifies interpleader filings by Brighthouse including:

1) Brighthouse v Mosack (US District Court Southern District Court of NY) Case No. 21 Civ. 605;

2) Brighthouse v. Florez (US District Court Northern District Court of CA) Case No. 3:24-cv-01556;

3) Brighthouse v. Chun (US District Court Central District Court of CA) Case No. 2:24-cv-01945).

### J.   Dismissal of the California Action

Once LS 1019's counsel became aware of the current action, the parties in the California Action agreed that dismissal of the California Action was prudent. On November 1, 2023, Attorney Dyer sent an email to Brighthouse's California counsel stating "Ronald, This confirms our conversation just now on the Life Shares 1019 LLC v. Brighthouse Life Insurance Co. et al litigation. (US Central District of California Case No. 8:23-cv-01846-KES) We have agreed that Plaintiff will be dismissing the entire action without prejudice and all parties will bear their own costs and fees." (Declaration of Dustin Dyer Ex. 7). LS 1019 filed the dismissal the next day, November 2, 2023. (Declaration of Dustin Dyer Ex. 8).

## SALIENT PROCEDURAL HISTORY

Brighthouse filed the Complaint in the present action on September 28, 2023. (ECF Doc. 1.) Spin Capital and the New York Receiver filed their Answers on January 10, 2024 (ECF Docs. 51, 53), and the Leer Parties and LS1019 filed their Answers on January 24, 2024. (ECF Docs. 71, 72).

A status conference with the Court was held on January 12, 2024. (*See* ECF Doc. 56.) During the conference, the parties agreed to pause the interest currently accruing on the $9,000,000.00 held by Brighthouse, and that the parties would meet and confer in good faith towards a resolution of the Interpleader Action. With an interest rate of 8%, the $9,000,000.00 held by Brighthouse was incurring $1,972.60 in interest every day. Through this agreement, Brighthouse was able to hold on to the $9,000,000.00 for forty-eight (48) days without incurring additional interest. This agreement saved Brighthouse $94,684.80.

After the conference, Brighthouse failed to meet and confer in good faith regarding the Interpleader action. Instead, Brighthouse, without any legal authority supporting their position, insisted that they be paid the entirety of their fees in the Interpleader Action, the Florida Action and the California Action -- totaling $155,062.00. (See Declaration of Dustin J. Dyer Ex. 9). Defendants could not justify, in good faith, paying fees that are wholly unrelated to the present action, inflated and purely uncollectable. Despite little work being done in the present litigation (other than Brighthouse drafting the present fees motion) Brighthouse claims to have incurred an additional $56,789.14 in fees and costs within the last sixty (60) days.

As punishment for not agreeing with the exorbitant fee request, Brighthouse, in addition to unreasonably increasing fees, now seeks an additional $337,315.07 in sanctions. Brighthouse provides only boilerplate authority to justify their bad faith request.

## LEGAL ARGUMENT

**I.      LS 1019 Does Not Oppose Brighthouse's Request to Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Remaining Death Benefit**

Brighthouse seeks an Order from the Court discharging Brighthouse from all liability in connection with the Policy and Remaining Death Benefit, permanently enjoining the Claimants from commencing any other actions or proceedings seeking payment of the Remaining Death Benefit or otherwise in connection with the Policy and dismissing Brighthouse from this action with prejudice. Given that Brighthouse deposited $9,338,602.74 with the Court (ECF Docket Text, Mar. 14, 2024), LS 1019 does not oppose Brighthouse's request to dismiss and discharge.

**II.     Brighthouse is Entitled to its Attorneys' Fees and Costs**
   **A.  Legal Standard for Awarding Fees**
"Under the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees." *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985); *see also Hall v. Cole*, 412 U.S. 1, 4-5 (1973) ("Although the traditional American rule ordinarily disfavors

the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require.").

Despite no express authorization to award attorney fees in either the Federal Interpleader Act or Rule 22 of the Federal Rules of Civil Procedure, there is an established contrary exception based on the equitable nature of the interpleader remedy. While attorney fees are not granted as a matter of course in federal interpleader actions, "[i]t is settled that a federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action whenever it is **fair and equitable to do so**." *Sun Life Assurance Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009) (emphasis added).

If an interpleader fee award is deemed appropriate, the resulting amount should be modest and not significantly deplete the total fund at issue. (*Hunter v. Fed. Life Ins. Co.,* 111 F.2d 551, 557 (8th Cir. 1940) at 557). The scope of compensable expenses is very limited. "By its very nature [an interpleader fee award] is of a relatively small amount simply to compensate for initiating the proceedings." (*Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962)). **Recoverable interpleader fee awards are confined to "attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit."** (*Van Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014)) (emphasis added) (citation omitted). Charges for professional services outside of this narrow scope of tasks are typically not included in an interpleader fee award, **including: "preparing to defend a potential collateral claim or counterclaim,"** (*Sun Life Assurance Co. v. Bew*, 530 F. Supp. 2d 773, 776 (E.D. Va. 2022)(emphasis added)); conducting discovery-related tasks, (*Midland Nat'l Life Ins. Co.v. Ingersoll*, No. 13-C-1081, 2014 U.S. Dist. LEXIS 175041, at *12-13 (E.D. Wis. Dec. 18, 2014)); conducting background research to determine the necessity of an *interpleader, (Del. Life Ins. Co. v. Moore*, No. 18cv944-L, 2019 U.S. Dist. LEXIS 27968, at *15-16, 18-19 (S.D. Cal. Feb. 21,

2019))*; and* **work related to recovery of attorney fees,** (*id. and Wells Fargo Bank, N.A. v. Ramirez,* 19-CV-04561 (FB)(PK), 2019 U.S. Dist. LEXIS 245895, *5 (E.D.N.Y. Dec. 13, 2019).

Detailed supporting information is usually required to justify an attorneys' fee award. Courts compare the requested fee amount to the "lodestar" amount, which equals the reasonable hourly rate multiplied by the hours reasonably expended. (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). District courts use the following factors to evaluate the reasonableness of both rates and hours worked: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. (*Id.* at 243-44)

Fee applicants "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended," (*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), which requires them to "prov[e] [the] hours [claimed] by submitting meticulous, contemporaneous time records that reveal... all hours for which compensation is requested and how those hours were allotted to specific tasks," (*Case v. Unified School District* No. 233, 157 F.3d 1243, 1250 (10th Cir.1998) (citation omitted). Fee applicants must also establish that the rates requested are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience and reputation." (*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "In addition to the attorney's own affidavits, the fee applicant must provide satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." (*Plyler v. Evatt*, 902

F.2d 273, 277 (4th Cir. 1990)). "Examples of the type of specific evidence that... is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." (*Edward D. Jones & Co., L.P. v. Am. Nat'l Ins. Co.,* No. 1:19-cv-00018-JMC, 2020 U.S. Dist. LEXIS 237512, at *11 (D.S.C. Dec. 17, 2020) (citations omitted)). A district court "abuse[s] its discretion by awarding the hourly rates requested [by the fee applicant] in the absence of 'satisfactory specific evidence of the prevailing market rates.'" (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

**B.  Equity Weighs in Favor of Not Awarding Brighthouse Any Attorneys' Fees and Costs**

Brighthouse should not be awarded any of its requested attorneys' fees and costs, due to a litany of reasons -- including the fees arising from the ordinary costs of doing business, their pursuit of clearly unrecoverable fees and costs, their bad faith tactics in the present litigation, the inflation of fees and the assertion of unreasonable legal positions done solely for the purpose of increasing total fees.

**1. The Claimants' Dispute Involves Straightforward Issues That are Part of the Ordinary Cost of Doing Business**

In Interpleader actions, attorneys' fees are not granted as a matter of right, especially when the party seeking fees is an insurance company. "We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader." (*See Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965)). The Eleventh Circuit later held that "attorneys' fees are not warranted... when a stakeholder's interpleader claim arises out of the normal course of business." (*In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 21 F.3d at 383). The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds-disputes that arise with some modicum of regularity. In a sense, the insurance company will use

interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award. (*Id.*; *see also Genworth Life and Annuity Ins. Co. v. Hubbell*, No. 19 CV 6547, 2020 U.S. Dist. LEXIS 154862, at *6-7 (N.D. Ill. Aug. 26, 2020) ("Weighing possible future expenses against [the] probability of occurrence [of competing claims] is precisely what an insurance company does when it sets premiums. This ability to mitigate costs ahead of time importantly distinguishes insurance companies from other types of stakeholders who might bring an interpleader action."). "Only where there are unique circumstances, such as particularly complex or novel proceedings, might a court award attorneys' fees to an insurance company in an interpleader action," (*Riversource Life Ins. Co. v. Martell*, 3:20-CV-00749 (KAD), 2020 U.S. Dist. LEXIS 267159, at *12 (D. Conn. Dec. 23, 2020)), and "[t]he fact that Plaintiff may have had to spend additional time in this case compared to others does not give rise to an automatic inference that such additional time is an expense outside the ordinary cost of doing business. (*Metro. Life Ins. Co. v. Estate of Seagrove*, No. 1:18- CV-0920, 2019 U.S. Dist. LEXIS 32001, at *11 (N.D.N.Y. Feb. 28, 2019)).

Brighthouse has completely failed to justify that the present litigation is outside of the normal course of business. The present interpleader action, like all interpleader actions, deals with multiple parties who have competing claims to the Death Benefits. Brighthouse attempts to create complexity in the present litigation by referring to other litigations they did not participate in. For example, in Brighthouse's moving papers, it refers to SEC litigation which is "a nearly twenty-year long litigation on behalf of thousands of defrauded investors"; however, Brighthouse fails to identify that it didn't participate in 99.9% of that litigation. Brighthouse's active involvement in the Florida Action was

only a calendar week (September 8, 2023- date of the SEC Receiver's Motion to September 15, 2023- date all parties agreed to distribution). Additionally, the only issue involving Brighthouse was regarding distribution of Death Benefit funds to the SEC receiver -- which the parties unanimously agreed to without issue.

No novel or complex issues have arisen in the present litigation. The only two motions that have been filed in the present litigation, other than motions related to pro hac vice or extensions of time to answer, are Brighthouse's unopposed motion to deposit funds and the present motion. Given the straightforward nature of the present litigation there is no support that Brighthouse's participation in the present litigation is anything other than the ordinary cost of doing business -- which is already accounted for in their business structure and premium payment calculations. Given the straightforward nature of the present litigation, there is absolutely no justification for over $211,000.00 in fees and costs. As such, the present motion must be denied in its entirety.

## 2. Claimants Have Not Improperly Protracted the Proceedings

Brighthouse has failed to establish any delay by any defendant in the present litigation.

First, Brighthouse appears to claim the defendants' actions were improper simply because the filing of the present litigation was necessary. "Brighthouse attempted to avoid the action entirely by proposing that the Defendants consent to Brighthouse's disbursement of the Remaining Death Benefit to the New York Receiver and the release and discharge of Brighthouse, but the Defendants refused to unanimously agree." (Brighthouse P&As Pg. 17). There is no justification for this position. As stated above, filing interpleader actions is part of the ordinary cost of doing business for insurance companies.

The only non-general claim of delay that Brighthouse was able to point to in their motion is that in February of 2024, the parties refused to sign a release for the benefit of Brighthouse only. Brighthouse falsely claims that "the Leer Parties and LS 1019 refused to agree to release Brighthouse,

with no explanation whatsoever." At the time Brighthouse was seeking a release, Brighthouse was additionally seeking exorbitant fees in three separate litigations. This is identified in more detail below.

Clearly, there was justification in attempting to resolve the issues regarding liability and fees at the same time. It is worth noting that interest stopped accruing, through agreement of the parties on January 12, 2024, therefore, it was a benefit for Brighthouse to not resolve the dispute and to deposit the funds because, by doing this, Brighthouse was able to retain $9,000,000 and use it for the benefit of their business without the need to pay any interest.

In direct contradiction to Brighthouse's claim of delay, no party actively opposed Brighthouse's pursuit to deposit the Death Benefit funds. Each Defendants main opposition to Brighthouse was their pursuit of uncollectable and exorbitant attorneys' fees and costs, as well as Brighthouse's insistence on tying their fees to a resolution in the Interpleader action.

### 3. Brighthouse Has Failed to Act in Good Faith and Provided Nothing More Than Routine Services

Contrary to the contentions in Brighthouse moving papers, it was LS 1019, through their attorney, Dustin Dyer, who informed others of Utsick's death, not Brighthouse. Immediately, upon hearing of Utsick's death, LS 1019 attempted to resolve any possible issues with the SEC Receiver to ensure the distribution of both the Brighthouse Death Benefit and Joh Hancock Death Benefit could be distributed without any issues. (Declaration of Dustin J. Dyer Ex. 10). Furthermore, on June 14, 2023, LS 1019 notified Brighthouse and other interested parties that the Trusner litigation in Orange County Superior Court (CA) was settled and final payment was being made. (Declaration of Dustin J. Dyer Ex. 11).

Brighthouse claims that it provided unique services that "voluntarily and in good faith offered its services to achieve a settlement and avoid the present litigation." The only beneficial services which Brighthouse has provided in 2024 is uniting the Defendants against a common enemy trying

to charge exorbitant fees. During the January 12, 2024, status conference in this action, each Defendant was hopeful that a resolution regarding depositing the Death Benefit could quickly be achieved and the parties could return to expending their time and effort on the New York State Litigation. Given this optimism, Defendants agreed to suspend the accumulation of interest on the Death Benefit. However, Defendants realized that was unrealistic when it became apparent that any resolution would require Defendants agreeing to pay Brighthouse's inflated attorneys' fees and costs for three separate litigations. Within a week of suspending the accumulation of interest, Brighthouse demanded payment of fees of $155,000.00 in order to have a resolution. (See Dyer Declaration Ex. 9). These actions by Brighthouse have made it impossible for the parties to resolve the interpleader and forced the Defendants to unite against Brighthouse's bad faith pursuit of unconscionable fees and costs.

### C.  The Fees and Costs Sought By Brighthouse Are Unconscionable
#### 1. The Florida Action

Given Brighthouse's refusal to distribute funds to the SEC Receiver, on or about September 8, 2023, the SEC Receiver filed a Motion to Compel Turn Over and to Hold Brighthouse in Contempt. (Declaration of Dustin J. Dyer Ex. 5).  Defendants repeatedly attempted to resolve any issues which Brighthouse may have regarding the distribution of $6,000,000.00 to the SEC Receiver but Brighthouse did not comply claiming more and more formality was necessary. LS 1019 was in conversations with the SEC Receiver on June 9, 2023, the day after Utsick's death acknowledging the SEC Receiver's right to $6,000,000.00 of the Death Benefit. (Declaration of Dustin J. Dyer Ex. 10).

On September 14, 2023, the day prior to a status conference with the Florida Court, Brighthouse drafted a 4+ page summary of Brighthouse's position (excluding the attachment of 2 exhibits) (See Dyer Declaration Ex. 12). Despite the document doing nothing more than reciting facts and Brighthouse's position, Brighthouse claims it expended 5.8 hours on the paper and now seeks

payment of $2,465.00. The content of the document could not have taken more than 2 hours to complete, review and file.

The court in the Florida Action set a status conference for September 15, 2023. (Declaration of Dustin J. Dyer Ex. 6). During the status conference, Attorney Dyer, on behalf of all Leer entities, including LS 1019 stated the following:

"Florida Court: Is the insurance company satisfied that there's no issue with regard to those three entities or potential claims to this $6 million?
Brighthouse Counsel: With those three entities and individuals, yes. The holdup are the Leer Entities and ---
Florida Court: Time Out. Time Out…. Okay. So that leaves the Leer group. So we've got Mr. Dyer. Mr. Dyer, you have not filed a response or anything. So what is the Leer position with regard, not to the $9 million but the $6 million?
MR. DYER: We have no opposition to the $6 million going to Mr. Goldberg as the receiver. I sent that in multiple emails and clarified today that each one of the, what we call, Leer Entities consents to the $6 million being distributed to Mr. Goldberg.
Florida Court: This may seem kind of a silly question, but why are we here?
Brighthouse Counsel: If I may, Judge. Mr. Dyer represents one of the entities in a California action they brought against Brighthouse. Unfortunately, as far as we understand and know, the real attorneys, if I say, for lack of sounding, you know, terrible, but -- I don't want to diss Mr. Dyer in any way, shape, or form. But the real players here are White & Williamson [sic] and a host of attorneys that have not presented themselves today before the Court. And, in fact, this morning we received an email from Mr. Heskin, which is Shane Heskin, one of their lead attorneys at White & Williamson -- White & Williams, that clearly said that the only entity that agrees is -- and I'll ask Michelle for help because I just came on board five days ago.
Brighthouse Counsel #2: Cap Factor -- The most recent entity that –
Brighthouse Counsel: LifeShare's 1019, correct. So they only agree as to LifeShare's 1019, which leaves nine other entities, including two individuals, which are Mr. and Mrs. Leer, that are not in consent with regard to the $6 million being distributed to the SEC receiver.
Florida Court: Well, are the others taking an adverse position or are they just not responding?
MR. DYER: If I can provide some –
Florida Court: Yes.
MR. DYER: -- clarification here. I represent each of the entities and the Leer individuals for all purposes outside of the New York action. And I'm providing the consent for each one of those." (Declaration of Dustin J. Dyer Ex. 6-Pg. 5:18-7:20)

Despite Brighthouse's active involvement in the Florida Action only being a single calendar week (September 8, 2023 - date of commencement of the litigation to September 15, 2023 - date all parties agreed to distribution); and there being no issue regarding distribution of Death Benefit funds

to the SEC receiver, Brighthouse now claims to have incurred over $70,000.00 in relation to this issue. (*See* Quesada Decl. ¶ 11; Millioen Decl. ¶ 10.)

After resolution of the dispute, Brighthouse's counsel has numerous entries which are completely unsupported. For example, from September 19, 2023, through September 22, 2023, Brighthouse's counsel, Ms. Quesada has 19.1 hours of entries for emails, texts and telephone communications with redacted persons. These entries are wholly improper and provided no benefit to the Florida Litigation which was already resolved in principal and simply in the process of completing the resolution.

As stated above, the scope of compensable expenses is very limited. "By its very nature [an interpleader fee award] is of a relatively small amount simply to compensate for initiating the proceedings." (*Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962)). **Recoverable interpleader fee awards are confined to "attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit."** (*Van Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014)) (emphasis added) (citation omitted). Charges for professional services outside of this narrow scope of tasks are typically not included in an interpleader fee award, **including: "preparing to defend a potential collateral claim or counterclaim,"** (*Sun Life Assurance Co. v. Bew*, 530 F. Supp. 2d 773, 776 (E.D. Va. 2022)(emphasis added)); conducting discovery-related tasks, (*Midland Nat'l Life Ins. Co.v. Ingersoll*, No. 13-C-1081, 2014 U.S. Dist. LEXIS 175041, at *12-13 (E.D. Wis. Dec. 18, 2014)); conducting background research to determine the necessity of an *interpleader, (Del. Life Ins. Co. v. Moore*, No. 18cv944-L, 2019 U.S. Dist. LEXIS 27968, at *15-16, 18-19 (S.D. Cal. Feb. 21, 2019)).

Unstated in Brighthouse's moving papers is that Brighthouse was brought into the Florida Litigation by the SEC Receiver, but Brighthouse now seeks recovery of these fees in a litigation which does not involve the SEC Receiver. Clearly, there is no justification for recovery of these fees. Unlike

the parties in *Renasant Bank, Inc. v. AVE, Inc.*, No. CV 19-0733-CG-MU, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021), Brighthouse was not brought into the Florida Litigation by a party in the Interpleader action.

### 2. The California Litigation

LS 1019 filed a complaint against Brighthouse in California state court on or about August 31, 2023 seeking payment of the Remaining Death Benefit. (Interpleader Complaint Ex. W.) Upon receiving notice of the Interpleader Action, counsel for LS 1019 immediately reached out to resolve the California Litigation.

On October 5, 2024, Brighthouse sought a joint stipulation to extend Brighthouse's time to respond to the California complaint. (See Dyer Declaration Ex. 13). Dyer wrote back the next day approving the joint stipulation for filing. (See Dyer Declaration Ex. 14). Despite this quick agreement, Defendant continues to seek fees in the motion for ex parte applications to extend response deadlines which were never filed. (See Albert Declaration).

On November 1, 2023, LS 1019's attorney and Brighthouse attorney agreed to dismiss the litigation in exchange for a waiver of attorneys' fees and costs. Attorney Dyer sent a confirming email memorializing the conversation. (See Dyer Declaration Ex. 15). On November 2, 2023, the California Action was dismissed. (See Dyer Declaration Ex. 16). Even without an agreement on waiver of fees and costs, Brighthouse's deadline to pursue and fees or costs as a prevailing party (which they weren't) would necessarily have to have been sought by within 14 days of the dismissal pursuant to Rule 54(d)(2)(B)(i). Despite agreement of the parties to waive costs and being more than 4 months late in seeking fees, Brighthouse now seeks over $19,000.00 in legal fees arising from the California Litigation. Clearly this is done in bad faith.

### 3. Fees In the Interpleader Action Are Not Appropriate

Detailed supporting information is usually required to justify an attorneys' fee award. Courts

compare the requested fee amount to the "lodestar" amount, which equals the reasonable hourly rate multiplied by the hours reasonably expended. (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). District courts use the following factors to evaluate the reasonableness of both rates and hours worked: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. (*Id.* at 243-44). Fee applicants "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended," (*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), which requires them to "prov[e] [the] hours [claimed] by submitting meticulous, contemporaneous time records that reveal... all hours for which compensation is requested and how those hours were allotted to specific tasks," (*Case v. Unified School District* No. 233, 157 F.3d 1243, 1250 (10th Cir.1998) (citation omitted).

In Brighthouse' moving papers, Brighthouse makes no effort to demonstrate the necessary facts to support an attorneys' fee motion. Brighthouse's attorneys' fees declaration are replete with redacted entries which prohibit the Court from determining whether the services were necessary, the novelty and difficulty of the questions raised or the skill required to properly perform the legal services rendered.

Additionally, the fees are clearly inflated. For example, In Tiffany Millioen's declaration and attached fees it shows an entry on September 12, 2023, Ms. d'Arcambal billed 3.00 hours for communications with the New York Receiver. However, on September 12, 2023, the New York

Receiver, Fred Stevens billed .7 hours for communications with Ms. d'Arcambal, communications with the SEC Receiver's counsel, Ms. Kretzschmar and reviewing documents. (Dyer Declaration Ex. 17). Over 76% of Ms. d'Arcambal's time is not accounted for on September 12, 2024.  On September 14, 2023, of Ms. d'Arcambal billed 4.00 hours for the Florida Litigation status conference letter which Ms. Quesada had already billed 5.8 hours. On September 15, 2023, Ms. d'Arcambal billed 3.0 hours for preparation and participation in the Florida Litigation status conference. This conference lasted less than 20 minutes and consists of 12 pages of transcript. (See Dyer Declaration Ex. 6). These unsupported and unjustified billings are throughout Brighthouse's counsel's billings.

Motions seeking attorneys' fees are prohibited from seeking fees for **work related to recovery of attorney fees,** (*id. and Wells Fargo Bank, N.A. v. Ramirez,* 19-CV-04561 (FB)(PK), 2019 U.S. Dist. LEXIS 245895, *5 (E.D.N.Y. Dec. 13, 2019). Within the time entries accompanying Ms. Millioen's declaration there are over 20 time entries totaling over 30 hours which directly identify the pursuit of attorneys' fees. There are dozens of additional redacted entries totaling over 50 hours which appear to be in pursuit of attorneys' fees. These are clearly not recoverable but are still being pursued by Brighthouse.

Fee applicants must also establish that the rates requested are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience and reputation." (*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "In addition to the attorney's own affidavits, the fee applicant must provide satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." (*Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "Examples of the type of specific evidence that... is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." (*Edward D. Jones & Co., L.P. v. Am. Nat'l Ins. Co.,* No. 1:19-cv-00018-JMC, 2020 U.S. Dist. LEXIS 237512, at

*11 (D.S.C. Dec. 17, 2020) (citations omitted)). A district court "abuse[s] its discretion by awarding the hourly rates requested [by the fee applicant] in the absence of 'satisfactory specific evidence of the prevailing market rates.'" (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Brighthouse makes no effort to justify the prevailing market rate for the services provided. As such, the present request for fees must fail.

## D. Sanction Against Defendants Are Inappropriate And Instead Sanctions Should be awarded against Brighthouse.

Brighthouse, believing their inflated and unconscionable attorneys' fees request was not enough, seeks sanctions of $337,315.07. In total, Brighthouse seeks recovery of over $540,000.00 by way of this motion. Very little effort is made to justify the request for sanctions. Brighthouse's justification for the sanctions is the only that they filed an interpleader. However, the very point of interpleader actions is to allow parties such as Brighthouse to file actions and avoid liability from parties who cannot agree on distributions. This is simply an attempt by Brighthouse to work around their contractual obligation of paying 8% interest on Death Benefits.

From Utsick's death on June 8, 2023, to the deposit of fees, Brighthouse was able to retain $9,000,000.00 for use in their business and investments. Brighthouse was not harmed by retaining this large sum of money for an additional eight (8) months. On January 12, 2024, the parties agreed to cease the accumulation of any interest in hopes of resolution. The vast majority of Brighthouse's complaints regarding Defendants' delays originate after interest was paused. Once interest was paused, it was a windfall for Brighthouse to retain $9,000,000.00, which could be used for their business and investments without having to pay any interest. With this knowledge, Brighthouse began its pursuit of unconscionable attorneys' fees, which caused both the Interpleader Litigation and New York Litigation to come to a standstill.

Clearly, there is no justification for sanctions against Defendants. However, it is abundantly

clear that once Brighthouse was able to obtain a pause on the accumulation of interest, Brighthouse, in bad faith, pursued uncollectible, improper and false attorneys' fees. Defendants should be entitled to recover the interest which they would have received but for Brighthouse's bad faith pursuit of fees. The amount of interest which should have accumulated between the January 12, 2024, conference until Brighthouse deposited the Death Benefit on February 29, 2024, is $94,684.93 (48 days x (($9,000,000 x .08)/365).

## CONCLUSION

For the foregoing reasons, LS 1019 respectfully requests that the Court issue an Order denying Brighthouse's attorneys' fees and costs in the amount of $211,851.14, and deny the imposition of sanctions upon the Claimants in the amount of $337,315.07. Instead, LS 1019 requests an Order imposing sanctions upon Brighthouse in the amount of $94,684.93.


Dated: March 29, 2024

Chicago, IL/Stockton, CA

Respectfully submitted,

**ALMEIDA LAW GROUP,**

/s/ David S. Almeida
**49 W. Webster Ave Chicago, IL 60614**
(312)-576-3024
*Attorneys for Defendant*
*Life Shares 1019, LLC*


**DYER LAW FIRM**

/s/ Dustin J. Dyer
**5250 Claremont Ave. Ste. 119**
**Stockton, CA 95207**
(209)-472-3668
*Attorneys for Defendant*
*Life Shares 1019, LLC*