UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIGHTHOUSE LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>SPIN CAPITAL, LLC, GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., DRVN HOLDINGS, LLC, LIFE SHARES 1019, LLC, STEFAN LEER, TATANISHA LEER, CAP FACTOR, LLC and FRED STEVENS as Court-Appointed Temporary Receiver,<br><br>        Defendants. | 23-cv-8570 (DEH) |

**DEFENDANT SPIN CAPITAL, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES**

Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
Attorneys for Defendant
Spin Capital, LLC

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.     THE BRANCH OF THE MOTION SEEKING SANCTIONS SHOULD BE DENIED .. 3

II.    THE BRANCH OF THE MOTION SEEKING ATTORNEYS' FEES SHOULD BE
       DENIED .................................................................................................................. 5

       A.     Attorneys' Fees Incurred Herein ............................................................. 5

       B.     Attorneys' Fees Incurred in the LS1019 California Action and Florida Action ..... 7

       C.     Unreasonableness of Requested Attorneys' Fee Award ........................ 8

III.   SANCTIONS OR ATTORNEYS' FEES AWARDED AGAINST THE LEER PARTIES
       OR LIFE SHARES 1019, LLC SHOULD NOT BE ASSESSED AGAINST THE
       INTERPLEADED DEPOSIT ..................................................................... 10

CONCLUSION ................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v NASCO, Inc.*
   501 U.S. 32 (1991)...................................................................................................... 4

*Cohen v. Life Ins. Co. of N. Am.*,
   17-cv-9270, 2019 WL 1785095 (S.D.N.Y. April 24, 2019)................................................. 9, 10

*Commercial Union Life Insurance Company of New York v. Almonor*,
   98-cv-3649, 1999 WL 292562 (S.D.N.Y. May 7, 1999) ........................................................ 6

*Companion Life Ins. Co. v. Schaffer*,
   442 F. Supp. 826 (S.D.N.Y. 1977) ...................................................................................... 5, 6

*In re Earl Gaudio & Son, Inc.*,
   13-cv-90942, 2018 WL 3388917 (Bankr. C.D. Ill. July 10, 2018)........................................... 9

*Eisemann v Greene*,
   204 F.3d 393 (2d Circ. 2000)............................................................................................. 4

*Feehan v. Feehan*,
   09-cv-7016, 2011 WL 497852 (S.D.N.Y. Jan. 10, 2011) ....................................................... 5, 6

*Feehan v. Feehan*,
   09-cv-7016, 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011) ..................................................... 5, 6

*Guardian Life Ins. Co. v. Gilmore*,
   45 F. Supp. 3d 310 (S.D.N.Y. 2014)..................................................................................... 5

*In re Las Vegas Monorail Co.*,
   458 B.R. 553 (Bankr. D. Nev. 2011) ................................................................................... 9

*Metro. Life Ins. Co. v. Mitchell*,
   966 F. Supp. 2d 97 (E.D.N.Y. 2013) ................................................................................... 6

*Milltex Indus. Corp. Jaquard Lace Co.*, *Ltd.*
   55 F.3d 34 (2d Cir. 1995)................................................................................................... 4

*New York Life Ins. Co. v. Galicia*,
   20-cv-3005, 2021 WL 346236 (E.D.N.Y. Feb. 2, 2021) ....................................................... 6

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986)............................................................................................. 4

*Ransmeier v. Mariani*,
    718 F. 3d 64 (2d Cir. 2013)..........................................................................................4

*Renasant Bank, Inc. v. AVE, Inc,*,
    19-cv-733, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021) .........................................7

*Septembertide Pub B.V. v Stein and Day, Inc.*,
    884 F. 2d 675 (2d Cir. 1989)........................................................................................7

*Travelers Ins. Co. v. Estate of Garcia*,
    00-cv-2130, 2003 WL 1193535 (E.D.N.Y. Feb. 4, 2003).........................................6

*Travelers Indem. Co. v. Israel*,
    354 F.2d 488 (2d Cir. 1965)......................................................................................5, 6

*In re Tri-State Plant Food, Inc.*,
    273 B.R. 250 (Bankr. M.D. Ala. 2002)......................................................................9

*U.S. Life Ins. Co. in City of New York v. Blum*,
    09-cv-9416, 2011 WL 70385 (S.D.N.Y. Jan. 3, 2011)..............................................6

**Statutes and Rules**

CPLR 1006....................................................................................................................4

Defendant Spin Capital, LLC ("Spin Capital") submits this memorandum of law in opposition to the motion of plaintiff Brighthouse Life Insurance Company for discharge, dismissal and other relief in interpleader, only to the extent it seeks:

- sanctions against Spin Capital, which were sought in the amount of $337,315 representing accrued interest on the Remaining Death Benefit (as defined in the moving brief);

- attorneys' fees in the amount of $211,851, representing amounts plaintiff incurred in this action, and in the LS1019 California and Florida Actions (each as defined in the moving brief); and

- recovery of sanctions or attorneys' fees awarded against any other party from the interpleaded deposit.

## PRELIMINARY STATEMENT

Spin Capital does not oppose the branches of the motion seeking discharge or an injunction prohibiting the commencement of any other action against plaintiff seeking the Remaining Death Benefit under the subject policy. This opposition brief is directed solely towards those branches of the motion seeking sanctions against Spin Capital and recovery of attorneys' fees from it or the interpleaded deposit.

As to sanctions, plaintiff has failed to carry its burden as to Spin Capital. Plaintiff sought sanctions from the "Claimants", a term defined to include the "Leer Parties", Life Shares 1019, LLC ("LS1019") on whose behalf Stefan Leer acted (moving brief at 5), as well as Spin Capital, on the basis that they did not promptly and collectively agree to plaintiff's July 24, 2023 proposal that funds not disbursed to the SEC receiver be paid over to the New York Receiver (as defined in the moving brief), who had been appointed on Spin Capital's motion. As the record allegedly supporting plaintiff's request to sanction reflects, it is undisputed that Spin Capital promptly agreed to plaintiff's proposal. (D'Arcambal Decl. ¶¶7-9, 13, 27, Exhibit 4, Exhibit 6, Exhibit 9, Exhibit 22.) As the undisputed record also reflects, only the Leer Parties and LS1019 stood in the way of the July 24, 2023 proposal (id. ¶¶7, 10-11, 16, 27), but the motion papers do not limit the sanctions sought only

1

from the non-Spin Capital claimants.  Under these circumstances, with no evidence, or even an

allegation having been made, as to any wrongful conduct on the part of Spin Capital or the New

York Receiver, no sanctions should be imposed upon Spin Capital.

As to attorneys' fees, those incurred herein should be denied as an ordinary course expense

of doing business in the life insurance industry; and the requested $19,383 in fees incurred in the

LS1019 California Action and $70,493 in fees incurred in the Florida Action should likewise be

denied, particularly as to fees incurred in those actions before the commencement of this action. As

shown below, plaintiff has not carried its burden to show which fees were appropriate or necessary

or outside the ordinary course.  Insofar as attorneys' fees are awarded, reductions should be applied

for excessive, overly redacted and mistaken time entries identified below.

Finally, Spin Capital has asserted claims to the entire interpleaded deposit in its underlying

action ("New York Action") against the Leer Parties and LS1019 in New York County Supreme

Court.[1]  All such claims remain pending before the Honorable Andrew Borrok, J.S.C., with the Leer

Parties' usury-based RICO counterclaims having been dismissed.[2] Accordingly, any charge against

the interpleaded deposit would reduce Spin Capital's likely recovery in the underlying action; and

any sanction against the Leer Parties and/or LS1019, or attorneys' fee award on account of their

conduct, should therefore be charged to them rather than against the interpleaded deposit.

---

[1] More specifically, the first cause of action of Spin Capital's amended complaint is for breach of
its promissory note; the sixth is a voidable transaction claim against LS1019, on account of Life
Factor II LLC (a borrower under Spin Capital's promissory note) having transferred its interest in
the subject policy issued by plaintiff (as indicated in the security agreement) to LS1019; and the
tenth is a related declaratory judgment claim.

[2] Further, Justice Borrok has held Stefan Leer in civil contempt in relation to a separate policy whose
proceeds he directed to LS1019 in violation of the receivership order.  The receiver moved by order
to show cause to hold him in criminal contempt for failure to return the subject funds.  The hearing
on the criminal contempt motion commenced April 4, 2024 and was adjourned to April 25, 2024.
The funds that are the subject of the contempt motions have yet to be returned.

## ARGUMENT

### I.      THE BRANCH OF THE MOTION SEEKING SANCTIONS SHOULD BE DENIED

The asserted basis for sanctions is the Court's "inherent power to impose sanctions upon any or all of the uncooperative Plaintiffs to punish them for their abuse of process and impairing of these proceedings" and the amount sought is "$337,317, representing the amount of interest on the Remaining Death Benefit from July 24, 2023 (the date Brighthouse proposed a resolution to the Defendants) to January 11, 2024 (the Court-ordered date that interest stopped accruing)." (Moving brief at 24-25.) The record is bereft of evidence (much less any allegations) of any wrongdoing on Spin Capital's or the New York Receiver's part.

The requested sanctions are based solely on the other claimants' refusal to immediately accept plaintiff's proposal. Spin Capital promptly agreed to plaintiff's proposal, which plaintiff has acknowledged. For example, Michelle d'Arcambal's declaration states that on August 14, 2023, Spin Capital interposed "several reasonable questions" in response to the initial proposal to turn the subject policy proceeds over to the respective receivers, whereas "counsel for the Leer Parties and LS1019 responded, '[o]ur client needs to review still. I'm not sure they will agree to this (id. ¶7); Spin Capital indicated agreement with plaintiff's proposal two days later (id. ¶9), whereas the Leer Parties and LS1019 simply ignored plaintiff's emails (id. ¶10); Spin Capital signed consent letters as to the $6 million distributed to the SEC receiver (id. ¶13), whereas the Leer Parties and LS1019 refused (id. ¶14); and on February 21, 2024, "Spin Capital, indicat[ed] that the documents circulated by [plaintiff] were acceptable to Spin Capital", whereas the Leer Parties and LS1019 responded that "[t]he Leer Defendants are not giving releases, with no explanation whatsoever" (id. ¶27). Under these circumstances no sanctions should be imposed upon Spin Capital.

This Court has inherent power to sanction a party or attorney "who has acted in bad faith, vexatiously, wantonly, or for offensive reasons." *Ransmeier v Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v NASCO, Inc.*, 501 U.S. 32, 42 (1991)). To impose such a sanction, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith." *Eisemann v Greene,* 204 F.3d 393, 396 (2d Circ. 2000).  "In addition, the court's factual findings of bad faith must be characterized by 'a high degree of specificity.'" *Milltex Indus. Corp. Jaquard Lace Co.*, 55 F.3d 34 (2d Cir. 1995) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)).

Putting aside the failure to identify the claimants against whom sanctions are sought, this standard is not met here.  Plaintiff does not contend Spin Capital or the New York Receiver made bad faith claims.  As noted above, the undisputed evidence confirms that Spin Capital endorsed plaintiff's proposal of turning over the subject funds to the receiver appointed at its request.  It should also be noted that plaintiff's sanctions request is based on its insistence that it was forced to incur fees outside of the ordinary course of its business.  However, as discussed below, attorneys' fees may only be awarded to compensate plaintiff for fees and expenses incurred outside of the ordinary course of business; and if no such fees are awarded it is because they were incurred in the ordinary course.  Either way, awarding sanctions against Spin Capital or any of the Claimants against the interpleaded deposit (whether in the form of sanctions or attorneys' fees) would punish Spin Capital by reducing the amount of interpleaded deposit, especially when the substantive claims to it will be resolved before Justice Borrok.[3]

---

[3] This is a conundrum resulting from plaintiff's decision to file this action in this Court rather than in New York County Supreme Court under CPLR 1006, so that this interpleader action and the underlying New York Action could be assigned to Justice Borrok upon the two actions being marked related in the request for judicial intervention.

Finally, plaintiff's request for sanctions in the amount of 8%/year interest on the death benefit should be rejected.  Plaintiff has acknowledged (moving brief at 2, 8) such interest is due under the policy.  No basis exists for negating contractual obligations by means of a sanctions application.

## II.     THE BRANCH OF THE MOTION SEEKING ATTORNEYS' FEES SHOULD BE DENIED

As noted above, plaintiff seeks attorneys' fees in the amount of $211,851 including $19,383 incurred in the LS1019 California Action and $70,493 incurred in the Florida Action.  The requested fees should be denied for reasons discussed below.

### A.     Attorneys' Fees Incurred Herein

The decision to award fees and costs in an interpleader action is left "to the sound discretion of the district court."  *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965).  Exercising this discretion, "courts in this Circuit have typically declined to award insurance companies attorneys' fees and costs in interpleader actions."  *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 320 (S.D.N.Y. 2014) (collecting cases).

The reason for typically declining to award attorneys' fees to insurers is that such fees constitute ordinary course expenses.  As noted in *Feehan v. Feehan*, 09-cv-7016, 2011 WL 497852, at *7 (S.D.N.Y. Jan. 10, 2011), *adopting report and recommendation*, 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011) (quoting *Travelers*, 354 F.2d at 490):

> "[w]henever a minor problem arises in the payment of insurance," courts have held that insurers cannot, "as a matter of course, transfer a part of their ordinary cost of doing business" to their insureds "by bringing an action for interpleader." *Travelers*, 354 F.2d at 490 …
>
> Courts have generally adopted the view that "[c]onflicting claims to the proceeds of a policy are inevitable and moral risks of the insurance business. Interpleader relieves the insurance company of multiple suits and eventuates its discharge.  Accordingly [such actions] are bought primarily in the company's own self-interest." *Companion Life Ins. Co. v. Schaffer*,

> 442 F. Supp. 826, 830 (S.D.N.Y. 1977); *see also Commercial Union Life*, 1999 WL 292562, at *1 (concluding that "[t]he ordinary cost of doing business in the life insurance industry must reflect the need for interpleader actions in some cases").
>
> As a result, courts in this Circuit have typically declined to award insurance companies attorneys' fees and costs in interpleader actions [collecting cases].

Plaintiff's counsel D'Arcambal Ousley & Cuyler Burk LLP is familiar with this rule as it was applied in another Federal interpleader action, *New York Life Ins. Co. v. Galicia*, 20-cv-3005, 2021 WL 346236 (E.D.N.Y. Feb. 2, 2021) to deny its client's application for attorneys' fees incurred to it, citing *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013) which in turn relied primarily on *Travelers* and *Feehan*.

Plaintiff acknowledges (moving brief at 16 n.14) that "some courts" have declined to award fees to insurance companies in interpleader actions, but nevertheless argues that this Court should award all fees and costs incurred herein, as well as in two other cases, because such fees "are not part of the ordinary cost of doing business" (id. at 15) citing *Travelers Ins. Co. v. Garcia*, 00-cv-2130, 2003 WL 1193535 (E.D.N.Y. Feb. 4, 2003) and *U.S. Life Ins. Co. in City of New York v. Blum*, 09-cv-9416, 2011 WL 70385 (S.D.N.Y. Jan. 3, 2011). This argument fails as both cases are easily distinguishable. *Garcia* awarded attorneys' fees because the plaintiff-insurance company was not allowed to extricate itself from the litigation after making the deposit because the claimant filed a counterclaim and made dispositive motions the plaintiff-insurance company had to respond to. Nobody made a counterclaim against the plaintiff herein. *Blum* awarded just $5,814.20 in attorneys' fees and $602.02 in costs incurred over an eight-month period during which counsel had to hire a private investigator to locate a claimant, on the ground that such fees were outside the ordinary course. 2011 WL 70385, at *3. That justification likewise does not present here. In short, there is simply no basis for awarding plaintiff attorneys' fees incurred herein.

**B.** **Attorneys' Fees Incurred in the LS1019 California Action and Florida Action**

Nor are fees incurred in the LS1019 California Action or Florida Action recoverable.  As plaintiff recognizes (moving brief at 13-14), an attorneys' fee award in an interpleader case may be requested when (1) a disinterested stakeholder (2) who has conceded liability (3) has deposited the funds into the court and (4) has sought a discharge. *Septembertide Pub B.V. v Stein and Day, Inc.*, 884 F. 2d 675, 683 (2d Cir. 1989). Plaintiff did not meet that standard until it commenced this action (September 28, 2023) which was *after* plaintiff appeared in the LS1019 California Action and the Florida Action.  Moreover, no evidentiary basis has been presented for determining which fees were appropriate or necessary or outside the ordinary course and which were not; and it is fundamentally unfair for plaintiff to recover attorneys' fees from sums deposited before there is a final determination of who the sums belong to.

Plaintiff recognizes asking this Court to award fees incurred in other cases as part of an attorneys' fee award in an interpleader case is highly unusual, but argues such award is not "without precedent", citing a single case from the Northern District of Alabama, *Renasant Bank, Inc. v AVE, Inc,*, 19-cv-733, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021).  But in that case the right to attorneys' fees was contractual.  There, a bank (not an insurance company) brought an interpleader action against several claimants to a bank account maintained with the bank. Prior to that case being filed, one of the claimants brought an action in another state against the bank relating to the account. The bank obtained the dismissal of that case and later requested an attorneys' fee award in the interpleader case for fees incurred in both.  The Court began its analysis by noting the Deposit Account Agreement provided for the bank to recover attorneys' fees in any action relating to the account, regardless of whether the applicable factors weigh in favor of any such award.  *Id*. at *5 ("Defendants … have wholly failed to contest the terms of the Agreement which specifically allow for an award of attorney's fees and costs without the restriction of the

7

factors typically considered by courts in an interpleader action in determining such an award"). Here there is no contractual right to attorneys' fees.

Plaintiff also argues that attorneys' fees incurred in the LS1019 California Action and Florida Action should be awarded on the ground that said fees were "Directly Related to the Policy and Death Benefit."

That is false. The Florida Action involved a portion of the death benefits due under the policy to the SEC Receiver, which none of the Claimants here have made any claim to whatsoever. The Florida Action was pending for years and had nothing to do with the funds interpleaded herein. While plaintiff may have been dragged into that case by the SEC Receiver, the SEC Receiver demanded payment of death benefits that were designated for him, not for the Claimants herein. It should also be noted that plaintiff acknowledged having benefitted from its participation in that case (moving brief at 8-9) by avoiding entry of a contempt order.  Further, if plaintiff believed itself entitled to attorneys' fees incurred in the Florida Action, it should have requested those fees from the Florida court, not from this Court.

As to the LS1019 California Action, while attorneys' fees incurred therein did in fact relate to the same death benefits due under the policy that is at issue herein, Spin Capital did not have anything to do with the filing of that case and plaintiff should not be awarded fees from the fund it deposited with this Court which Spin Capital believes will ultimately be awarded to it in the the New York Action before Justice Borrok. Insofar as attorneys' fees are awarded because LS1019, LLC filed that action, such fees should come from an award of sanctions directly against LS1019 and not Spin Capital's anticipated recovery.

### C.      Unreasonableness of Requested Attorneys' Fee Award

Even if this Court determined to award attorneys' fees against the interpleaded deposit notwithstanding the foregoing, such award should be substantially reduced as the amount

requested is unreasonably high.  Spin Capital has no issue with any of the hourly rates charged but

the time incurred for certain tasks is excessive.  A review of plaintiff's counsel's time records show

that it spent over 60 hours between August 28, 2023 and September 28, 2023 preparing and filing

the complaint herein, which was a one count complaint consisting of 18 pages.  Counsel spent

another 60 hours preparing this motion between February 14, 2024 and March 14, 2024.  That is

excessive.

In many instances (e.g. September 2, 7 and 10-14, 2023 entries) the time detail is heavily

redacted, making it impossible to assess reasonableness.  No indication is given that this was done

to protect the attorney-client privilege or prevent dissemination of confidential information.

Plaintiff should not be allowed to recover fees for such unidentified work.  As noted in *In re Las*

*Vegas Monorail Co.*, 458 B.R. 553, 558 (Bankr. D. Nev. 2011):

> When attorneys determine that "information should not be provided
> because of its sensitive nature," they prevent the court from fulfilling its
> responsibilities [to assess reasonableness].  In such cases, the court must
> disallow fees, as it "is impossible to determine whether a billing entry is
> reasonable or necessary" when "the description is redacted." *In re Tri-State
> Plant Food, Inc.*, 273 B.R. 250, 267 (Bankr. M.D. Ala. 2002).  Put simply,
> "[p]rofessionals may not properly avoid scrutiny of their fees by redacting
> the description of the billing entry." *Id*.

> The law firms had alternatives to their elected strategy but declined to
> pursue them.  Neither [firm] sought to file its fee application [under seal].
> This could have protected the alleged privileged information while allowing
> the court to complete the review.

*See also In re Earl Gaudio & Son, Inc.*, 13-cv-90942, 2018 WL 3388917, at *6 (Bankr. C.D. Ill.

July 10, 2018) (disallowing $215,711 in attorneys' fees on the ground of excessive reductions; "if

the redactions are limited in scope, the court's ability to properly assess the fees might not be

impeded and fees may be allowed notwithstanding the redactions.  But when the description of

work performed itself is redacted, and it is impossible to determine whether a billing entry is

reasonable or necessary, the court must disallow the fees"); *Cohen v. Life Ins. Co. of N. Am.*, 17-

cv-9270, 2019 WL 1785095, at *3 (S.D.N.Y. April 24, 2019) (internal quotation marks omitted) (disallowing attorneys' fees on inter alia the ground that "excessive redaction can complicate efforts to comprehensively assess the reasonableness of the fees' here it leaves the Court without a basis for gaining even a general sense of how an attorney's time was spent").

Finally, some entries appear to be mistakes.  For example, the September 11, 2023 time records contain an entry of six hours for "drafting emails to parties…; further analysis of [redacted], …call with Spin Receiver and drafting emails re: same." This entry appears to be a mistake because the description would not appear to warrant six hours. The same appears to be true regarding a September 12, 2023 entry which bills three full hours to "communications with Spin Receiver" regarding various issues.

As noted above, plaintiff should not recover any attorneys' fees from Spin Capital or the interpleaded deposit in relation to the LS1019 California Action or the Florida Action.  But even if this Court were to consider awarding attorneys' fees incurred in those cases, many of the time entries in [Florida counsel's time records](#) appear excessive as well, although they are so heavily redacted it is impossible to say anything with certainty. For example, there are a host of entries which refer to email exchanges or telephone conferences with unknown persons about unknown subjects, all of which contain time entries of 1.3-3.8 hours. (See entries dated September 11, 14, 15, 19-22 and 28, 2023.) No fees should be awarded based on such cryptic descriptions.

III.    **SANCTIONS OR ATTORNEYS' FEES AWARDED AGAINST THE LEER PARTIES OR LIFE SHARES 1019, LLC SHOULD NOT BE ASSESSED AGAINST THE INTERPLEADED DEPOSIT**

In light of Spin Capital having asserted claims to the full amount of the interpleaded deposit, any sanction or attorneys' fees award based on the conduct of the Leer Parties or LS1019 should be charged to them as appropriate, rather than the interpleaded deposit.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the branches of plaintiff's motion seeking

sanctions as against Spin Capital and an award of attorneys' fees, and not assess the interpleaded

deposit for sanctions or attorneys' fees awarded against the Leer Parties and/or LS1019.

Dated: New York, New York          Amini LLC
       April 5, 2024

                                               /s/ Jeffrey Chubak
                                               Lita Beth Wright
                                               Jeffrey Chubak
                                               131 West 35th Street
                                               12th Floor
                                               New York, NY 10001
                                               (212) 490-4700
                                               lbwright@aminillc.com
                                               jchubak@aminillc.com
                                               Attorneys for Defendant Spin Capital, LLC