UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Brighthouse Life Insurance Company,

                Plaintiff,

v.

Spin Capital, LLC et al.,

                Defendants.

23 Civ. 8570 (DEH)

**OPINION**
**AND ORDER**

---

DALE E. HO, United States District Judge:

Plaintiff Brighthouse Life Insurance Company ("Plaintiff" or "Brighthouse"), formerly The Travelers Insurance Company, brings this action against Defendants Spin Capital, LLC ("Spin Capital"), the Leer Parties,[1] Life Shares 1019, LLC ("LS1019"), Fred Stevens, as Court-Appointed Temporary Receiver ("New York Receiver") (together, the "Defendants"), and the Proposed Intervenors[2] (together, with the Defendants, "Claimants").[3] Before this Court are: (1) Brighthouse's Motion for Discharge, Dismissal and Other Relief in Interpleader, Including Attorneys' Fees ("Plaintiff's Motion" or "Brighthouse's Motion"), *see* ECF No. 86; and (2) a motion for Rule 11 sanctions by various Proposed Intervenors, *see* ECF No. 111. Specifically,

---

[1] The "Leer Parties" include Defendants Stefan Leer, Tatanisha Leer, and various entities of which Stefan Leer is a principal: Golden Foothill Insurance Services, LLC; Life Factor II LLC; Life Shares II, LLC; El Dorado Hills Insurance Solutions, Inc.; Lone Wolf Insurance Services, Inc.; ELDO Investments, LLC; The Genesis LS Fund, LLC; KTL Holdings, Inc.; and DRVN Holdings, LLC.

[2] The Proposed Intervenors consist of members of the LS1019 investor group, including Stephen Marik Brockman, Aaron Davison, Neilesh Desai, Jennifer Pursley, Michael Schwartz, Sheila Schwartz, The Charissa & Toney Trust, The Charissa Toney Living Trust, Matthew Troy and American River Ag, Inc. *See* ECF Nos. 60-70. The Proposed Intervenors filed eleven Notices of Appearance on January 22, 2024. *See id.*

[3] On March 18, 2025, this Court granted Brighthouse's Motion for Default Judgment, *see* Mot. Default J. Cap Factor, LLC, ECF No. 105, as to Defendant Cap Factor LLC, *see* Order for Default J., ECF No. 134.

Brighthouse's Motion seeks an Order from this Court: (i) discharging Brighthouse from all liabilities under the life insurance policy at issue in this case; (ii) permanently enjoining Claimants from commencing any other actions or proceedings seeking payment of the remaining life insurance death benefits or otherwise in connection with the life insurance policy at issue in this case; (iii) dismissing Brighthouse from this action with prejudice; (iv) awarding Brighthouse its attorney's fees and costs; and (v) imposing sanctions upon the Claimants.  Mem. Supp. Pl.'s Mot. Discharge, Dismissal and Other Relief Interpleader, Including Attorneys' Fees ("Pl.'s Mot. for Discharge") at 1, ECF No. 87.

For the reasons discussed herein, Brighthouse's Motion is **GRANTED IN PART AND DENIED IN PART**.  The Proposed Intervenors's Motion is **DENIED**.

## BACKGROUND

### I.       The Policy

Brighthouse issued a flexible premium adjustable life insurance policy (the "Policy") with a policy date of November 7, 2004, providing coverage on the life of John P. Utsick ("Mr. Utsick"). Compl. Interpleader ("Compl.") ¶ 21, Ex. A, ECF No. 1.  When Brighthouse issued the policy, the John P. Utsick Irrevocable Trust dated February 4, 2004 (the "Utsick Irrevocable Trust") was the sole primary beneficiary to the Policy proceeds.  *Id*. ¶ 22.

### II.     The Florida Action

On April 17, 2006, the Securities and Exchange Commission ("SEC") commenced an action in the United States District Court for the Southern District of Florida (the "Florida Action") against Mr. Utsick and certain entities associated with him (together, the "Receivership Entities"). *Id.* ¶ 23, Ex. B.  On April 20, 2006, Michael I. Goldberg (the "SEC Receiver") was appointed receiver over the assets, liabilities, and business interests of the Receivership Entities.  *Id.* ¶ 24, Ex. C.  As a result, in December 2006, ownership of the Policy was transferred from the Utsick

Irrevocable Trust to the SEC Receiver, and, shortly thereafter, the SEC Receiver was designated sole primary beneficiary to the Policy proceeds. *Id.* ¶¶ 26-27. Many years later, in May 2021, the SEC Receiver transferred and assigned the Receivership Entities' ownership interest in the Policy to Life Factor II, LLC (a member of the Leer Parties) ("Life Factor"), but still maintained certain irrevocable death benefits pursuant to the Policy. *Id.* ¶ 30. Accordingly, in May 2021, Life Factor was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds, and the SEC Receiver was designed irrevocable primary beneficiary to 46.67% of the Policy proceeds. *Id.* ¶ 33. Then, in March 2022, Life Factor, pursuant to the SEC Receiver's consent and a court order, assigned its portion of the Policy to LS1019. *Id.* ¶ 43, Ex. N. Consequently, LS1019 was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds, and the SEC Receiver was re-designed irrevocable primary beneficiary to 46.67% of the Policy proceeds. *Id.* ¶ 44, Ex. O.

### III.    The New York State Action

On February 4, 2022, Spin Capital commenced an action in New York Supreme Court, County of New York against the Leer Parties (excluding DRVN Holding, LLC), Cap Factor, and Brighthouse (the "New York State Action"). *Id.* ¶ 39. Spin Capital sought, *inter alia*, monetary damages and a declaratory judgment declaring the rights of the parties in connection with the Policy. *Id.* On July 14, 2022, Spin Capital filed an Amended Complaint adding DRVN Holding, LLC and LS1019 as defendants. *Id.* ¶ 39, Ex. K.

On January 6, 2023, the New York Supreme Court issued an Order (the "New York Receiver Order") appointing Fred Stevens as receiver (the "New York Receiver"). *Id.* ¶ 45, Ex. P. It also ordered, *inter alia*, that: (1) the New York Receiver is "authorized . . . to collect and receive all income, earnings, profits, refunds, distributions, and proceeds derived from" the Policy, (2) "all parties obligated to remit any income, earnings, profits, refunds, distributions, and proceeds

to Leer Defendants on account of [the Policy] shall make such remittance to the [New York Receiver]," and (3) "Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds and from selling, assigning, transferring, encumbering, amending, modifying, cancelling, terminating, or disposing of" the Policy. *Id.*

However, the parties dispute whether LS1019 was, in fact, subject to the New York Receiver Order. LS1019 argues that, because "no summons was issued for" and "no service of process" was completed for either DRVN Holding, LLC or LS1019, it was not subject to the Order. Life Shares's Mem. Opp'n Pl.'s Mot. Discharge, Dismissal and Other Relief Interpleader, Including Attorneys' Fees ("Life Shares's Opp'n") at 10, ECF No. 94. Brighthouse, on the other hand, alleges LS1019 was subject to the Order because it "had already appeared, filed an Amended Answer and engaged in motion practice." Pl.'s Mot. for Discharge at 5; *see* Compl. ¶ 54, Ex. U. Pursuant to the Order, Brighthouse argues Stefan Leer and LS1019 were "enjoined and restrained from collecting any proceeds of the Policy." Pl.'s Mot. for Discharge at 5; *see* Compl. ¶ 50, Ex. P.

## IV.    The Death Benefit

Mr. Utsick died on June 8, 2023. Compl. ¶ 47, Ex. Q. As a result, the Policy death benefits totaling $15,000,000 (the "Death Benefit") became due to the identified beneficiaries, which Brighthouse acknowledges. *Id.* ¶¶ 44, 48. At the time of Mr. Utsick's death, LS1019 remained the primary beneficiary of record to 53.33% of the Policy proceeds while the SEC Receiver remained the primary beneficiary of record to 46.67% of the Policy proceeds. *Id.* ¶ 44.

## V.    The Competing Claims to the Death Benefit

Notwithstanding the terms of the New York Receiver Order, on June 8, 2023, Mr. Leer (on

behalf of LS1019) asserted a claim for the entire Death Benefit.[4]  *Id.* ¶ 49, Ex. R.  Then, on July 14, 2023, the SEC Receiver also asserted a claim for the Death Benefit.  *Id.* ¶ 51, Ex. S.  However, following "subsequent communications with Brighthouse," the SEC Receiver re-asserted a claim in the amount of $6,000,000 pursuant to the terms of a May 3, 2021 court order in the Florida Action.  Pl.'s Mot. for Discharge at 5; *see* Compl. ¶ 52, Ex. E.  Again, despite the terms of the New York Receiver Order, on August 31, 2023, LS1019 (through counsel) asked Brighthouse to make "immediate[] distribut[ion]" of $9,000,000 of the Death Benefit to LS1019 and $6,000,000 of the Death Benefit to the SEC Receiver.  Compl. ¶ 55, Ex. V.

## VI.    The California Action

Shortly thereafter, on August 31, 2023, LS1019 commenced an action in California Superior Court, County of Orange against Brighthouse (the "California Action") "concerning, in relevant part, Brighthouse's alleged failure to pay LS1019 $9,000,000.00 of the Death Benefit." *Id.* ¶ 56.  On November 2, 2023, LS1019 voluntarily dismissed the California Action.  *See* Att'y Decl. Dustin J. Dyer Opp'n ("Dyer Decl.") ¶ 15, Ex. 8, ECF No. 96-8.

## VII.   The New York Receiver's Motion

In September 2023, counsel for John Hancock Life Insurance Company ("John Hancock"), a party to the New York State Action, sent a letter to counsel for all parties.  Compl. ¶ 61, Ex. AA. The letter explained that on July 25, 2023, Mr. Leer had (on behalf of LS1019) "submitted a claim for the policy proceeds" under the policy at issue in the New York State Action, and, on August 16, 2023, John Hancock "mistakenly wired $1,985,367.42" to LS1019.  *Id.*  The letter also requested that the funds be "immediately return[ed] to John Hancock or transfer[red] to [the New

---

[4] LS1019 alleges Mr. Leer asserted the claim because he "had the understanding that he was to assert the claim for all beneficiaries, and that Brighthouse would divide the Death Benefit to the beneficiaries pursuant to their identified percentage interest."  Life Shares's Opp'n at 10.

York Receiver].” *Id.*

Also in September 2023, the New York Receiver filed a motion seeking, *inter alia*, an Order to Show Cause “why an order should not be entered” “directing [the Leer Parties] to immediately turn over to the Receiver $1,985,367.42 in receivership property obtained in direct violation of” the New York Receiver Order. *Id.* ¶ 58, Ex. X. In their opposition to the Order to Show Cause, the Leer Parties again argued they were not subject to the New York Receiver Order. *See* Dyer Decl. ¶ 9, Ex. 3, ECF No. 96-3. Despite the Leer Parties’ opposition, the court in the New York State Action granted the Order to Show Cause on January 4, 2024, ordering Mr. Leer to turn over the funds to the New York Receiver by 5:00 p.m. on January 5, 2024. Att’y Decl. Supp. Brighthouse Life Ins. Co.’s Mot. for Discharge, Dismissal and Other Relief Interpleader, Including Attorneys’ Fees (“d’Arcambal Decl.”) ¶¶ 29-30, Ex. 23, ECF No. 88. When, on January 12, 2024, the New York Receiver had not yet received the funds, he filed a contempt motion, *see* d’Arcambal Dec. ¶ 30, Ex. 24, and oral argument was set for April 8, 2024, *see id.* ¶ 30. Mr. Leer was subsequently held in both civil and criminal contempt by the court in the New York State Action. Brighthouse Life Ins. Co.’s Mem. Opp’n Non-Party Proposed Intervenors’s Mot. Rule 11 Sanctions at 11, ECF No. 113; Att’y Decl. Supp. Brighthouse Life Ins. Co.’s Mot. for Discharge, Dismissal and Other Relief Interpleader, Including Attorneys’ Fees (“Million Decl.”) ¶ 5, Ex. B, ECF No. 89.

## VIII.  The SEC Receiver’s Motion

On September 8, 2023, the SEC Receiver filed a Motion to Compel Turn Over and to Hold Brighthouse in Contempt. d’Arcambal Decl. ¶ 12, Ex. 8. The court in the Florida Action set a status conference for September 15, 2023, which the SEC Receiver, the New York Receiver, Brighthouse, and LS1019 attended. *Id.* ¶¶ 13, 17. During the status conference, the Judge in the Florida Action “directed LS1019 and the Leer parties to sign releases so Brighthouse could pay

the SEC Receiver." *Id.* ¶ 17, Ex. 13 at 11:20-23.  LS1019 and the Leer Parties subsequently disclaimed, pursuant to a release dated September 22, 2023, their interests in the $6,000,000, leaving $9,000,000 of the Death Benefit remaining (the "Remaining Death Benefit").  Compl. ¶ 62.  Several days later, on September 28, 2023, the Judge in the Florida Action issued an Order denying the SEC Receiver's contempt motion as moot.  d'Arcambal Decl. ¶ 19, Ex. 14.  And, on October 3, 2023, Brighthouse disbursed the $6,000,000 to the SEC Receiver.  Compl. ¶ 62.

IX.    **This Interpleader Action**

Brighthouse commenced this interpleader action against Defendants on September 28, 2023.  *See* Compl.; *see also* Sept. 28, 2023 Docket Entry.  Brighthouse then filed a Motion for Interpleader Deposit pursuant to 28 U.S.C. § 1335, *see* Mot. Interpleader Deposit, ECF No. 9, which Judge Rochon (then assigned to this case) denied "without prejudice to renewal once all Defendants are served and have had the opportunity to appear," *see* Order Mot. Interpleader Deposit, ECF No. 10.  Once Defendants were properly served, Brighthouse again filed a Motion for Interpleader Deposit and Related Relief pursuant to 28 U.S.C. §§ 1335 and 2361, which went unopposed.  *See* Mot. Interpleader Deposit and Related Relief, ECF No. 28; Jan. 12, 2024 Order, ECF No. 56 (referencing, in a Court order, the Motion for Interpleader Deposit and Related Relief as "unopposed").  Spin Capital and the New York Receiver filed their Answers to the Complaint on January 10, 2024, while the Leer Parties and LS1019 filed their Answers on January 24, 2024.  *See* Spin Capital Answer to Compl., ECF No. 51; New York Receiver Answer to Compl., ECF No. 53; Leer Partis Answer to Compl., ECF No. 71; LS1019 Answer to Compl., ECF No. 72.

This Court held a status conference on January 11, 2024.  *See* Jan. 12, 2024 Order.  After the conference, the Court issued an Order instructing the parties to "meet and confer in good faith to attempt to resolve the matter" and "file a joint status letter by January 19, 2024, indicating the parties' progress."  *Id.*  If the parties failed to reach a resolution, the Order further instructed that

the joint letter should "outline the parties' respective positions as to next steps in this litigation." *Id.* The Order also paused the interest accruing on the Remaining Death Benefit until January 19, 2024. *Id.* Per the parties' requests, the deadline to file the joint letter and the accompanying pause on interest accrual were extended to February 9, 2024. *See* Jan. 22, 2024 Memo Endorsement, ECF No. 59; Feb. 5, 2024 Memo Endorsement, ECF No. 74. The joint letter submitted on February 9, 2024, indicated the parties were "conferring about the terms of a stipulation and joint motion directing Brighthouse to disburse the funds" but that they had not yet resolved the issue of attorney's fees. Feb. 9, 2024 Joint Status Letter at 1, ECF No. 75. So, the Court issued a briefing schedule on that issue. *See* Feb. 12, 2024 Memo Endorsement, ECF No. 76. Around this time, the eleven Proposed Intervenors filed notices of appearance. *See* Notices of Appearance by Peter Michael Levine on behalf of Stephen Marik Brockman, Aaron Davison, Neilesh Desai, Jennifer Pursley, Michael Schwartz, Sheila Schwartz, The Charissa & Toney Trust, The Charissa Toney Living Trust, Matthew Troy, and American River Ag, Inc., ECF Nos. 60-70.

Another status letter submitted on February 21, 2024 indicated that the parties failed to reach an agreement as to the terms of the stipulation and joint motion. *See* Feb. 21, 2024 Status Report, ECF No. 79. Accordingly, Brighthouse asked this Court to rule on the unopposed Motion for Interpleader Deposit and Related Relief and stated its intent to file a motion for traditional interpleader relief. *Id.* This Court granted the unopposed motion, *see* Order Authorizing Interpleader Deposit and Related Relief at 2, ECF No. 80, and received the deposit from Brighthouse on February 29, 2024, *see* Mar. 14, 2024 Docket Entry. Brighthouse proceeded to file the instant Motion on March 15, 2024. *See* Pl.'s Motion for Discharge at 25. In due course, LS1019, the Leer Parties, and Spin Capital filed their Oppositions. *See* Life Shares's Opp'n; Leer Defs.' Opp'n Pl.'s Mot. for Discharge, Dismissal and Other Relief Interpleader, Including Attorneys' Fees ("Leer Defs.' Opp'n"), ECF No. 98; Def. Spin Capital's Mem. Opp'n Pl.'s Mot.

for Sanctions and Att'y's Fees ("Spin Capital's Opp'n"), ECF No. 101.   And Brighthouse submitted its Reply.  *See* Reply Mem. Supp. Pl.'s Mot. for Discharge, Dismissal and Other Relief Interpleader, Including Attorneys' Fees ("Pl.'s Reply"), ECF No. 109.

## DISCUSSION

### I.    Brighthouse's Motion.

#### A.    Brighthouse's Motion for Dismissal, Discharge, and Permanent Injunction

Brighthouse first "seeks an Order from the Court discharging [it] from all liability in connection with the Policy and Remaining Death Benefit, permanently enjoining the Claimants from commencing any other actions or proceedings seeking payment of the Remaining Death Benefit or otherwise in connection with the Policy, and dismissing Brighthouse from this action with prejudice."  Pl.'s Mot. for Discharge at 11-12.  Notably, none of the Claimants oppose the portion of Brighthouse's motion seeking discharge, dismissal, and a permanent injunction.  *See* Life Shares's Opp'n at 15; Leer Defs.' Opp'n at 2-3; Spin Capital's Opp'n at 1.  For the reasons discussed herein, this portion of Brighthouse's Motion is **GRANTED**.

#### 1.    *Applicable Legal Standards in Interpleader Actions*

An "interpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." [5]  *Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002) (citing *Washington Elec. Coop. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993)).  Courts typically engage in a two-step process when presented with an interpleader action.  *Id* at 178.  First, "a court must determine whether the interpleader action is

─────────────────

[5] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

appropriate, and, if it finds that the action it is appropriate, the plaintiff will be discharged from liability." *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013) (citing *New York Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983)).  Second, "the court adjudicates the claims among the remaining adverse parties." *Id.*  To resolve Brighthouse's Motion, however, this Court need only consider the first step of this process.

To establish that an interpleader is appropriate, a plaintiff "must allege that: (1) it is in possession of a single fund of value greater than $500; (2) the action involves two or more adverse claimants of diverse citizenship; (3) it has deposited or is depositing the fund with the court; and (4) it has a real and reasonable fear of double liability or vexatious, conflicting claims," regardless of the merits of such claims.  *Solar Spectrum LLC v. AEC Yield Cap. LLC*, No. 18 Civ. 7950, 2019 WL 5381798, at *4 (S.D.N.Y. Oct. 22, 2019); *see also* 28 U.S.C. § 1335(a)(1)-(2) (describing jurisdictional requirements for interpleader).  "A court need not analyze the merits of the claims, because the stakeholder should not be obliged at its peril to determine which of two claimants has the better claim." *Solar Spectrum LLC*, 2019 WL 5381798, at *4 (quoting *Mitchell*, 966 F. Supp. 2d at 102).  "If the court is satisfied that Section 1335's requirements are met, the court will discharge the plaintiff from liability." *Id.* (citing *New York Life Ins. Co.*, 700 F.2d at 95).

> 2.    *Whether Brighthouse Satisfies the Jurisdictional Requirements for Bringing this Interpleader Action*

Here, the Court finds Brighthouse satisfies all four jurisdictional requirements for an interpleader action.  First, the fund at issue, i.e., the Remaining Death Benefit, amounts to $9,000,000 (plus applicable interest),[6] far exceeding the jurisdictional amount of $500.  *See* Order Authorizing Interpleader Deposit and Related Relief at 1.  Second, Claimants—as citizens of

---

[6] Brighthouse ultimately deposited $9,388,602.74 with the Court, consisting of the Remaining Death Benefit ($9,000,000) and the interest accrued ($388,602.74).  Pl.'s Mot. for Discharge at 10.

California, Delaware, New Jersey, Tennessee, Texas, and Nevada—are of diverse citizenship.  *See* Compl. ¶¶ 2-18.  Third, Brighthouse deposited the Remaining Death Benefit with the Court on February 29, 2024.  *See* Mar. 14, 2024 Docket Entry.  Fourth, Brighthouse is a neutral party who has been confronted with multiple, conflicting claims to the Remaining Death Benefit and takes no position as the proper disbursement of the funds.  *See* Pl.'s Mot. for Discharge at 12-13. Claimants also do not dispute that Brighthouse satisfies these jurisdictional requirements. Therefore, the Court determines that this interpleader action is appropriate.

### 3.    *Whether Brighthouse is Entitled to Dismissal and Discharge*

The Court now turns to Brighthouse's requested relief.  Brighthouse has moved for dismissal from this action with prejudice and for discharge from any further liability in connection with the Policy and Remaining Death Benefit.  *See id.* at 11-12.  28 U.S.C. § 2361 "authorizes a district court to discharge the stakeholder in any civil interpleader action from further liability to claimants."  *Solar Spectrum LLC*, 2019 WL 5381798, at *5 (citing *Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992)).  "Generally, once an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, the court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake."  *Mitchell*, 966 F. Supp. 2d at 103.  Here, the Court has been presented with no reason to believe that Brighthouse may be independently liable to any of the Claimants, as none oppose the portion of Brighthouse's motion seeking dismissal and discharge.  Brighthouse's request for dismissal and discharge is therefore **GRANTED**.

#### *4.    Whether Brighthouse is Entitled to a Permanent Injunction*

Brighthouse also asks this Court to permanently enjoin Claimants from "commencing any other actions or proceedings seeking payment of the Remaining Death Benefit or otherwise in connection with the Policy." *See* Pl.'s Mot. for Discharge at 12.  Section 2361 allows a district court to "enter its order restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court" and to "make the injunction permanent."  28 U.S.C. § 2361.  Of note, Section 2361 "enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in Rule 65 [of the Federal Rules of Civil Procedure], which normally governs the issuance of injunctive relief."  *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992).  Such an injunction is "desirable to ensure the effectiveness of the interpleader remedy."  7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1717 (3d ed. 2021).  It also "prevents a multiplicity of actions and reduces the possibility of inconsistent determinations or the inequitable distribution of the fund."  *Id.*  "In situations such as this one where a stakeholder, faced with rival claims to the fund itself, acknowledges [its] liability to one or the other of the claimants, it is reasonable and sensible that interpleader should also protect the stakeholder from vexatious and multiple litigation, and therefore suits sought to be enjoined in such situations are squarely within the language of 28 U.S.C. § 2361."  *Bank of Am. N.A. v. Morgan Stanley & Co. Inc.*, No. 10 Civ. 6322, 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011).

In addition to meeting Section 1335's requirements, Brighthouse has conceded liability, *see* Pl.'s Mot. for Discharge at 5, and been faced with adverse claims to the Remaining Death Benefit, *see id.* at 10.  Thus, "a permanent injunction restraining [Claimants] from continuing or bringing any suits concerning the [Policy or Remaining Death Benefit] is necessary to protect

[Brighthouse] from a multiplicity of actions and to ensure the effectiveness of the interpleader relief granted here." *Solar Spectrum LLC*, 2019 WL 5381798 at *5. And, again, none of the Claimants oppose Brighthouse's requested relief. *See* Life Shares's Opp'n at 15; Leer Defs.' Opp'n at 2-3; Spin Capital's Opp'n at 1. Brighthouse's request for a permanent injunction is therefore **GRANTED**.

### B.    Brighthouse's Motion for Attorney's Fees

The Court next considers Brighthouse's request for attorney's fees and costs in the amount of $192,467.94,[7] which it argues should be paid out of the $9,388,602.74 deposit with the Court. Pl.'s Mot. for Discharge at 14; Pl.'s Reply at 4 n.4. Brighthouse argues it is entitled to costs and fees incurred in this interpleader action and in the California and Florida Actions, *see* Pl.'s Mot. for Discharge at 2, which Claimants contest, *see* Life Shares's Opp'n at 18; Leer Defs.' Opp'n at 2-3; Spin Capital's Opp'n at 5. For the reasons discussed below, Brighthouse's motion for attorney's fees and costs is **DENIED**.

### 1.    Applicable Legal Standards for Attorney's Fees

Typically, "[t]o recoup attorneys' fees and costs [in an interpleader action], a court must find (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Landmark Chemicals, SA. v. Merrill Lynch & Co.*, 234 F.R.D. 62, 63 (S.D.N.Y. 2005) (citing *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir.1989)). "However, the decision to award fees and costs is left to the sound discretion of the district court, and courts need not award attorneys' fees

---

[7] Brighthouse initially sought costs and fees totaling $211,851.14. Pl.'s Mot. for Discharge at 2. However, in its Reply, Brighthouse "in good faith . . . reduce[d] its request for attorneys' fees and costs by $19,383.20, representing the legal fees and costs" it incurred in the California Action pursuant to a prior agreement with LS1019 that "all parties would bear their own costs and fees" from litigating that matter. Pl.'s Reply at 4 n.4.

in interpleader actions where the fees are expenses incurred in the ordinary course of business." *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 320 (S.D.N.Y 2014) (citing *Mitchell*, 966 F. Supp. 2d at 104 and collecting cases).   "This is particularly true in the case of insurance companies, where minor problems that arise in the payment of insurance policies must be expected and the expenses incurred are part of the ordinary course of business."  *Id.*  In fact, "[c]ourts have generally adopted the view that conflicting claims to the proceeds of a policy are inevitable and normal risks of the insurance business."  *Feehan v. Feehan*, No. 9 Civ. 7016, 2011 WL 497852, at *7 (S.D.N.Y. 2011).  Plus, "such actions are brought primarily in the company's own self-interest," as "[i]nterpleader relieves the insurance company of multiple suits and eventuates in its discharge." *Id.*  Accordingly, "courts in this Circuit have typically declined to award insurance companies attorneys' fees and costs in interpleader actions."  *Id.* (collecting cases).

### 2.   Whether Brighthouse is Entitled to Attorney's Fees in This Action

There is no dispute that Brighthouse is (1) a disinterested stakeholder, (2) who has conceded liability, (3) deposited funds with the Court, and (4) sought discharge from liability.  *See* Pl.'s Mot. for Discharge at 14.  But the satisfaction of those prerequisites is only the beginning of the applicable inquiry, as the Court retains discretion to decline to award fees and costs incurred in the "ordinary course of business."  *Guardian Life*, 45 F. Supp. 3d at 320.  In its Memorandum in Support, *see* Pl.'s Mot. for Discharge, and its Reply, *see* Pl.'s Reply, Brighthouse proffers several reasons why this dispute involves complex issues that exceed the scope of ordinary business, and, thus, why it is entitled to fees and costs it incurred in this action.  The Court addresses each in turn.

First, Brighthouse argues that the issues presented in the case have been neither "ordinary" nor "minor" because it "was faced with . . . multiple claims for $9,000,000 from Claimants who have been involved in their own litigation," and that this interpleader action was brought as a "last

resort" "after Plaintiff diligently spent three months attempting to reach resolutions with the Defendants." Pl.'s Mot. for Discharge at 16.  While it may have been burdensome for Brighthouse to face multiple claims, it does not appear to be exceptional.  Interpleader actions "are brought primarily in the company's own self-interest" in order to "relieve[] the insurance company of multiple suits and eventuate[] its discharge." *Mitchell*, 966 F. Supp. 2d at 105.  Moreover, what Brighthouse describes here—i.e., working with Claimants to resolve competing claims to the Remaining Death Benefit—appears, based on the record before the Court, to constitute nothing other than routine settlement negotiations that are typical in the insurance industry.  Indeed, "[c]ompeting claims to the proceeds of a policy are inevitable and normal risks of the insurance business" and "settlement efforts are a normal cost of business when an insurance company is confronted with competing claimants." *U.S. Life Ins. Co. in City of New York v. Blum*, No. 09 Civ. 9416, 2011 WL 70385, at *2 (S.D.N.Y. Jan. 3, 2011); *see also Metro. Life Ins. Co. v. Est. of Seagrove*, No. 18 Civ. 920, 2019 WL 974727, at *4 (N.D.N.Y. Feb. 28, 2019) ("The fact that Plaintiff may have had to spend additional time in this case compared to others does not give rise to an automatic inference that such additional time is an expense outside the ordinary cost of doing business.").  Thus, the Court declines to award Brighthouse costs and fees on the basis that it expended time and effort attempting to settle competing claims to the Remaining Death Benefit.

Brighthouse further argues that it "has not been allowed to extricate itself from litigation due to the unreasonable refusal of certain Claimants . . . to agree to Brighthouse's release and discharge" and that "[i]t was only *after* Brighthouse filed the Motion that LS1019 and Leer Defendants in their oppositions, finally agreed that Brighthouse is entitled to release and discharge." Pl.'s Reply at 6.  But Brighthouse has not established that it has "incur[red] any unique expenses" in filing the motion for discharge and dismissal that "exceed the ordinary cost of doing business as an insurance company," as "minor problems that arise in the payment of insurance

policies must be expected." *Mitchell*, 966 F. Supp. 2d at 104-05 ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader."). The Court does not, based on the record before it, conclude that this litigation was improperly protracted to such an extent that would warrant a "depart[ure] from the established practice among district courts within the Second Circuit of declining to award attorneys' fees and costs to similarly situated insurance companies." *Guardian Life*, 45 F. Supp. 3d at 321.

Brighthouse also argues that attorney's fees in this case are warranted due to the burden and complexity of having to litigate the California and Florida Actions. *See* Pl.'s Mot. for Discharge at 16 (arguing that its "work has been far from minimal—indeed, it has involved litigations in three states."); *id.* at 20-21 (noting that it "had to defend itself against a contempt motion" in the Florida Action); Pl.'s Reply at 6 (noting that it had to "litigate the LS1019 California Action until it was voluntarily dismissed."). As an initial matter, Brighthouse has now agreed to bear its own costs in the California litigation, effectively waiving any argument that it is entitled to fees arising from the burden of litigating that case. In any event, the fact that Brighthouse had to litigate the California and Florida cases does not establish its entitlement to fees in *this* matter; and to the extent Brighthouse seeks fees and costs associated with those cases specifically, that request is addressed separately below.

Brighthouse also argues it is entitled to attorney's fees and costs because it had to "address the threat of a Rule 11 sanctions motion from the Proposed Intervenors." *Id.* at 6. Indeed, the Proposed Intervenors filed a Rule 11 motion for sanctions (the "Rule 11 Motion") against Brighthouse's counsel on May 1, 2024. *See* Proposed Intervenors's Mot. for Sanctions, ECF No.

111. The Court addresses Brighthouse's request for costs and fees incurred in connection with the Rule 11 Motion below.

        *3.*     *Whether Brighthouse is Entitled to Attorney's Fees in the Related Actions*

Brighthouse separately argues it should be reimbursed for attorney's fees and costs incurred in the California and Florida Actions because "[a]warding an innocent stakeholder attorneys' fees incurred in connection with litigations other than the interpleader action is also not without precedent." Pl.'s Mot. for Discharge at 23. Again, Brighthouse has effectively waived any argument that it is entitled to fees incurred in connection with the California Action. Thus, the Court primarily considers whether Brighthouse is entitled to fees in connection with the Florida litigation.

In support of its argument for fees, Brighthouse offers a single case from the Southern District of Alabama in which that court awarded a bank attorney's fees associated with its interpleader action and a related state court action. *See Renasant Bank, Inc. v. AVE, Inc.*, No. 19 Civ. 733, 2021 WL 1324532, at *2 (S.D. Ala. Jan. 14, 2021). In that case, the court's decision to award fees was based in part on the terms of a "Deposit Account Agreement" between the bank and defendants permitting the bank to recover expenses related to the Agreement—including attorney's fees—which the defendants did not contest. *Id.* at *2-5; *see also id.* at *5 ("Defendants still have wholly failed to contest the terms of the Agreement which specifically allow for an award of attorney's fees and costs without the restriction of the factors typically considered by courts in an interpleader action in determining such an award."). But here, there is no comparable agreement permitting Brighthouse to recover expenses from any of the Claimants.

Brighthouse also argues that the Florida Action was "*directly related* to the Claimants' interests in the Policy and Death Benefit" and, thus, the Court "in its wide discretion to award costs and attorneys' fees, when . . . it would be fair and equitable, . . . should award Brighthouse all fees

and costs." Pl.'s Mot. for Discharge at 24 (quoting *Clarkson Co. v. Shaheen*, 533 F. Supp. 905, 919 (S.D.N.Y. 1982). But Brighthouse does not cite any relevant authority demonstrating that the circumstances here merit an exercise of discretion of this magnitude, beyond asserting that it would be "fair and equitable" to do so. *Id.* at 24. Consequently, this Court concludes that Brighthouse has failed to meet its burden of demonstrating that it is entitled to the relief it seeks. Brighthouse's request for an award of attorney's fees and costs incurred in the Florida Action is therefore **DENIED**.

### C.    Brighthouse's Motion for Sanctions

Separately, Brighthouse asks this Court to exercise its "inherent power to impose sanctions upon any or all of the uncooperative Claimants to punish them for their abuse of process and impairing these proceedings." *Id.* at 24. Specifically, Brighthouse requests sanctions in the amount of $337,315.07, "representing the amount of interest accrued on the Remaining Death Benefit from July 24, 2023 (the date Brighthouse proposed a resolution to the Defendants) to January 11, 2024 (the Court-ordered date that interest stop accruing)." *Id.* at 24-25. For the reasons that follow, Brighthouse's request for sanctions is **DENIED**.

### 1.    *Applicable Legal Standards for Sanctions Pursuant to the Court's Inherent Powers*

"A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). "[A] court's inherent power allows it to impose monetary sanctions against a litigant (or its counsel) for misconduct." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021). But that power "must be exercised with restraint and discretion." *Id.* at 368 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). In particular, "[w]hen it comes to monetary sanctions," a court "should sanction only bad faith, vexatious, or wanton acts

or actions otherwise undertaken for oppressive reasons." *Id.* "Sanctions for fraud are warranted if it is established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Yukos Cap.*, 977 F.3d at 235. Before imposing sanctions pursuant to their inherent authority, courts in this District consider:

> (1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future.

*Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18 Civ. 8188, 2022 WL 3646205, at *2 (S.D.N.Y. Aug. 24, 2022).

Before ordering sanctions pursuant to its inherent authority, a court must provide "specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on the matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend . . . against specific charges." *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997) (attorneys); *see also Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (parties).

### 2. Whether this Court Should Impose Sanctions on Claimants

Brighthouse asks this Court to sanction Claimants "for their abuse of process and impairing these proceedings." Pl.'s Mot. for Discharge at 24. This apparently refers to Claimants' "refus[al] to unanimously agree to release Brighthouse in connection with the $6,000,000 payment to the SEC Receiver," Claimants' "refus[al] to unanimously agree to Brighthouse disbursing the remaining $9,000,000 to the New York Receiver in compliance with the New York Receiver Order," LS1019's "commence[ment] of the . . . California Action," and "certain Claimants with[holding] consent to Brighthouse's release and discharge in connection

with the Policy and Remaining Death Benefit until March 29, 2024," while interest accrued.

Pl.'s Reply at 9-10.  Brighthouse adds that:

> Claimants have offered no explanation for their intransigence, which suggests the existence of some improper purpose, such as delay so as to take advantage of the 8% interest rate that was accruing on the Death Benefit; to advance their position that the court in the New York State Action does not have jurisdiction over LS1019 due to a lack of summons and service; and/or to preserve their ability to assert future claims or lawsuits against Brighthouse.

*Id.*

In arguing that this Court should impose sanctions on Claimants, Brighthouse cites several cases supporting the general proposition that federal courts possess the inherent power to impose sanctions, including *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), for the proposition that "a party may be sanctioned for abuses of process occurring beyond the courtroom and disobedience to the order of any court."  Pl.'s Mot. for Discharge at 25.  *Young*, however, was primarily concerned with the court's inherent power to initiate contempt proceedings in response to disobedience of court orders.  *See Young*, 481 U.S. at 793 (holding that "courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt").  But it does not support Brighthouse's entitlement to costs and fees here; even if Brighthouse were correct that Claimants were inexplicably intransigent in refusing to release it in connection with payment to the SEC receiver, that would not amount to "disobedience to the orders of the Judiciary."  *Id.* at 798.

And while Brighthouse contends that Claimants' behavior "suggests" bad faith, Pl.'s Reply at 10, Brighthouse has not met its burden of demonstrating by clear and convincing evidence that Claimants' actions were taken "in bad faith, i.e., motivated by improper purposes such as harassment or delay."  *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

Brighthouse points to the fact that interest continued to accrue on the Remaining Death Benefit to support an inference of Claimants' bad faith. Pl.'s Reply at 9-10. But Brighthouse has failed to show that interest accruing during the pendency of an interpleader action is anything other than routine and "expected." *See Mitchell*, 966 F. Supp. 2d at 104. In any event, interest on the Remaining Death Benefit stopped accruing pursuant to this Court's Order dated January 12, 2024. *See* Jan. 12, 2024 Order. Accordingly, based on the record before it, the Court cannot conclude with a "high degree of specificity" that Claimants acted in bad faith. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Brighthouse's request for sanctions is thereby **DENIED**.[8]

## II.   Proposed Intervenors's Rule 11 Sanctions Motion

The Proposed Intervenors ask this Court to impose sanctions upon Brighthouse's counsel, Michelle J. d'Arcambal, Esq. and Tiffancy C. Millioen, Esq., and their law firm, d'Arcambal Ousley & Cuyler Burk LLP ("Plaintiff's counsel") pursuant to Rule 11. Decl. of Peter M. Levine ("Levine Decl.") ¶ 1, ECF No. 112. Specifically, the Rule 11 Motion argues Brighthouse's counsel should be sanctioned for (1) "seeking sanctions against the 1019 Investor Group under the Court's inherent powers," (2) "attempting to justify the imposition of sanctions . . . with legal arguments that were not warranted by existing law or by nonfrivolous argument for extending, modifying, or

---

[8] In its Opposition, LS1019 asks this Court to use its inherent powers to impose sanctions on Brighthouse in the amount of $94,684.93, representing the amount of interest that would have accumulated between the date interest accrual was paused (i.e., January 12, 2024) and when Brighthouse deposited the Remaining Death Benefit with the Court. Life Shares's Opp'n at 28-29. However, to justify its request, LS1019 relies only on the fact that Brighthouse retained the Remaining Death Benefit "for use in business and investments" while interest accrual was paused, as well as the fact that Brighthouse sought to recover attorney's fees in connection with this matter. *Id.* at 28. Because LS1019 fails to show by clear and convincing evidence that Brighthouse retained the Remaining Death Benefit or sought attorney's fees in bad faith, its request for sanctions is also denied.

reversing existing law," and (3) "presenting a baseless sanctions motion against the 1019 Investor Group." *Id.* at 2.  For the reasons explained below, the motion is **DENIED**.

### A.    Applicable Legal Standards for Rule 11 Sanctions

Rule 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2), (b)(3).  If a court determines that Rule 11(b) has been violated, it can "impose an appropriate sanction" pursuant to Rule 11(c).  Fed. R. Civ. P. 11(c)(1).

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998).  "The standard for imposing Rule 11 sanctions, however, is purposefully high, so as not to stifle legal creativity and zealous advocacy." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017) (citing *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15 Civ. 8051, 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017).  Indeed, "[c]ourts may issue Rule 11 Sanctions only in extraordinary circumstances." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008).  "Among other things, a court must resolve all doubts in favor of the signer of the pleading and may impose sanctions only where an attorney's conduct was objectively unreasonable." *Galin*, 283 F. Supp. 3d at 201 (citing *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) and *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003)).  "The operative question is whether the argument is frivolous, i.e., the legal position has

no chance of success, and there is no reasonable argument to extend, modify, or reverse the law as it stands." *Star Mark Mgmt., Inc. v. Koon Chun Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (citing *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011)).

**B.    Whether this Court Should Impose Sanctions on Brighthouse**

Applying this high standard here, the Court declines to impose Rule 11 sanctions on Brighthouse's counsel.  Setting aside the procedural issues with the Rule 11 Motion, including counsel's failure to comply with the Local Rules, the Proposed Intervenors have failed to persuade this Court that Brighthouse's own sanctions motion was obviously "frivolous." *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988).  Indeed, Claimants offered no cogent basis for withholding consent for Brighthouse's release and discharge, and although the Court ultimately determined that sanctions were unwarranted because Brighthouse had not met the high standard for demonstrating bad faith by clear and convincing evidence, the Court cannot say that the motion was frivolous and had "absolutely no chance of success." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991).  That is, while the Court ultimately opts not to exercise its discretion to grant Brighthouse's sanctions motion, the motion was not objectively unreasonable. *Galin*, 283 F. Supp. 3d at 201.  This Court therefore denies the Proposed Intervenors's Rule 11 Motion.

**C.    Whether Brighthouse is Entitled to Attorney's Fees**

As previously established, the Court has discretion to decline to award fees and costs incurred in the "ordinary course of business." *Guardian Life*, 45 F. Supp. 3d at 320.  Defending against a Rule 11 sanctions motion is not the sort of "minor problem," *Mitchell*, 966 F. Supp. 2d at 104, or "normal risk," *Feehan*, 2011 WL 497852, at *7, typically associated with the payment of insurance policies.  Rather, addressing a Rule 11 sanctions motion is "a source of expense outside the ordinary cost of doing business for which [Brighthouse] was not responsible." *U.S.*

*Life Ins. Co. in City of New York*, 2011 WL 70385, at *3; *see Travelers Ins. Co. v. Est. of Garcia*, No. 00 Civ. 2130, 2003 WL 1193535, at *4-5 (E.D.N.Y. Feb. 4, 2003) (awarding attorney's fees when the case involved "unique problems for a disinterested stakeholder" because another party "file[d] counterclaims against [the insurance company] and sought to force dispositive motions while other potential claimants were still being joined in the action"). Accordingly, Brighthouse's request for attorney's fees in connection with the Rule 11 Motion is **GRANTED**. The parties shall brief the Court on the amount of attorney's fees to be awarded. Brighthouse's brief in support of its request for fees, not to exceed ten pages, shall be filed no later than June 3, 2025. The Proposed Intervenors's brief in opposition, also not the exceed ten pages, shall be filed no later than June 17, 2025. Brighthouse shall not submit a reply brief.

## CONCLUSION

For the foregoing reasons, the Court grants Brighthouse's request for discharge, dismissal, and permanent injunction, but declines to impose sanctions upon Claimants or award attorney's fees to Brighthouse, except for costs and fees incurred defending against the Proposed Intervenors's Rule 11 Motion. The Court also denies the Proposed Intervenors's request for Rule 11 sanctions. Accordingly, Brighthouse's Motion is **GRANTED IN PART AND DENIED IN PART** and the Proposed Intervenors's Motion is **DENIED**.

The Clerk of Court is respectfully requested to terminate ECF Nos. 86 and 111.

SO ORDERED.

Dated: May 20, 2025

New York, New York

_____

DALE E. HO
United States District Judge